# EXHIBIT 6-A

[DOCUMENTARY EXHIBITS ATTACHED]

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                              Chapter 7

Joseph G. DuMouchelle and                           Case No. 19-54531-lsg
Melinda J. Adducci

                                                    Honorable Lisa S. Gretchko

        Debtors.

_____/

Thomas T. Ritter

        Plaintiff,

v.

Joseph G. DuMouchelle and                           Adversary Pro. No. 20-04381
Melinda J. Adducci

        Defendants.

_____/

## INDEX OF EXHIBITS
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANT JOSEPH DUMOUCHELLE UNDER COUNTS
III, V, and VII OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Information ...................................................................................Exhibit 1

Plea Agreement ............................................................................Exhibit 2

Plea Transcript .............................................................................Exhibit 3

Presentence Opinion ...................................................................................Exhibit 4

Restitution Order .......................................................................................Exhibit 5

Sophisticated Means Opinion ....................................................................Exhibit 6

Order of Forfeiture ...................................................................................Exhibit 7

Criminal Judgment ...................................................................................Exhibit 8

Appeal .......................................................................................................Exhibit 9

Appellate Judgment ...................................................................................Exhibit 10

Wire Fraud Jury Instruction ......................................................................Exhibit 11

# EXHIBIT 1

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AGAINST JOSEPH DUMOUCHELLE UNDER COUNTS III, V,
AND VII OF PLAINTIFF'S SECOND AMENDED COMPLAINT

[INFORMATION]

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                      Plaintiff,

v.

D-1    Joseph Gregory Dumouchelle,

                      Defendant.

_____/

CRIMINAL NO.

HON.

VIOLATION:

Case: 2:20−cr−20245
Assigned To : Goldsmith, Mark A.
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 6/16/2020
Description: INFO USA v. DUMOUCHELLE (SO)

18 U.S.C. § 1343 – Wire Fraud

## INFORMATION

The United States Attorney charges:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1.   Joseph Gregory Dumouchelle (D-1) (Dumouchelle), of Birmingham, Michigan and was the owner of "Joseph DuMouchelle Fine and Estate Jewelry Buyers, Sellers, Appraisers and Auctioneers, LLC. (DFE).

2.   DFE did business in the State of Michigan and elsewhere.

3.   T.R. was a resident of North Dakota and Arizona and was a client of Dumouchelle and DFE.

1

4.    The "Yellow Rose Diamond" (Yellow Rose) was the nickname given to a ring containing a 77.12 carat primary diamond which was variously valued at between $12,000,000 and $18,000,000.

5.    RD was a business owner and consultant whose name and contact information was used by Dumouchelle to trick TR into sending Dumouchelle money.

6.    Bank of America was a financial institution doing business in the State of Michigan and throughout the United States.

7.    Dumouchelle was a Bank of America customer holding an account ending in 0585.

## **COUNT ONE**
### (18 U.S.C. § 1343, Wire Fraud)

D-1 Joseph Gregory Dumouchelle

The general allegations are included in this count.

8.    From in or about February 2019 through in or about May 2019, Joseph Gregory Dumouchelle devised and executed a scheme to obtain money by means of false and fraudulent material pretenses, representations and promises.

2

9.   In late 2018, TR contacted Dumouchelle attempting to collect a $430,000 debt Dumouchelle owed him.

10.   In an effort convince TR that the debt would be paid, Dumouchelle offered TR an investment opportunity which Dumouchelle promised would more than pay back his debt.

11.   Dumouchelle told TR he had an opportunity to buy the Yellow Rose and would be able to sell it for much more than he paid for it. Dumouchelle promised that if TR helped him buy the Yellow Rose, Dumouchelle would sell it to a buyer represented by RD and would split the profits 70/30 with TR. It was TR's understanding that RD represented the seller of the diamond for this transaction.

The Scheme

12.   Dumochelle, with intent to obtain money by means of false and fraudulent material promises and representations instructed TR to wire transfer $12,000,000 for the purchase of the Yellow Rose. TR agreed to the terms, but insisted that the money be transferred to the seller's account, not to Dumochelle's account.

13.   With intent to obtain TR's money by means of false and fraudulent material promises, pretenses and representations, Dumouchelle falsified documents

3

and emails making it appear that the account the money would be wired to was in fact the seller's.

14. Also with intent to obtain money by means of false and fraudulent material promises and representations, Dumouchelle sent the false information to TR with directions to wire the money to the account with a notation that it was for the benefit of the seller represented by RD.

15. In fact, the wire transfer directions Dumouchelle sent TR were for Dumouchelle's Bank of America account ending in 0585 and at that time there was no actual buyer for the Yellow Rose.

16. Convinced that Dumouchelle was telling the truth, on February 6, 2019 TR wired $12,000,000 to Dumouchelle's DFE account.

17. After receiving the funds and in an effort to lull TR into believing the purchase of the Yellow Rose was legitimate Dumouchelle sent TR a fraudulent receipt making it appear that the Yellow Rose had been purchased.

