UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

JOSEPH DuMOUCHELLE and
MELINDA ADDUCCI,

        Debtors.

Case No. 19-54531
Chapter 7
Hon. Lisa S. Gretchko

_____/

THOMAS RITTER,

        Plaintiff,

Adv. Pro. No. 20-04381-lsg
Hon. Lisa S. Gretchko

v.

JOSEPH DuMOUCHELLE and
MELINDA ADDUCCI,

        Defendants.

_____/

**OPINION DETERMINING THAT THIS ADVERSARY PROCEEDING IS MOOT AS TO JOSEPH DUMOUCHELLE AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO JOSEPH DUMOUCHELLE DUE TO LACK OF SUBJECT MATTER JURISDICTION**

**Background**

On October 11, 2019, the Debtors, Joseph DuMouchelle ("Joseph") and Melinda Adducci ("Melinda"), filed a bankruptcy petition that was assigned case number 19-54531 (the "Main Case").

On September 22, 2020, Thomas Ritter ("Plaintiff" or "Ritter") filed this adversary proceeding against Joseph and Melinda, seeking a determination of nondischargeability under 11 U.S.C. § 523(a)(2), (4), and (6). Several of the allegations in this adversary proceeding seek a determination of § 523 nondischargeability with respect to a $16,414,214.61 default judgment that the Williams County, North Dakota state court entered on September 16, 2019, in favor of Ritter and against, *inter alia*, Joseph and Melinda (the "North Dakota Judgment").[1] The North Dakota Judgment emanates from a series of promissory notes between the parties and a transaction regarding a particular piece of jewelry that the parties call "The Yellow Rose Diamond."

Joseph was prosecuted for his role in The Yellow Rose Diamond transaction, and he pled guilty to wire fraud under 18 U.S.C. § 1343. On July 28, 2022, the U.S. District Court for the Eastern District of Michigan entered a criminal judgment against him and sentenced him to 151 months in prison. He was also ordered to make restitution of $12 million to Ritter. Joseph is currently incarcerated for his involvement in The Yellow Rose Diamond transaction.

On May 2, 2023, Plaintiff filed a motion for summary judgment against Joseph under Counts III, V, and VII of Plaintiff's Second Amended Complaint ("SJ

---

[1] The North Dakota Judgment was based on findings of fact and conclusions of law filed in that court on September 12, 2019.

Motion"; ECF No. 100); those counts seek a judgment of nondischargeability against Joseph under 11 U.S.C. § 523(a)(2)(A), (4), and (6), respectively, for his involvement in The Yellow Rose Diamond transaction. Counts III, V, and VII each conclude with the allegation that discharge is precluded with respect to the $16,414,214.61 North Dakota Judgment. The proposed order attached to the SJ Motion (ECF No. 100-1) confirms that Plaintiff's SJ Motion seeks a determination that $16,414,214.61 (the same amount described in the North Dakota Judgment) is nondischargeable as to Joseph.

On May 12, 2023[2]—ten days after Plaintiff filed the SJ Motion in this adversary proceeding—a stipulation between the United States Trustee and Joseph was filed in the Debtors' Main Case for entry of an order waiving Joseph's discharge under 11 U.S.C. § 727(a)(10) ("Joseph's Denial of Discharge Stipulation"; ECF No.

---

[2] In the Main Case, there were several stipulated orders extending the deadline to commence an action under § 727 for denial of the Debtors' discharge(s). The first three of those orders extended that deadline "for all creditors and parties in interest, including the Chapter 7 Trustee and the Office of the United States Trustee," and the last such order set September 30, 2020 as the deadline for filing § 727 complaints. Although Ritter's complaint in this adversary proceeding was filed on September 22, 2020 (and, therefore, could have included a request for denial of discharge under § 727), Ritter did not seek § 727 relief with respect to either of the Debtors in his original complaint, or in his first or second amended complaints.

The fourth extension order applied only to the Chapter 7 Trustee and the United States Trustee. All subsequent extension orders applied only to the United States Trustee, and the last such order granted the United States Trustee an extension through May 26, 2023 to file a § 727 complaint.