18. The balance in Dumochelle's Bank of America account before TR's $12,000,000 was deposited was $500. Immediately after the deposit and with intent to obtain money by means of false and fraudulent material promises and representations Dumouchelle withdrew the majority of the money and used it to pay his personal and business debts and expenses.

4

19.    On or about February 6, 2019, in the Eastern District of Michigan, Southern

Division, Dumouchelle, with intent to obtain money by means of false and

fraudulent material promises and representations and for the purpose of

executing the scheme transmitted and caused the transmission of wire

communications in interstate commerce in the form of an interstate wire

transfer of funds in the amount of $12,000,000 from TR's bank account in

Chandler, Arizona Dumouchelle's Bank of America account in Bloomfield

Hills, Michigan.

20.    All in violation of Title 18, United States Code, Sections 1343.

## FORFEITURE ALLEGATIONS
### 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461

21.    The above allegations contained in this Information are incorporated by

reference as if set forth fully herein for the purpose of alleging forfeiture

pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461.

22.    As a result of the violations of 18 U.S.C. § 1343, as set forth in this

Information, Defendants shall forfeit to the United States any property, real or

personal, that constitutes or is derived from proceeds traceable to the

commission of such violations, pursuant to 18 U.S.C. § 981 with 28 U.S.C. §

2461.

5

23.  <u>Money Judgment:</u> Such property includes, but is not limited to, forfeiture money judgments in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of the Defendant's violations, as alleged in this Information.

24.  <u>Substitute Assets:</u>    If the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

    a.  Cannot be located upon the exercise of due diligence;

    b.  Has been transferred or sold to, or deposited with, a third party;

    c.  Has been placed beyond the jurisdiction of the Court;

    d.  Has been substantially diminished in value; or

    e.  Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated

by 18 U.S.C. § 982(b), to seek to forfeit any other property of the Defendant up to

the value of the forfeitable property described above.


MATTHER SCHNEIDER
United States Attorney

*s/John K. Neal*
JOHN K. NEAL
Chief, White Collar Crime Unit
Assistant United States Attorney


s/*Karen L. Reynolds*
KAREN L. REYNOLDS
Assistant United States Attorney


*s/Shankar Ramamurthy*
SHANKAR RAMAMURTHY
Assistant United States Attorney



Date: June 16, 2020

| United States District Court **Eastern District of Michigan** | **Criminal Case Cover Sheet** | **Case Number** 20-20245 |
|---|---|---|

**NOTE:** It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes          ☒ No | **AUSA's Initials:** |

**Case Title:** USA v.  Joseph DuMouchelle

**County where offense occurred :**  Wayne

**Check One:**        ☒ **Felony**            ☐ **Misdemeanor**            ☐ **Petty**

_____Indictment/_____Information --- **no** prior complaint.
_____Indictment/__✓__Information --- based upon prior complaint [Case number: 19-mj-30586                    ]
_____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____        **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

June 16, 2020
Date

Karen Reynolds
Karen Reynolds
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone:(313) 720-0925
Fax:
E-Mail address: Karen.reynolds@usdoj.gov
Attorney Bar #:  P31029

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

# EXHIBIT 2

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AGAINST JOSEPH DUMOUCHELLE UNDER COUNTS III, V,
AND VII OF PLAINTIFF'S SECOND AMENDED COMPLAINT

[PLEA AGREEMENT]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

           Plaintiff,

v.

D-1 Joseph Gregory Dumouchelle,

           Defendant.

No. 20-20245

Hon. Mark A. Goldsmith

Offenses:
Wire Fraud:
18 Unites States Code § 1343
Maximum Penalty:
Count One - 20 years
Maximum Fine: $250,000

## Rule 11 Plea Agreement

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant Joseph Gregory Dumouchelle and the government agree as follows:

1. **Guilty Plea**

    A.   **Counts of Conviction**

        Defendant will enter a plea of guilty to Count One of the Information, which charges Wire Fraud, 18 U.S.C. § 1343.

B.    **Elements of Offense**

The elements of Count One are as follows:

1.  That the defendant knowingly devised and executed a scheme to obtain

money and property by means of material false and fraudulent pretenses,

representations and promises,

2.  that the scheme included material misrepresentations or the concealment

of a material fact,

3.  that the defendant used or caused the use of a wire communication in

interstate commerce in furtherance of the scheme.

C.    **Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for defendant's guilty

plea:

### Wire Fraud – Count One

In late 2018, TR contacted Dumouchelle attempting to collect a $430,000

debt Dumouchelle owed him. In order to convince TR into believing that the debt

would be paid, Dumouchelle offered TR an investment opportunity which

Dumouchelle promised would more than pay back his debt.

Dumouchelle told TR he had an opportunity to buy the "Yellow Rose

Diamond" and would be able to sell it for much more than he paid for it.

2

Dumouchelle promised that if TR bought the Yellow Rose, Dumouchelle would resell it and would split the profits 70/30 with TR.