454 in the Main Case). Joseph's Denial of Discharge Stipulation was signed by counsel for the United States Trustee, counsel for Joseph and Melinda, Joseph, and Melinda.³ Paragraph 4 of that stipulation acknowledges that Joseph "will remain liable for any and all of his debts as of the date his bankruptcy petition was filed." Paragraph 6 thereof recites that Joseph has waived all right to appeal the entry of any order waiving his bankruptcy discharge and that Joseph waived the right to review under Fed.R.Civ.P. 60.

On May 15, 2023, this Court entered the Order Denying Discharge of Debtor Joseph G. DuMouchelle Only Under 11 U.S.C. § 727(a)(10) ("Joseph's Denial of Discharge Order"; ECF No. 455 in the Main Case).

On May 16, 2023, Joseph filed a brief in response to the SJ Motion in this adversary proceeding ("Response"; ECF No. 103) alleging that "there is no longer an 'actual case or controversy' at stake as it relates to Plaintiff's claims against Joe," and that the SJ Motion "should be denied (and, in fact, the case should be dismissed with respect to Joe)."

---

³ During the June 23, 2023 oral argument on the mootness issue, Debtors' counsel explained that the steps to obtain Joseph's Denial of Discharge Stipulation had been "in the works" for a significant period of time prior to May 12, 2023, and that (due to Joseph's incarceration) the logistics of communicating with him, explaining the foregoing stipulation to him, and obtaining his signature were complicated.

On June 20, 2023, Plaintiff filed a reply brief in support of the SJ Motion ("Reply"; ECF No. 105) and argued that the case is not moot as to Joseph.

On June 23, 2023, the Court held oral argument on the mootness issue, as it affects the Court's subject matter jurisdiction to consider the merits of the SJ Motion.

## Discussion

Federal courts are courts of limited jurisdiction and may decide only "cases" or "controversies." U.S. Const., Art. III, § 2. The Sixth Circuit recently explained constitutional mootness:

> '[w]e do not have the power to adjudicate disputes that are moot.' A 'case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.' We ask whether it would 'make a difference to the legal interests of the parties' if we granted the relief sought. If a ruling from us would not affect the legal interests of the parties, an issue is constitutionally moot. Because constitutional mootness goes to our subject-matter jurisdiction under Article III, 'we have a continuing obligation to enquire whether there is a present controversy as to which effective relief can be granted.'

*In re Kramer,* 71 F.4th 428, 438 (6th Cir. 2023) (internal citations omitted). "Constitutional mootness goes to the granting of effective relief." *Id.* at 439.

The "case or controversy" requirement of Article III applies to adversary proceedings brought in bankruptcy courts, even though bankruptcy courts are not Article III courts themselves. *See, e.g., In re Rosenfeld,* 698 Fed. Appx. 300, 303 (6th Cir. 2017). In order to satisfy the "case or controversy" requirement in the instant

adversary proceeding, the dispute between Plaintiff and Joseph must be "actual" and "ongoing". *Day v. Klingler (In re Klingler),* 301 B.R. 519 (Bankr. N.D. Ill. 2003).

Joseph's Denial of Discharge Order renders this adversary proceeding moot as to him. Due to Joseph's Denial of Discharge Order, any and all debts that Joseph owed as of October 11, 2019—the date the Debtors' bankruptcy petition was filed—are nondischargeable, including Joseph's debt to Plaintiff for the $16,414,214.61 North Dakota Judgment. Joseph's debts to Plaintiff—all of them—cannot be made any more nondischargeable than they currently are. Simply stated, with respect to Joseph there is no further relief that this Court can grant to Plaintiff. *Klingler,* 301 B.R. at 524.