Dumouchelle, to obtain money by means of false and fraudulent material promises and representations, instructed TR to wire transfer $12,000,000 for the purchase of the Yellow Rose. TR agreed to the terms, but insisted that the money be transferred to the seller's account or a representative of the seller, but not to Dumouchelle's account. With intent to  obtain TR's money by means of material false and fraudulent promises, pretenses and representations, Dumouchelle falsified documents and emails making it appear that the account the money would be wired to was the seller's or the seller's representative.

Also with intent to obtain money by means of false and fraudulent material promises and representations, Dumouchelle sent the false information to TR with directions to wire the money to the account with a notation that it was for the benefit of RD. In fact, the wire transfer directions Dumouchelle sent TR were for Dumouchelle's Bank of America account ending in 0585 and there was no actual buyer for the Yellow Rose.

Convinced that Dumouchelle was telling the truth, on February 6, 2019, TR wired $12,000,000 to Dumouchelle's DFE account at Bank of America. After receiving the funds and in an effort to lull TR into believing the purchase of the

Yellow Rose was legitimate, Dumouchelle sent TR a fraudulent receipt making it appear that TR had purchased the Yellow Rose.

The balance in Dumouchelle's Bank of America account before TR's $12,000,000 was deposited was $500. Immediately after the deposit, Dumouchelle withdrew the majority of the money and used it to pay his personal and business debts and expenses.

On or about February 6, 2019, in the Eastern District of Michigan, Southern Division, Dumouchelle for the purpose of executing the scheme to obtain money by means of material false and fraudulent promises, pretenses and representations transmitted and caused the transmission of wire communications in interstate commerce in the form of an interstate wire transfer of funds in the amount of $12,000,000 from TR's bank account in Chandler, Arizona to Dumouchelle's Band of American account in Bloomfield Hills, Michigan.

It is the government's position that the dollar amount of the loss in this case is within the sentencing guideline loss range of $25,000,000 and $65,000,000 and that Dumouchelle should be held responsible to make restitution for the entire loss, including relevant conduct. The defendant agrees that the guideline calculations in this plea agreement are based on the government's loss calculation and that if the court accepts the government's loss calculation and this plea agreement, he will not be sentenced to more than the top of that range, 151 months. However, the parties

4

agree that the defendant can argue that the loss is within the sentencing guideline loss range of between $9,500,000 and $25,000,000.

The government's calculation of loss is based on information and evidence collected from at least 26 victims of Dumouchelle's crimes, the specific amount of loss and the victims contact information will be submitted to the court and the probation department well in advance of sentencing. If the defendant decides to argue for the lower loss amount he agrees to do the same.

A.    **Standard of Proof**

The Court will find sentencing factors by a preponderance of the evidence, following receipt of this Rule 11 Plea Agreement, the Presentence Report, and any other information that the Court may require of the parties.

B.    **Guideline Range**

The government's recommended guidelines range is **121-151 months**, and the defendant agrees with this guideline range. Except as necessary to the Court's determination regarding paragraph 2.B.1, neither party may take a position concerning the applicable guidelines that is different than any position of that party as noted above, and as reflected in the attached worksheets.

1. **Findings That Increase the Government's Recommended Guidelines Range**

If the Court finds that (i) the defendant's criminal history category is higher than reflected on the attached worksheets, or (ii) the offense level should be higher

5

because, after pleading guilty, the defendant made any false statement to or withheld information from his probation officer, otherwise demonstrated a lack of acceptance of responsibility for this offense, or obstruction of justice or committed any crime, and if any such finding results in a guideline range higher than **121-151 months** with respect to Count One, the higher guidelines range becomes the government's recommended guidelines range in paragraph 2B.

### 2. Findings That Do Not Increase the Government's Recommended Guidelines Range

If the Court finds that defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the attached worksheets, this paragraph does not authorize a corresponding increase in the government's recommended guideline range.

2. **Sentencing Guidelines**

    A. **Standard of Proof**

    The Court will find sentencing factors by a preponderance of the evidence, following receipt of this Rule 11 Plea Agreement, the Presentence Report, and any other information that the court may require of the parties.

3. **Sentence**

    The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

6

A.   **Imprisonment**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of imprisonment in this case may not exceed the top of the s sentencing guideline range as determined by Paragraph 2B.

B.   **Supervised Release**

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is 3 years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that result from any later revocation of supervised release.

C.   **Special Assessment**

Defendant will pay a special assessment of $100. The defendant is required to pay the special assessment immediately after sentence is imposed, and provide a receipt to the United States Attorney's Office within 24 hours of sentencing. The defendant is encouraged to voluntarily pay the special assessment before sentencing and bring the receipt to sentencing.

D.   **Fine**

The parties agree that the fine will be no more than the maximum amount of $250,000.

7

E.   **Restitution**

The Court shall order restitution in an amount to be determined at sentence or at a date and time set by the court. The parties will provide their position on restitution before sentence. Restitution will be based on losses suffered from all of Dumouchelle's victims and is not limited to the charges in the Information.

Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States.  18 U.S.C. §§ 3612(c) and 3613.  If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

F.   **Forfeiture**

As part of this agreement, defendant agrees to forfeit any proceeds he personally obtained as a result of the described offense under 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c). Specifically, defendant agrees to the entry of a forfeiture money judgment against him, in favor of the United States, which is equivalent to the amount of loss determined by the Court at sentencing. Defendant agrees that the criminal scheme described in the factual basis generated criminal proceeds that he personally obtained.

8

Following entry of this Rule 11 Agreement, and upon application by the United States, Defendant agrees to consent to the Court's prompt entry of a Preliminary Order of Forfeiture for the forfeiture money judgment in an amount to be determined by the Court at sentencing. Defendant also agrees to consent to the Court's entry of an Amended Preliminary Order of Forfeiture after the Court determines the amount of the forfeiture money judgment.

Defendant agrees that the forfeiture money judgment may be satisfied from any property owned by him or under his dominion and control. Defendant explicitly agrees to the forfeiture of substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant knowingly, voluntarily, and intelligently waives all constitutional and statutory challenges, in any form, to any forfeiture carried out in accordance with this plea agreement, on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment.

Defendant acknowledges that he understands that forfeiture is part of the sentence that may be imposed on him in this case and waives his right to challenge any failure by the court to advise him of this, under Rule 11(b)(1)(J), or otherwise, at the time his guilty plea is accepted. Defendant further waives the requirements of

9

Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, pronouncement of forfeiture at sentencing, and incorporation of forfeiture in the judgment and waives any right he may have to request a jury determine forfeiture under Rule 32.2(b)(5).

## 4.   COOPERATION AGREEMENT

### A.   Cooperation

The defendant agrees to assist the United States Attorney's Office in the investigation and prosecution of others involved in criminal activities, as specified below.

1.   <u>Truthful Information and Testimony.</u>  The defendant will provide truthful and complete information concerning <u>all facts of this case known to him</u>. The defendant will provide full debriefings as requested to the U.S. Attorney and federal, state, and local law enforcement agencies.  The defendant will provide truthful testimony at all proceedings, whether criminal, civil, or administrative, as requested by the U.S. Attorney.  Such testimony may include, but is not limited to, grand jury proceedings, trials, and pretrial and post-trial proceedings.  The defendant agrees to be available for interviews in preparation of all testimony.  The defendant further agrees to submit, upon request, to government-administered polygraph examinations to verify the defendant's full and truthful cooperation.  The

10

defendant understands that this obligation to provide cooperation continues after sentencing and that failure to follow through constitutes a breach of this agreement.

2.    <u>Active Cooperation</u>.        The defendant shall provide the following active cooperation.  At the request of the U.S. Attorney, the defendant will testify truthfully at any trial or other proceeding concerning this matter.  In addition, the defendant will make herself available for any meetings or interviews requested by the U.S. Attorney in preparation for such testimony.

3.    <u>Nature of Cooperation.</u>  The defendant agrees to cooperate in good faith, meaning that the defendant will not only respond truthfully and completely to all questions asked, but will also volunteer all information that is reasonably related to the subjects discussed in the debriefing.  In other words, the defendant may not omit facts about crimes, participants, or the defendant's involvement, and then claim not to have breached this agreement because the defendant was not specifically asked questions about those crimes, participants, or involvement.  The defendant will notify the U.S. Attorney in advance if the defendant intends to offer a statement or debriefing to other persons other than the defendant's attorney.  The defendant is not prevented in any way from providing truthful information helpful to the defense of any person.  Any actions or statements inconsistent with continued cooperation under this agreement, including but not limited to criminal activity, or a statement indicating a refusal to testify, or any other conduct which in any way

11

undermines the effectiveness of the defendant's cooperation, constitutes a breach of this agreement.

### B.   Government's Authority Regarding Substantial Assistance

1.   <u>Substantial Assistance Determination.</u>  It is exclusively within the government's discretion to determine whether the defendant has provided substantial assistance.  Upon the government's determination that the defendant's cooperation amounts to substantial assistance in the investigation or prosecution of others, the government will seek a downward departure at sentencing under U.S.S.G. Section 5k1.1.  If the government makes such a motion, the amount of reduction, if any, will be determined by the court.

2.   <u>Use of Information Against Defendant.</u>  In exchange for the defendant's agreement to cooperate with the government, as outlined above, the government agrees not to use new information that the defendant provides (pursuant to this agreement) about the defendant's own criminal conduct against defendant at sentencing in this case.  Such information may be revealed to the court but may not be used against the defendant in determining the defendant's sentence range, choosing a sentence within the range, or departing from the range.  There shall be no such restrictions on the use of information: (i) previously known to law enforcement agencies; (ii) revealed to law enforcement agencies by, or discoverable

12

through, an independent source; (iii) in a prosecution for perjury or giving a false statement; or (iv) in the event there is a breach of this agreement.

## 5.    Use of Withdrawn Guilty Plea

If the Court allows defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

## 6.    Each Party's Right to Withdraw from This Agreement

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than is determined by Paragraph 2B. Defendant may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than the maximum allowed by Part 3. This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than the maximum allowed by Part 3.