Plaintiff argues that the cases cited by Joseph do not support his argument that the § 523 claims against him are moot, and that the cases Joseph cited had a different procedural posture than the instant case. Specifically, Plaintiff states that *Mapley v. Mapley (In re Mapley),* 437 B.R. 225 (Bankr. E.D. Mich. 2010) and *Rosenfeld v. Rosenfeld (In re Rosenfeld)*, 535 B.R. 186 (Bankr. E.D. Mich. 2015), *aff'd*, 558 B.R. 825 (E.D. Mich. 2016), *aff'd*, 698 Fed. Appx. 300 (6th Cir. 2017) do not support Joseph's position because in both of those cases the plaintiffs had claims that were already automatically nondischargeable under § 523(a)(5) and/or § 523(a)(15).[4]

---

[4] Plaintiff also distinguishes *Day v. Klingler (In re Klingler)*, 301 B.R. 519 (Bankr. N.D. Ill. 2003) on the grounds that it too involved circumstances where the

Those plaintiffs' subsequent efforts to obtain denial of the debtor's discharge under § 727 were determined to be moot because those plaintiffs' claims were already nondischargeable under § 523.[5]

However, the reasoning in *Mapley* and *Rosenfeld* has also been applied where a creditor's claim was nondischargeable on § 727 grounds and the creditor wished to pursue determinations of nondischargeability under § 523(a)(2), (4), and (6). Recently, in *Surgical Capital Solutions, Inc. v. Muhammad S. Awaisi (In re Awaisi),* 627 B.R. 886 (Bankr. E.D. Mich. 2021), Judge Tucker addressed constitutional mootness in the same procedural posture as the instant case. In *Awaisi,* the plaintiff filed an adversary proceeding seeking a money judgment against the debtor and a determination of nondischargeability under § 523(a)(2), (4), and (6). While that adversary proceeding was pending, the bankruptcy court entered a stipulated order in the main case which denied Mr. Awaisi a discharge based upon § 727(a)(10). Judge Tucker held that the no-discharge order with respect to the debtor rendered moot the plaintiff's § 523 nondischargeability claims against the debtor in the adversary proceeding because the plaintiff had received the dischargeability-related relief it was seeking in the adversary proceeding—namely, that any debt that the

---

plaintiff already had a determination of nondischargeability under § 523 and was seeking further § 727 relief.

[5] Also, the plaintiffs in those cases had no concrete injury because their claims were automatically nondischargeable, thus they lacked standing to bring § 727 actions seeking to hold all of the debtors' other debts nondischargeable.

debtor owed to the plaintiff would not be discharged in the debtor's chapter 7 bankruptcy case. Thus, Judge Tucker held that the court was no longer able to grant the plaintiff "any meaningful relief in addition to what it has already received" and the adversary proceeding was dismissed. *Awaisi,* 627 B.R. at 887.

In his Reply, Plaintiff cites *General Motors Co. v. Heraud (In re Heraud)*, 410 B.R. 569 (Bankr. E.D. Mich. 2009) for the proposition that notwithstanding a determination of nondischargeability under § 727, a creditor is entitled to an additional judgment of nondischargeability under § 523. However, the instant case is different from *Heraud,* and *Heraud* is inapplicable here. The plaintiff in *Heraud* filed a complaint and subsequent summary judgment motion, requesting *both* a determination of nondischargeability of debt under § 523 *and* denial of the debtor's discharge under § 727. The *Heraud* court *concurrently* granted summary judgment denying the debtor a discharge under various subsections of § 727 and determined the debt to be nondischargeable under two of the three requested subsections of § 523, namely § 523(a)(2)(A) and (a)(6).

The procedural posture of the instant case, however, is different than *Heraud.* First, unlike the complaint in *Heraud,* Plaintiff's complaint only seeks relief under § 523 and does not seek relief under both § 727 and § 523. Second, Joseph's Denial of Discharge Order (entered in the Main Case on May 15, 2023) predates any hearing on the merits of the SJ Motion seeking relief against Joseph under § 523.

Thus, unlike *Heraud* in which the court granted *concurrent* relief under § 523 and § 727, the instant case presents the issue of whether the Court can grant Plaintiff further relief against Joseph in the aftermath of Joseph's Denial of Discharge Order, not whether the Court could have granted concurrent relief under § 727 and § 523 had Plaintiff requested it.

Moreover, *Heraud* does not support Plaintiff's position because in *Heraud* the one part of the plaintiff's motion for summary judgment that the court denied, the request for nondischargeability under § 523(a)(4), was then deemed moot and dismissed because the plaintiff in that case already had relief under § 727. *Heraud*, 410 B.R. at 584.