## 7.    Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence does not exceed **151 months**, the defendant

also waives any right he may have to appeal his sentence on any grounds. If the defendant's sentence of imprisonment is at least **121 months** the government waives any right it may have to appeal the defendant's sentence.

8.    **Collateral Consequences of Conviction**

Defendant understands that his convictions here may carry additional consequences under federal and state law, including the potential loss of the right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. Defendant further understands that, if he is not a native-born citizen of the United States, there may be adverse immigration consequences resulting from conviction. These include possible removal from the United States, denial of citizenship, denaturalization, denied admission to the United States in the future and other possible consequences. Defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of defendant's conviction on any of these matters. Defendant nevertheless affirms that he chooses to plead guilty regardless of any immigration consequences or other collateral consequences of his conviction.

9.    **Consequences of Withdrawal of Guilty Plea or Vacation of Conviction**

If defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If

14

additional charges are filed against defendant within six months after the date the

order vacating defendant's conviction or allowing him to withdraw his guilty plea

becomes final, which charges relate directly or indirectly to the conduct underlying

the guilty plea or to any conduct reflected in the attached worksheets, defendant

waives his right to challenge the additional charges on the ground that they were not

filed in a timely manner, including any claim that they were filed after the

limitations period expired.

10.    **Parties to Plea Agreement**

Unless otherwise indicated, this agreement does not bind any government

agency except the United States Attorney's Office for the Eastern District of

Michigan.

11.    **Scope of Plea Agreement**

This agreement, which includes all documents that it explicitly incorporates,

is the complete agreement between the parties. This agreement supersedes all other

promises, representations, understandings and agreements between the parties

concerning the subject matter of this plea agreement that were made at any time

before the guilty plea is entered in court. Thus, no oral or written promises made by

the government to defendant or to the attorney for the defendant at any time before

defendant pleads guilty are binding except to the extent they have been explicitly

incorporated into this agreement.

15

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

## 12.   Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on September 14, 2020. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

Matthew Schneider
United States Attorney

_sd/KN_

John K. Neal
Assistant United States Attorney
Chief, White Collar Crime Unit

Karen L. Reynolds
Assistant United States Attorney

Date: _9-10-2020_

By signing below, defendant acknowledges that he has read (or been read) this entire document, understands it, and agrees to its terms. He also acknowledges that

he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyer, and has had all of his questions answered by his lawyer.

s/Jonathan M. Epstein

Jonathan M. Epstein
Attorney for Defendant

s/Joseph Gregory DuMouchelle

Joseph Gregory Dumouchelle
Defendant

Date:   September 17, 2020

17

# WORKSHEET A

# OFFENSE LEVEL

Defendant __Joseph Gregory Dumouchelle__   District/Office __Eastern District of Michigan__

Docket Number _____

Count Number(s) _____   U.S. Code Title & Section __18__ : __1343__ ; _____ : _____

*Guidelines Manual* Edition Used: 20___ (Note: The Worksheets are keyed to the November 1, 2016 *Guidelines Manual*)

## INSTRUCTIONS

Complete a separate Worksheet A for each count of conviction or as required in a situation listed at the bottom of Worksheet B.*
*Exceptions*: Use only a single Worksheet A where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (*see* §3D1.2(d)) or where a count of conspiracy, solicitation, or attempt is grouped with a substantive count that was the sole object of the conspiracy, solicitation, or attempt (*see* §3D1.2(a) & (b)).

### 1. Offense Level (*See* Chapter Two)

Enter the applicable base offense level and any specific offense characteristics from Chapter Two and explain the bases for these determinations. Enter the sum in the box provided.

| Guideline | Description | Level |
|---|---|---|
| 2B1.1(a) | Base Level | 7 |
| 2B1.1(b)(1)(L) | more than $25,000,000 and less than $65,000,000 | +22 |
| 2B1.(b)(2)(B) | Substantial Financial Hardship to five or more victims | +4 |
| 2B1.1(b)(10C) | Sophisticated Means | +2 |
| | | |

If the Chapter Two guideline requires application of a cross reference or other reference, an additional Worksheet A may be needed for that analysis. *See* §1B1.5.

Sum | **35**

### 2. Victim-Related Adjustments (*See* Chapter Three, Part A)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".   § _____

### 3. Role in the Offense Adjustments (*See* Chapter Three, Part B)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (–) sign in front of the adjustment. If no adjustment is applicable, enter "0".   § _____

### 4. Obstruction Adjustments (*See* Chapter Three, Part C)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".   § _____

### 5. Adjusted Offense Level

Enter the sum of Items 1–4. If this Worksheet A does not cover all counts of conviction or situations listed at the bottom of Worksheet B, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.

☐ Check here if **all** counts (*including* situations listed at the bottom of Worksheet B)* are addressed on this one Worksheet A. If so, no Worksheet B is used.

☐ If the defendant has no criminal history, enter "I" here and on Worksheet D, Item 4. No Worksheet C is used.