In the aftermath of the May 15, 2023 entry of Joseph's Denial of Discharge Order, there is no further legal relief that the Court can grant to Plaintiff with respect to Joseph, and this adversary proceeding is therefore moot as to Joseph. "Mootness is jurisdictional. If a case becomes moot, a federal court loses jurisdiction. . . . The proceeding must be dismissed." *Klingler,* 301 B.R. at 524-525 (internal citations omitted). *See also Mapley,* 437 B.R. at 230.

In his Reply, Plaintiff argues that his § 523 claims against Joseph have never been adjudicated and that "findings" of nondischargeability as to Joseph under § 523(a)(2), (4), and/or (6) are "predicates" for Plaintiff's assertion (in Count VIII of Plaintiff's Second Amended Complaint, which pertains only to Melinda) that

Melinda is vicariously liable to Plaintiff for Joseph's wrongdoing. Consequently, Plaintiff claims that this Court *can* grant relief to Plaintiff, so that the case is not moot as to Joseph. This argument is not persuasive.

The SJ Motion is solely against Joseph—not Melinda. Consequently, the analysis of mootness is based upon whether the Court can grant Plaintiff relief against Joseph, rather than "findings" that Plaintiff would like to have. The Sixth Circuit's recent decision in *Kramer*, 71 F.4th 428, is instructive here as to the analysis of constitutional mootness. In *Kramer*, the Sixth Circuit explained that the analysis of constitutional mootness requires a court to examine whether the issues presented are still "live" and whether the parties have a legally cognizable interest in the outcome, i.e., whether it would "make a difference to the legal interests of the parties" if the court grants the relief sought. *Id.* at 438. If the answer is "no", then the issue is constitutionally moot. *Id.*

The issue before the Court in the SJ Motion (which is solely against Joseph) is whether the Court can grant Plaintiff additional relief against Joseph. Due to Joseph's Denial of Discharge Order, he will not be discharged from any of his pre-petition debts and, consequently, the issue of nondischargeability of his debt to Plaintiff is no longer "live".

Plaintiff appears to argue "entitlement" to a ruling of nondischargeability against Joseph under § 523(a)(2), (4), and/or (6) even after Joseph's discharge has

10

been denied under § 727. That argument is misguided. The purpose of a § 523 action is to determine if debt is *excepted* from discharge. Because Joseph's bankruptcy discharge has already been denied, Plaintiff's quest for a determination of nondischargeability under § 523 against Joseph seeks an advisory ruling on a hypothetical that does not exist. Indeed, the desired "findings" that Plaintiff seeks would come from the Court and would not constitute *relief against* Joseph. Because Joseph will not receive a discharge, any "findings" or ruling on whether his debt to Plaintiff could have been excepted on the various § 523 grounds from what is now a non-existent discharge would be merely advisory. *See Rasmussen v. Unruh (In re Unruh)*, 278 B.R. 796, 807 (Bankr. D. Minn. 2002). Also, any such "findings" or ruling from the Court would not affect the parties' legal interests because the outcome—Joseph's debt to Plaintiff not being discharged—would remain the same without such "findings" or ruling.

Simply stated, an additional finding of nondischargeability under § 523 cannot provide Plaintiff with any more relief against Joseph in this case than Plaintiff has already received through Joseph's Denial of Discharge Order.

For all of these reasons, the Court finds that there is no longer an actual "case or controversy" as it relates to Plaintiff's claims against Joseph. Consequently, this Court cannot reach the merits of the SJ Motion. Joseph's Denial of Discharge Order renders this adversary proceeding moot as to him, and this Court now lacks subject

matter jurisdiction over this adversary proceeding as it relates to Joseph. Thus, the SJ Motion must be denied, and Joseph must be dismissed from this adversary proceeding.

The Court will enter separate orders consistent with this opinion.

**Signed on July 17, 2023**

/s/ Lisa S. Gretchko

**Lisa S. Gretchko
United States Bankruptcy Judge**