## WORKSHEET B

# MULTIPLE COUNTS*

Defendant **Joseph Gregory Dumouchelle**          Docket Number _____

### INSTRUCTIONS

**STEP 1:** Determine if any of the counts group under §3D1.2(a)–(d) ("the grouping rules"). All, some, or none of the counts may group. Some of the counts may have already been grouped in the application under Worksheet A, specifically: (1) counts grouped under §3D1.2(d); or (2) a count charging conspiracy, solicitation, or attempt that is grouped with the substantive count of conviction (*see* §3D1.2(a)). Explain the reasons for grouping:

_____
_____
_____

**STEP 2:** Using the box(es) provided below, for each group of "closely related counts" (*i.e.*, counts that group together under any of the four grouping rules), enter the highest adjusted offense level from Item 5 of the various Worksheets "A" that comprise the group. *See* §3D1.3. Note that a "group" may consist of a single count that has not grouped with any other count. In those instances, the offense level for the group will be the adjusted offense level for the single count.

**STEP 3:** Enter the number of units to be assigned to each group (*see* §3D1.4) as follows:
- One unit (1) for the group of counts with the highest offense level
- An additional unit (1) for each group that is equally serious or 1 to 4 levels less serious
- An additional half unit (1/2) for each group that is 5 to 8 levels less serious
- No increase in units for groups that are 9 or more levels less serious

**1.  Adjusted Offense Level for the First Group of Counts**

Count number(s) _____                                          [    ]    _____ Unit

**2.  Adjusted Offense Level for the Second Group of Counts**

Count number(s) _____                                          [    ]    _____ Unit

**3.  Adjusted Offense Level for the Third Group of Counts**

Count number(s) _____                                          [    ]    _____ Unit

**4.  Adjusted Offense Level for the Fourth Group of Counts**

Count number(s) _____                                          [    ]    _____ Unit

**5.  Adjusted Offense Level for the Fifth Group of Counts**

Count number(s) _____                                          [    ]    _____ Unit

**6.  Total Units**

_____ Total Units

**7.  Increase in Offense Level Based on Total Units** (See §3D1.4)

| 1 unit: | no increase | 2½ – 3 units: | add 3 levels |
| 1½ units: | add 1 level | 3½ – 5 units: | add 4 levels |
| 2 units: | add 2 levels | More than 5 units: | add 5 levels |

[    ]

**8.  Highest of the Adjusted Offense Levels from Items 1–5 Above**

[    ]

**9.  Combined Adjusted Offense Level** (See §3D1.4)

Enter the sum of Items 7 & 8 here and on Worksheet D, Item 1.          [    ]

*Note: Worksheet B also includes applications that are done "as if there were multiple counts of convictions," including: multiple-object conspiracies (*see* §1B1.2(d)); offense guidelines that direct such application (*e.g.*, §2G2.1(d)(1) (Child Porn Production)); and stipulations to additional offenses (*see* §1B1.2(c)). Note also that these situations typically require the use of multiple Worksheets A.

## WORKSHEET C

# CRIMINAL HISTORY

### [Page 1 of 2]

Defendant  Joseph Gregory Dumouchelle                    Docket Number _____

*Note*: As an aid, some of the basic criminal history "rules" are listed below. However, there are numerous additional criminal history rules at §§4A1.1 and 4A1.2 that must be used with Worksheet C and for correct application.

**Enter the Earliest Date of the Defendant's Relevant Conduct** _____
(The date of *the defendant's commencement of the instant offense*(s))

### 1. Prior Sentences Resulting from Offenses Committed Prior to the Defendant's 18th Birthday

(a) **3 Points** if convicted as an ***adult***, for each prior sentence of imprisonment ***exceeding one year and one month*** imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(d)(1) & (e)(1).

(b) **2 Points** for each prior ***adult or juvenile sentence*** of confinement of ***at least 60 days*** not counted under §4A1.1(a) imposed within 5 years or from which the defendant was released from confinement within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(d)(2)(A).

(c) **1 Point** for each prior ***adult or juvenile sentence*** not counted under §4A1.1(a) or §4A1.1(b) imposed within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(d)(2)(B).

*Note*: Identify as **"adult"** any sentence exceeding one year and one month that resulted from an adult conviction.
A **release date** is required in only two instances: (1) when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period; or (2) when a sentence counted under §4A1.1(b) was imposed more than 5 years prior to *the defendant's earliest date of relevant conduct*, but release from confinement occurred within such 5-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### 2. Prior Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday

(a) **3 Points** for each prior sentence of imprisonment ***exceeding one year and one month*** imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(e)(1).

(b) **2 Points** for each prior sentence of imprisonment of ***at least 60 days*** not counted under §4A1.1(a) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(e)(2).

(c) **1 Point** for each prior sentence not counted under §4A1.1(a) or §4A1.1(b) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(e)(2).

*Note*: A **release date** is required when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# Worksheet C — Criminal History [Page 2 of 2]

Defendant _Joseph Gregory Dumouchelle_          Docket Number _____

(continued from *Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday*)

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**3. Sum of Criminal History Points for prior sentences under §4A1.1(a), (b), & (c) in Items 1 & 2**

A total of 4 points can be added for all the 1-Point sentences counted in Items 1 & 2 combined.

**4. "Status" of Defendant at Time of Instant Offense**

**2 Points** for "status" if the defendant committed any part of the instant offense (*i.e.,* any relevant conduct) while under any criminal justice sentence (*e.g.,* probation, parole, supervised release, imprisonment, work release, or escape status) for a sentence counted in Items 1 or 2. *See* §4A1.1(d) and Application Note 4. List the type of control and identify the counted sentence that resulted in the control. Otherwise, enter **0 Points.**

_____

_____

**5. Crimes of Violence**

**1 Point** for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under §4A1.1(a), (b), or (c) because such sentence was counted as a single sentence which also included another sentence resulting from a conviction for a crime of violence. A total of 3 points can be added under this subsection. *See* §4A1.1(e) and Application Note 5, and §4A1.2(a)(2) & (p). Identify the crimes of violence and briefly explain why the cases are considered a single sentence. Otherwise, enter **0 Points.**

_____

_____

**4. Total Criminal History Points** (Sum of Items 3–5)

| 0 |

**5. Criminal History Category** (Enter here and on Worksheet D, Item 4)

| Total Points | Criminal History Category |
|---|---|
| 0–1 | I |
| 2–3 | II |
| 4–6 | III |
| 7–9 | IV |
| 10–12 | V |
| 13 or more | VI |

| I |

## WORKSHEET D

# DETERMINING THE SENTENCE

[Page 1 of 4]

Defendant _Joseph Gregory Dumouchelle_          Docket Number _____

---

**1. Adjusted Offense Level** (From Worksheet A or B)
If Worksheet B is required, enter the result from Worksheet B, Item 9. Otherwise, enter the result from Worksheet A, Item 5.

| 35 |

**2. Acceptance of Responsibility** (See Chapter Three, Part E)
Enter the applicable reduction of **2** or **3** levels. If no adjustment is applicable, enter "0".

| − 3 |

**3. Offense Level Total** (Item 1 less Item 2)

| 32 |

**4. Criminal History Category** (From Worksheet A or C)
Enter the result from Worksheet C, Item 8, unless the defendant has no criminal history, and as directed at the bottom of Worksheet A, no Worksheet C is used and "I" is entered here.

| I |

**5. Terrorism; Career Offender; Criminal Livelihood; Armed Career Criminal; Repeat and Dangerous Sex Offender** (See Chapter Three, Part A, and Chapter Four, Part B)

  **a. Offense Level Total**
  If the provision for Career Offender (§4B1.1), Criminal Livelihood (§4B1.3), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in an offense level total higher than Item 3, enter the offense level total. Otherwise, enter "N/A".

| |

  **b. Criminal History Category**
  If the provision for Terrorism (§3A1.4), Career Offender (§4B1.1), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in a criminal history category higher than Item 4, enter the applicable criminal history category. Otherwise, enter "N/A".

| |

**6. Guideline Range from Sentencing Table**
Enter the applicable guideline range from Chapter Five, Part A, in months.

| 121 **to** 151 |

**7. Restricted Guideline Range** (See Chapter Five, Part G)
If the statutorily authorized maximum sentence or the statutorily required minimum sentence restricts the guideline range (Item 6) (see §§5G1.1 and 5G1.2), enter either the restricted guideline range or any statutory maximum or minimum penalty that would modify the guideline range. Otherwise, enter "N/A".

| **to** |

  ☐ Check here if §5C1.2 (Limitation on Applicability of Statutory Minimum Penalties in Certain Cases) and 18 U.S.C. § 3553(e) – "The Safety Valve" – are applicable.

**8. Undischarged Term of Imprisonment; Anticipated State Term of Imprisonment** (See §5G1.3)

  ☐ If the defendant is subject to an undischarged term of imprisonment, or an anticipated state term of imprisonment, check this box. Below list the undischarged/anticipated term(s), the applicable section of §5G1.3 and its direction or guidance as to whether the instant federal sentence is to be imposed to run concurrently or consecutively to the undischarged/anticipated term(s), and any sentence adjustment.

# Worksheet D — Determining the Sentence [Page 2 of 4]

Defendant  Joseph Gregory Dumouchelle                    Docket Number _____

## 9. Sentencing Options (See Chapter Five, Sentencing Table and §§5B1.1(a) and 5C1.1)

Check the applicable box that corresponds to the Guideline Range entered in Item 6 or Item 7, if applicable.

☐ **Zone A** (See §§5B1.1(a)(1) & 5C1.1(a) & (b))

If checked, the following options are available:

- Fine (See §§5C1.1(b) & 5E1.2(a))
- "Straight" Probation (See §§5B1.1(a)(1) & 5C1.1(b))
- Imprisonment (See §5C1.1(a) & (c)(1))

☐ **Zone B** (See §§5B1.1(a)(2) & 5C1.1(a) & (c))

If checked, *the minimum term may be satisfied by:*

- Imprisonment (See §5C1.1(a) & (c)(2))
- Imprisonment of *at least one month plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(c)(2))
- Probation with a condition that substitutes intermittent confinement, community confinement, or home detention for imprisonment (See §§5B1.1(a)(2) and 5C1.1(c)(3))

☐ **Zone C** (See §5C1.1(a) & (d))

If checked, *the minimum term may be satisfied by:*

- Imprisonment (See §5C1.1(a) & (d)(1))
- Imprisonment of *at least one-half of the minimum term plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(d)(2))

☑ **Zone D** (See §5C1.1(a) & (f))

If checked, *the minimum term is to be satisfied by* a sentence of imprisonment

## 10. Length of Term of Probation (See §5B1.2)

If probation is imposed, the guideline for the length of such term of probation is: (Check the applicable box)

☐ At least one year, but not more than five years if the offense level total is 6 or greater.

☐ No more than three years if the offense level total is 5 or less.

# Worksheet D — Determining the Sentence [Page 3 of 4]

Defendant __Joseph Gregory Dumouchelle__          Docket Number _____

## 11. Supervised Release (See §§5D1.1 and 5D1.2)

**a. Imposition of a Term of Supervised Release:**

[✓] Ordered because required by statute (See §5D1.1(a)(1)).

[ ] Ordered because a sentence of imprisonment of more than one year is imposed (See §5D1.1(a)(2)).

[ ] Is **not** ordered although a sentence of more than one year is imposed, because it is not required by statute **and** the defendant likely will be deported after imprisonment (See §5D1.1(c)).

[ ] Ordered because it may be ordered in any other case (See §5D1.1(b)).

**b. Length of Term of Supervised Release**

Check the Class of the Offense:

[✓] Class A or B Felony: Two to Five Year Term (See §5D1.2(a)(1))

[ ] Class C or D Felony: One to Three Year Term (See §5D1.2(a)(2))

[ ] Class E Felony or Class A Misdemeanor: One Year Term (See §5D1.2(a)(3))

[ ] If a statutorily required mandatory minimum term of supervised release for the offense impacts the guideline range for the applicable Class of Offense above, also check this box, and list the statutory minimum term (See §5D1.2(c)):

_____ years mandatory minimum term of supervised release

[ ] If an offense in 18 U.S.C. § 2332b(g)(5)(B) that resulted in, or created a foreseeable risk of, death or serious bodily injury to another person; or if a sex offense, the term of supervised release will not be less than the minimum term established above, and may be up to life (See §5D1.2(b)).

Policy Statement: If a sex offense, the *statutory maximum term* of supervised release is recommended.

## 12. Restitution (See §5E1.1)

a. If restitution is applicable, enter the amount. Otherwise enter "N/A" and the reason:
   To be determined before sentence.

b. Enter whether restitution is statutorily mandatory or discretionary:
   mandatory

c. Enter whether restitution is by an order of restitution, or **solely** as a condition of supervision. Enter the authorizing statute:

# Worksheet D — Determining the Sentence [Page 4 of 4]

Defendant  Joseph Gregory Dumouchelle          Docket Number _____

## 13. Fines (The Guideline Range for Fines for Individual Defendants) (See §5E1.2)

|     |     | Minimum | Maximum |
|-----|-----|---------|---------|
| a.  | **Special Fine Provisions** | | |

☐ Check box if any of the counts of conviction is for a statute with a special fine provision. (This **does not** include the general fine provisions of 18 USC § 3571(b)(2) & (d)).

Enter the sum of statutory maximum fines for all such counts.          $1,000,000

b.  **Fine Table (§5E1.2(c)(3))**
Enter the minimum and maximum fines.          $15,000          $150,000

c.  **Fine Guideline Range**
(Determined by the minimum of the Fine Table (Item 13(b)) and the greater maximum above (Item 13(a) or 13(b))).          $15,000          $1,000,000

d.  **Ability to Pay**

☐ Check this box if the defendant does not have an ability to pay.

## 14. Special Assessments for Individual Defendants (See §5E1.3)

Enter the total amount of the statutory special assessments required for all counts of conviction:
- $100 for each felony count of conviction.
- $25 for each Class A misdemeanor count of conviction.
- While not subject to guideline sentencing, the special assessments for a Class B misdemeanor, and a Class C misdemeanor or infraction are $10 and $5 per count, respectively.

**TOTAL:**          $100

## 15. Factors That May Warrant a *Departure* (See §1B1.1(b))

Consider Chapter Five, Part H (Specific Offender Characteristics) and Part K (Departures), and other policy statements and commentary in the *Guidelines Manual* that might warrant consideration in sentencing. (*See also* the "List of Departure Provisions" included in the *Guidelines Manual* after the Index).

_____

_____

_____

_____

## 16. Factors That May Warrant a *Variance* (See §1B1.1(c))

Consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole.

_____

_____

_____

_____

**Completed by** Karen L. Reynolds          **Date** September 12, 2019