## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In Re:

|  |  |
|---|---|
| | Case No. 19-54531 |
| JOSEPH DuMOUCHELLE and | Chapter 7 |
| MELINDA ADDUCCI, | Hon. Lisa S. Gretchko |
| Debtors. | |

_____/

|  |  |
|---|---|
| THOMAS RITTER, | |
| Plaintiff, | Adv. Pro. No. 20-04381-lsg |
| | Hon. Lisa S. Gretchko |
| v. | |
| JOSEPH DuMOUCHELLE and | |
| MELINDA ADDUCCI, | |
| Defendants. | |

_____/

## OPINION DENYING PLAINTIFF'S MOTIONS FOR RECONSIDERATION

### Background

This matter is before the Court upon Plaintiff's motions for reconsideration of orders emanating from the Court's July 17, 2023 opinion (ECF No. 116) finding constitutional mootness as to Joseph DuMouchelle and, consequently, determining that the Court lacks subject matter jurisdiction to consider Plaintiff's motion for summary judgment against Joseph and dismissing Joseph from this adversary proceeding. Detailed facts are set forth in the July 17, 2023 opinion and are incorporated herein. In this opinion denying Plaintiff's motions for reconsideration,

1

the Court will briefly recite certain of the facts set forth in the July 17, 2023 opinion, to provide context.

On October 11, 2019, the Debtors, Joseph DuMouchelle ("Joseph") and Melinda Adducci ("Melinda"), filed a bankruptcy petition that was assigned case number 19-54531 (the "Main Case").

On September 22, 2020, Thomas Ritter ("Plaintiff") filed this adversary proceeding ("Adversary Proceeding") against Joseph and Melinda, seeking a determination of nondischargeability under 11 U.S.C. §§ 523(a)(2), (4), and (6).

On May 2, 2023, Plaintiff filed a motion for summary judgment ("SJ Motion"; ECF No. 100) against Joseph seeking summary judgment under 11 U.S.C. §§ 523(a)(2), (4), and (6).

Ten days later, on May 12, 2023, a stipulation between the United States Trustee and Joseph was filed in the Main Case for entry of an order waiving Joseph's discharge under 11 U.S.C. § 727(a)(10) ("Joseph's Denial of Discharge Stipulation"; ECF No. 454 in the Main Case).

On May 15, 2023, this Court entered the Order Denying Discharge of Debtor Joseph G. DuMouchelle Only Under 11 U.S.C. § 727 ("Joseph's Denial of Discharge Order"; ECF No. 455 in the Main Case).

On May 16, 2023, Joseph filed a response to the SJ Motion ("Response"; ECF No. 103) alleging that "there is no longer an 'actual case or controversy' at stake as

it relates to Plaintiff's claims against Joe" and that the SJ Motion "should be denied (and, in fact, the case should be dismissed with respect to Joe)."

On June 20, 2023, Plaintiff filed a seven-page reply brief in support of the SJ Motion ("Reply Brief"; ECF No. 105). Four pages of Plaintiff's Reply Brief addressed the mootness issue. Although Plaintiff sought and obtained permission to file a brief in excess of twenty-five pages regarding the SJ Motion itself, Plaintiff never requested leave to file a reply brief longer than the seven-page limit contained in E.D. Mich. LBR 9014-1(f).

On June 23, 2023, the Court held approximately one hour of oral argument on the mootness issue and explained that it is a threshold issue because it affects the Court's subject matter jurisdiction to consider the merits of the SJ Motion.

On June 26, 2023, three days after the June 23, 2023 oral argument on the mootness issue, Plaintiff filed a Motion for Additional Briefing ("Additional Briefing Motion"; ECF No. 107) posing nineteen questions that Plaintiff sought permission to brief. On July 10, 2023, the Debtors filed a response in opposition to the Additional Briefing Motion (ECF No. 108). On July 17, 2023, the Court issued its opinion and order (ECF No. 115) determining that a hearing was unnecessary on Plaintiff's Additional Briefing Motion and denying that motion.

Also on July 17, 2023, the Court issued its Opinion Determining That This Adversary Proceeding Is Moot As To Joseph DuMouchelle And Denying Plaintiff's

Motion For Summary Judgment As To Joseph DuMouchelle Due To Lack Of Subject Matter Jurisdiction ("Opinion"; ECF No. 116), along with an Order Denying Plaintiff's Motion For Summary Judgment Against Joseph DuMouchelle Due To Lack Of Subject Matter Jurisdiction ("SJ Denial Order"; ECF No. 117) and an Order Dismissing Joseph DuMouchelle From This Adversary Proceeding Due To Lack Of Subject Matter Jurisdiction ("Joseph's Dismissal Order"; ECF No. 118).

### Plaintiff's Motions for Reconsideration

On July 31, 2023, Plaintiff filed two motions for reconsideration of Joseph's Dismissal Order ("July 31 Motions for Reconsideration"; ECF Nos. 122 and 123). On August 7, 2023, Plaintiff filed an *Amended* Motion for Reconsideration ("Amended Motion for Reconsideration"; ECF No. 127). Unlike the July 31 Motions for Reconsideration, which Plaintiff electronically "linked" to only Joseph's Dismissal Order (ECF No. 118), Plaintiff electronically linked the Amended Motion for Reconsideration to both the SJ Denial Order (ECF No. 117) and Joseph's Dismissal Order (ECF No. 118). According to its conclusion (ECF No. 127, p. 26), the Amended Motion for Reconsideration seeks reconsideration of the Opinion, the SJ Denial Order, and Joseph's Dismissal Order.

The July 31 Motions for Reconsideration and the Amended Motion for Reconsideration (collectively, the "Motions") all refer to Fed.R.Civ.P. 59(e)[1], Fed.R.Civ.P. 60(b)(6), and E.D. Mich. LBR 9024-1.

### Discussion

As a threshold matter, the Court must first consider whether the Motions were timely filed. The July 31 Motions for Reconsideration were filed on the 14th day after entry of Joseph's Dismissal Order, which is the order from which they seek relief. However, the Amended Motion for Reconsideration was filed a week later, on August 7, 2023.

Fed.R.Civ.P. 59(e) applies to adversary proceedings via Fed.R.Bankr.P. 9023 which, in turn, requires that a motion to alter or amend a judgment be filed within 14 days after entry of the judgment. Similarly, E.D. Mich. LBR 9024-1(a)(1) provides that a motion for reconsideration on the grounds that the order or judgment was erroneous in fact or law must be filed within 14 days after entry of the order or judgment. Thus, the Amended Motion for Reconsideration (filed on August 7, 2023) is untimely as a request for relief under both Fed.R.Civ.P. 59(e) and E.D. Mich. LBR 9024-1. However, the July 31 Motions for Reconsideration (which seek

---

[1] Plaintiff cites to Fed.R.Civ.P. 59(e)(1) and (3), however, Rule 59(e) contains no subsections.

5

reconsideration of only Joseph's Dismissal Order) were timely filed as requests for relief under Fed.R.Civ.P. 59(e) and E.D. Mich. LBR 9024-1.

The Motions also seek relief under Fed.R.Civ.P. 60, which applies in adversary proceedings via Fed.R.Bankr.P. 9024. Although Fed.R.Bankr.P. 9024 modifies some of the deadlines in Fed.R.Civ.P. 60 for particular situations, none of those modified deadlines apply in the instant Adversary Proceeding. Thus, the deadline for Plaintiff to seek relief under Fed.R.Civ.P. 60 is governed by Rule 60(c), which requires that a motion under Rule 60(b) must be made within a reasonable time and, for relief under Rule 60(b)(1), (2) or (3), within one year. The Court finds that all of the Motions were filed within a reasonable time and, thus, constitute timely requests for relief under Fed.R.Civ. P. 60.

Next, the Court must consider the applicability of the rules cited in the Motions as the basis for the relief requested. Fed.R.Civ.P. 59(e) only applies to a judgment. Fed.R.Bankr.P. 54(a), which applies in adversary proceedings via Fed.R.Bankr.P. 7054(a), defines "judgment" to include "a decree and any order from which an appeal lies." Pursuant to Fed.R.Civ.P. 54(b), which applies in adversary proceedings via Fed.R.Bankr.P. 7054(a), Joseph's Dismissal Order does not constitute a final order from which an appeal lies because the Adversary Proceeding is ongoing as against Melinda. Thus, Plaintiff cannot invoke Fed.R.Civ.P. 59(e) to "alter or amend" Joseph's Dismissal Order because it does not constitute a

judgment.[2] *See Elliott v. Golston*, No. 20-5351, 2020 WL 3625736, at *1 (6th Cir. Apr. 27, 2020).

Fed.R.Civ.P. 60 applies to both judgments and orders; thus, it could apply as a basis for the relief requested in the Motions. However, the Motions simply cite to Fed.R.Civ.P. 60(b)(6), without any explanation as to why that rule authorizes the relief that Plaintiff seeks. Relief under Rule 60(b)(6) is appropriate "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *In re Shefa, LLC,* 649 B.R. 881, 882-83 (Bankr. E.D. Mich. 2023), citing *In re Cassidy,* 273 B.R. 531, 537 (Bankr. N.D. Ohio 2002) (citing *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund,* 249 F.3d 519, 524 (6th Cir. 2001)). Plaintiff has failed to satisfy this requirement for relief under Fed.R.Civ.P. 60(b)(6).

---

[2] Even if the Amended Motion for Reconsideration (which seeks reconsideration of Joseph's Dismissal Order *and* the Opinion *and* the SJ Denial Order) was a timely request for relief under Fed.R.Bankr.P. 59(e), which it was not, then pursuant to Fed.R.Bankr.P. 54(a) and (b) none of them constitute a "judgment". Even if Rule 59(e) was somehow applicable, in the Sixth Circuit the grounds for relief under Fed.R.Civ.P. 59(e) are narrow. "[A] motion to alter or amend judgment may be granted only: '(1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice.'" *Bank of Ann Arbor v. Everest Nat'l Ins. Co.,* 563 F. App'x 473, 476 (6th Cir. 2014) (internal citations omitted).

In the Eastern District of Michigan, E.D. Mich. LBR 9024-1(a)(3) also provides for reconsideration of an order or judgment on the grounds that it was erroneous in fact or law and states:

> (3) *Grounds.* Generally, and without restricting the discretion of the court, a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

To establish a "palpable defect," the moving party generally must point to "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consol. Sch.,* 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson,* 428 F.3d 605, 620 (6th Cir. 2005)) (analyzing "palpable defect" standard in the context of a Rule 59(e) motion to alter or amend judgment, which was held to be consistent with the applicable local rule "palpable defect" reconsideration standard).

As noted above, the July 31 Motions for Reconsideration were timely requests for relief under E.D. Mich. LBR 9024-1; however, they only refer to Joseph's Dismissal Order. The Amended Motion for Reconsideration (which refers to the Opinion, the SJ Denial Order, and Joseph's Dismissal Order) was not timely filed as a request for relief under E.D. Mich. LBR 9024-1. Even if the Amended Motion for

8

Reconsideration had been timely filed, it would be denied for the reasons discussed below in this opinion.

With respect to Plaintiff's request for relief under E.D. Mich. LBR 9024-1(a), Plaintiff does not allege any newly discovered evidence or intervening change in controlling law. Rather, Plaintiff asserts that the Court erred by not affording him a full and fair opportunity to brief the issue of mootness, and that there are six key issues that Plaintiff did not address in his Reply Brief, but that he addresses in the Motions. Among Plaintiff's six arguments, Plaintiff asserts that the Court's dismissal of Joseph from this Adversary Proceeding constitutes a clear error of law, that this Adversary Proceeding is not moot as to Joseph, and that because he agreed to stay this Adversary Proceeding during Joseph's criminal case, Plaintiff will suffer "significant injustice" if he is not permitted to pursue his § 523 claims against Joseph.

Plaintiff's arguments lack merit.

### Plaintiff Had A Full And Fair Opportunity To Brief The Issue Of Mootness

Plaintiff alleges "clear error" because this Court did not afford Plaintiff a full and fair opportunity to brief the mootness issue. The Court disagrees.

Although Plaintiff sought and obtained permission to file a brief in excess of twenty-five pages in support of the SJ Motion itself, Plaintiff never requested leave to file a reply brief longer than seven pages.

9

On May 16, 2023, in Joseph's Response to the SJ Motion, Debtors' counsel raised the mootness issue and argued that Joseph should be dismissed from this Adversary Proceeding. Plaintiff's Reply Brief was not filed until June 20, 2023—more than one month later. Plaintiff does not claim (nor could he claim) that he was deprived of sufficient time to brief the mootness issue. Of the seven pages in Plaintiff's Reply Brief, four of them address the mootness issue—discussing the mootness cases cited by Joseph and citing other cases in support of Plaintiff's position on mootness.

The Court was within its discretion to deny Plaintiff's Additional Briefing Motion which sought permission to brief nineteen additional questions/issues. First, the Additional Briefing Motion was filed three days after oral argument concluded on Plaintiff's SJ Motion and, therefore, sought relief that is inconsistent with the sequence and briefing opportunities in E.D. Mich. LBR 9014-1. And, of the nineteen additional issues and/or questions Plaintiff sought to brief, many of them were hypothetical and described facts that are not present in this Adversary Proceeding. Others were academic or addressed issues not previously raised by Plaintiff (including possible evidentiary issues).

E.D. Mich. LBR 9014-1(f) governs the briefing sequence and opportunities on the SJ Motion. Plaintiff is only entitled to the briefing sequence and opportunities established in that rule—and he has received those. Plaintiff's concerns about the

outcome of the June 23, 2023 oral argument on the SJ Motion do not constitute cause for this Court to abandon the timing and sequence provided in E.D. Mich. LBR 9014-1(f).

There was no error (much less clear error) in the Court's denial of Plaintiff's Additional Briefing Motion. Plaintiff has had a full and fair opportunity to brief the issue of mootness.

## The Procedural Posture Of This Adversary Proceeding Vis-à-Vis Joseph's Denial Of Discharge Order Triggered Constitutional Mootness

In Argument No. 1, Plaintiff asserts that there are a number of cases in which bankruptcy courts have addressed § 523 claims after finding the debtor should be denied a discharge under § 727 and that it is nonsensical that constitutional mootness prevents this Court from considering his § 523 claims against Joseph after entry of Joseph's Denial of Discharge Order in the Main Case. Plaintiff relies on *In re Cole*, 378 B.R. 215 (Bankr. N.D. Ill. 2007); *Borock v. Bidlofsky (In re Bidlofsky),* 57 B.R. 883 (Bankr. E.D. Mich. 1985); and *General Motors Co. v. Heraud (In re Heraud),* 410 B.R. 569 (Bankr. E.D. Mich. 2009).

Plaintiff fails, however, to perceive the critical difference between the procedural posture of the instant case and each of *Cole, Bidlofsky,* and *Heraud.* In *Cole* and *Heraud,* the plaintiff filed a complaint seeking both a § 727 denial of discharge and a determination of § 523 claims. In *Bidlofsky,* two cases were consolidated for trial and the court concurrently considered the creditors' § 523

<11</>

claims and the trustee's § 727 claims. The procedural posture of *Cole, Bidlofsky,* and *Heraud* required those courts to concurrently consider claims under § 727 and § 523 because relief under both sections of the bankruptcy code was requested.

The procedural posture of this Adversary Proceeding is different from the cases relied upon by Plaintiff. First, unlike *Cole, Bidlofsky,* and *Heraud,* Plaintiff seeks relief against Joseph under only § 523 and does not also seek relief against him under § 727. Second, Joseph's Denial of Discharge Order predates any hearing on the merits of Plaintiff's SJ Motion. Thus, unlike *Cole, Heraud,* and *Bidlofsky,* in which those courts concurrently considered § 727 and § 523, the instant case presents the issue of whether this Court can grant Plaintiff further relief against Joseph in the aftermath of Joseph's Denial of Discharge Order.

Plaintiff also argues that "courts routinely consider concurrent claims under separate subsections of § 523(a)." This argument misses the mark entirely. The issue for a constitutional mootness analysis is not whether Plaintiff has the right to concurrently seek a determination that certain debts are excepted from discharge under the various subsections of § 523(a). Section 523(a) deals with exceptions to discharge. Once Joseph's Denial of Discharge Order was entered on May 15, 2023, none of his debts are dischargeable. Because Joseph will not receive a discharge, any ruling on whether his debt to Plaintiff could have been excepted from discharge under the various subsections of § 523(a) would be merely an advisory ruling on a

12

hypothetical situation that does not exist. *See Rasmussen v. Unruh (In re Unruh),* 278 B.R. 796, 807 (Bankr. D. Minn. 2002).

According to Plaintiff, "[e]ither the court has jurisdiction or it does not." Apparently, Plaintiff believes that this Court's jurisdiction becomes "frozen" when a complaint is filed. That is incorrect. This Court has an ongoing obligation to assess its jurisdiction throughout a case. *See, e.g., In re Kramer*, 71 F.4th 428, 438 (6th Cir. 2023); *Jarrett v. United States,* __ F.4th __, 2023 WL 5319745, at *2 (6th Cir. August 18, 2023).

## Plaintiff's Ability To Pursue Alternative Theories Of Recovery Does Not Obviate The Existence Of Constitutional Mootness On The Facts Of This Case

In Argument No. 2, Plaintiff claims that he is entitled to proceed on multiple theories and that Courts routinely consider and rule on alternative theories of recovery. Plaintiff relies on *Chase Manhattan Bank v. Iridium Africa Corp.,* 474 F. Supp. 2d 613 (D. Del. 2007), however that case does not support Plaintiff's argument. In *Chase,* the court held that once it granted summary judgment in favor of the bank on its breach of contract claim, it was not required to address the bank's alternative theories of recovery. *Id.* at 616.

Again, Plaintiff's argument misses the mark.

Plaintiff's claims under §§ 523(a)(2), (4), and (6) all seek exceptions to discharge, and they all became constitutionally moot as to Joseph on May 15, 2023,

upon entry of Joseph's Denial of Discharge Order because none of Joseph's debts are being discharged. Thus, the issue of whether Plaintiff is entitled to an exception to Joseph's now non-existent discharge, on any or all of Plaintiff's theories under §§ 523(a)(2), (4), and (6), is constitutionally moot. *See, e.g., Day v. Klingler (In re Klingler),* 301 B.R. 519 (Bankr. N.D. Ill. 2003). Because none of Joseph's debts are being discharged, Joseph's debts to Plaintiff cannot be made any more nondischargeable than they are currently.

### The "Collateral Legal Consequences Doctrine" Does Not Entitle Plaintiff To Pursue His § 523 Claims In The Aftermath Of Joseph's Denial Of Discharge Order

In Argument No. 3, Plaintiff asserts the "collateral legal consequences doctrine" as an exception to constitutional mootness that must be applied to this Adversary Proceeding or else Plaintiff's "vicarious liability" count against Melinda (which is Count VIII of the Second Amended Complaint) will be prejudiced, along with unspecified claims against unidentified third parties.

Plaintiff acknowledges that the "collateral legal consequences doctrine" is generally applied in criminal cases where a defendant completes his or her sentence prior to the criminal case fully working its way through the appellate process. This Adversary Proceeding is not a criminal case; consequently, it is unpersuasive for Plaintiff to argue that an exception that is "generally applied" in the criminal context applies to this Adversary Proceeding.

Plaintiff also cites to two civil cases, *Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.,* 983 F.2d 485 (3d Cir. 1992) and *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201 (3d Cir. 2016), both of which involved decisions on the merits of those cases that were later appealed. Those cases are inapposite because this Court has not made a decision on the merits of the SJ Motion.

*Nat'l Iranian* and *United Steel Paper* are also distinguishable from this Adversary Proceeding because in both of those cases there were concrete legal consequences that prevented the appeals of those existing judgments from being moot. In *Nat'l Iranian*, the appellant argued that the appeal became moot because the appellee did not have assets sufficient to pay the amount sought in the lawsuit. The Third Circuit held that the appeal was not moot, among other reasons, because of the collateral legal consequences doctrine. The collateral legal consequence of the district court judgment was the likely dismissal, on collateral estoppel grounds, of two other pending lawsuits filed by the plaintiff because of the district court's prior determination in the appealed judgment of the applicable statute of limitations. *Nat'l Iranian*, 983 F.2d at 490.

In *United Steel Paper*, the United States government argued that the appeal of a district court judgment, which held (in part) that the Virgin Islands Economic Stability Act of 2011 (VIESA) did not violate the Contract Clause of the United

States Constitution, became moot when the statute at issue expired. However, the district court decision that was appealed to the Third Circuit would have collateral estoppel legal consequences in a pending arbitration between the unions (appellants) and the government, because the validity of the VIESA could not be adjudicated in the arbitration. The Third Circuit held that the appeal was therefore not moot. *United Steel Paper*, 842 F.3d at 209-10.

In the instant case, however, Plaintiff does not have a decision on the merits of the SJ Motion. And, in both *Nat'l Iranian* and *United Steel Paper*, there was no dispute that the trial courts had subject matter jurisdiction at the time they entered the respective judgments. The issue in those cases was whether subsequent events rendered the ongoing appeals of those judgments moot. That issue is not present here as the Court never reached a judgment on Plaintiff's § 523 claims against Joseph before Joseph waived his right to a discharge.

Moreover, *Nat'l Iranian* and *United Steel Paper* were both decided by the Third Circuit Court of Appeals. Plaintiff does not cite any Sixth Circuit case (nor could this Court find any) that superimposes the "collateral legal consequences" doctrine upon the Bankruptcy Court's ongoing obligation to check its limited jurisdiction for constitutional mootness.

Plaintiff also argues that because a decision on the merits regarding Joseph's culpability under § 523 would assist Plaintiff in proving that Melinda is vicariously

liable for Joseph's wrongful acts or might impact claims involving subsequent (unspecified) transferees, the "collateral legal consequences" doctrine should apply to the instant case. The Court disagrees.

Plaintiff fails to articulate how the lack of a § 523 judgment against Joseph prejudices Plaintiff's vicarious liability claim against Melinda. Plaintiff is still free to pursue his § 523 claims against Melinda and argue that she is vicariously liable for Joseph's wrongdoing, which is a matter of public record in the criminal case against him. Plaintiff has not provided any authority for his argument that a party is prospectively entitled to a decision on the merits of a cause of action that is otherwise moot simply because that decision may have preclusive effect against another party in the case.

Plaintiff argues that he is prejudiced by not receiving a decision on his § 523 claims because that decision would affect claims against third parties. However, he fails to specify the claims or the subsequent transferees that he references in this argument, much less the impact that the lack of a § 523 judgment against Joseph would have thereon. And again, Plaintiff has not provided any authority stating that a party is prospectively entitled to a decision on the merits of a cause of action that is otherwise moot simply because that decision may have preclusive effect in another proceeding.

Indeed, Plaintiff's argument indicates that he seeks findings as to Joseph that Plaintiff can use in his case against Melinda (or third parties), rather than relief from Joseph. However, the analysis of constitutional mootness focuses on whether the Court can grant additional *relief*. *Kramer*, 71 F.4th at 438-39. The findings that Plaintiff seems to be seeking regarding Joseph's wrongdoing do not constitute *relief against Joseph*.

### Plaintiff Chose To Pursue Only § 523 Claims Against Joseph And Cannot Complain That The United States Trustee And Joseph Agreed To A § 727(a)(10) Waiver Of Discharge

In Argument No. 3 and in the heading of Argument No. 4, Plaintiff argues that he is "entitled" to a determination of his § 523 claims as "the first determination in this case by this court of such non-dischargeability", and that "significant injustice" will result if he is not permitted to pursue his § 523 claims against Joseph after having agreed to a two-year stay thereof due to the criminal case against Joseph. The Court disagrees.

Plaintiff chose to pursue only § 523 claims against the Debtors and left it to the United States Trustee to pursue § 727 claims against the Debtors. Having chosen not to pursue § 727 claims against the Debtors, Plaintiff must live with the results of that choice. Plaintiff cannot now complain about the United States Trustee's decision to accept Joseph's Denial of Discharge Stipulation and obtain entry of Joseph's Denial of Discharge Order or claim that a "significant injustice" will occur if

Joseph's Denial of Discharge Order is found to render his § 523 claims against Joseph constitutionally moot.

Plaintiff already has a $16,414,214.61 judgment against Joseph (and Melinda) from the North Dakota state court. The U.S. District Court for the Eastern District of Michigan has already convicted Joseph, sentenced him to 151 months in prison for his role in The Yellow Rose Diamond transaction, and determined that the amount of restitution owed to Plaintiff is $12 million. Thus, Plaintiff has already received a determination of Joseph's wrongdoing as to Plaintiff; he is not "entitled" to a ruling from this Court on that issue.

### In *In Re Awaisi,* The Bankruptcy Court For The Eastern District Of Michigan Considered A Case In The Same Procedural Posture As The Instant Case And Dismissed That Case For Lack Of Subject Matter Jurisdiction Based On Constitutional Mootness

In Argument No. 4, Plaintiff also argues that no court has considered this exact fact pattern, but Plaintiff's argument is inaccurate. In *Surgical Capital Sols., Inc. v. Awaisi (In re Awaisi),* 627 B.R. 886 (Bankr. E.D. Mich. 2021), Judge Thomas J. Tucker addressed constitutional mootness in the same procedural posture as the instant case.

In *Awaisi,* the plaintiff filed an adversary proceeding against the debtor, Mr. Awaisi, under only §§ 523(a)(2)(A), (4), and (6). Plaintiff's recital that the adversary proceeding in *Awaisi* sought concurrent relief under both § 523 and § 727 is simply inaccurate.

19

The procedural posture of *Awaisi* is identical to the instant case: while the adversary proceeding against Mr. Awaisi was pending, the bankruptcy court entered a stipulated order in the main case that denied his discharge based upon § 727(a)(10). In *Awaisi,* Judge Tucker held that the no-discharge order with respect to the debtor rendered moot the plaintiff's § 523 nondischargeability claims against the debtor in the adversary proceeding because the plaintiff had received the dischargeability-related relief it was seeking in the adversary proceeding—namely, that any debt that the debtor owed to the plaintiff would not be discharged in the debtor's chapter 7 bankruptcy case. Thus, Judge Tucker held that the court was no longer able to grant the plaintiff "any meaningful relief in addition to what it has already received" and the adversary proceeding was dismissed. *Awaisi,* 627 B.R. at 887.

This Court agrees with Judge Tucker's analysis in *Awaisi*, and the same result is warranted in the instant Adversary Proceeding.

Plaintiff also argues that he is pursuing his own rights rather than seeking to pursue the rights of others, which was the issue in *Mapley v. Mapley (In re Mapley)*, 437 B.R. 225 (Bankr. E.D. Mich. 2010); *Rosenfeld v. Rosenfeld (In re Rosenfeld),* 535 B.R. 186 (Bankr. E.D. Mich. 2015), *aff'd,* 558 B.R. 825 (E.D. Mich. 2016), *aff'd,* 698 F. App'x 300 (6th Cir. 2017); and *Day v. Klingler (In re Klingler),* 301 B.R. 519 (Bankr. N.D. Ill. 2003). However, the analysis of constitutional mootness in the instant case is the same as in *Mapley, Rosenfeld,* and *Klingler*—is this Court

able to grant Plaintiff any additional dischargeability-related relief beyond what Plaintiff has already received due to Joseph's Denial of Discharge Order? The answer is "no"—just as it was in *Mapley, Rosenfeld,* and *Klingler*. To the extent that the courts in *Mapley*, *Rosenfeld*, and *Klingler* addressed the plaintiffs' attempts to seek § 727 relief on behalf of the other creditors, the courts in those cases determined that the plaintiffs, having already had their own debts deemed nondischargeable, did not have standing to seek § 727 relief. While there is no issue of Plaintiff's standing in the instant Adversary Proceeding, the *Mapley*, *Rosenfeld*, and *Klingler* analysis of constitutional mootness in nondischargeability actions is still applicable here. The plaintiffs in those cases did not lose their ability to pursue § 727 relief because § 727 is "broader" than the more "particularized" relief under § 523. Instead, those plaintiffs lost their ability to seek § 727 relief because their respective debts were already nondischargeable, and the courts could not grant any more effective relief.

### Plaintiff's Fear That Joseph's Denial Of Discharge Order Might Be Set Aside Does Not Obviate Constitutional Mootness And Plaintiff Could Seek Relief Under Fed.R.Civ.P. Rule 60(b) If That Were To Occur

In Argument No. 5, Plaintiff asserts that this Adversary Proceeding is not moot as to Joseph because, based upon his behavior in his criminal case, there exists a "reasonable expectation" that Joseph will seek to set aside his § 727(a)(10) waiver

and Joseph's Denial of Discharge Order, in which case Plaintiff would have no opportunity to pursue § 523 claims against Joseph. This argument is unpersuasive.

First, Plaintiff's reliance on *In re Blast Energy Servs., Inc.,* 396 B.R. 676 (Bankr. S.D. Tex. 2008) is misplaced. *Blast* involved a situation in which two separate companies, EDDO and Eagle,[3] were involved in a dispute as to which was the rightful owner of a claim against Hallwood. EDDO and Eagle were debtors in separate bankruptcy cases in Texas and Oklahoma, respectively. In EDDO's case, EDDO reached a settlement with Hallwood that was approved by the bankruptcy court in Texas. At the time of the settlement and approval, Eagle believed, under the terms of an agreement between EDDO and Eagle, that EDDO was entitled to the claim at issue. Subsequently, Eagle determined that it was actually entitled to the claim, at least as it interpreted the agreement with EDDO. In its own bankruptcy case in Oklahoma, Eagle filed a motion for leave to file an amended complaint alleging that Hallwood owed the claim to Eagle and not to EDDO. In response, EDDO filed a motion for contempt against Eagle in Texas, partially out of concern that Eagle's action against Hallwood jeopardized the settlement that the Texas bankruptcy court had already approved between EDDO and Hallwood. When

---

[3] The full legal names of the parties are "(1) Eagle Domestic Drilling Operations, L.L.C. (EDDO); (2) Eagle Drilling, L.L.C. (Eagle); and (3) Hallwood Petroleum (Hallwood)." *Blast,* 396 B.R. at 681.

Hallwood made the first installment payment to EDDO under the settlement, Eagle argued that EDDO's contempt motion was moot.

The court in *Blast* held that payment of one settlement installment did not render the matter moot because there were still several other payments that Hallwood was obligated to make in the future. Unlike the installment payments to be made over time in *Blast*, Joseph's Denial of Discharge Order is a *fait accompli*. It is done. It renders all of Joseph's debts nondischargeable.

Second, Plaintiff's alleged "reasonable expectation" (or fear) of Joseph's future behavior is a hypothetical, based on the fact that Debtors'/Defendants' counsel has filed motions to withdraw.

Third, Plaintiff's argument ignores paragraph 6 of Joseph's Denial of Discharge Stipulation, which states:

> 6. Mr. DuMouchelle further waives all right to appeal the entry of any order approving this stipulation, and the waiver of his bankruptcy discharge. Mr. DuMouchelle further waives the right to review of this stipulation, or the resulting order denying discharge, under Fed.R.Civ.P. 60.

(*See* Joseph's Denial of Discharge Stipulation, ECF No. 454 in the Main Case).

In other words, Joseph has already waived the procedural mechanisms to set aside his § 727(a)(10) waiver and Joseph's Denial of Discharge Order.

Fourth, any attempt to set aside Joseph's Denial of Discharge Stipulation and Joseph's Denial of Discharge Order would require the approval of this Court. And,

even if that occurred, Plaintiff could then seek appropriate relief under Fed.R.Civ.P. 60(b).

### In The Aftermath Of Joseph's Denial Of Discharge Order, Plaintiff No Longer Has A Legally Cognizable Interest That Entitles Him To A Judgment Against Joseph On § 523 Claims

In Argument No. 6, Plaintiff asserts that he still has a legally cognizable § 523 claim against Joseph. Plaintiff acknowledges that in order to have a legally cognizable claim he must show that it is likely to be redressed by a favorable decision in court and that he lacks (or loses) a legally cognizable interest if later events make it impossible for the court to grant any effectual relief.

While Plaintiff's § 523 claims against Joseph may have been "live" before May 15, 2023, they became moot when Joseph's Denial of Discharge Order was entered in the Main Case, and Plaintiff then lost a legally cognizable interest in those claims. The language of § 523 confirms this result.

The title of § 523 reads: "**Exceptions to discharge**" (emphasis in original). Then, the preamble of § 523(a) states:

> **(a)** A **discharge** under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor **from any debt**—

(emphasis added).

By its very language, § 523(a) focuses on the debt and can only have effect if an individual debtor receives a discharge under section 727, 1141, 1192, 1228(a),

1228(b), or 1328(b) of the bankruptcy code. In the aftermath of Joseph's Denial of Discharge Order, Plaintiff cannot show that his § 523 claims are "likely to be redressed by a favorable decision in court," because there is no additional dischargeability-related relief that this Court can grant. Thus, Plaintiff's § 523 claims are no longer legally cognizable as to Joseph.

In sum, the Court concludes that the Motions must be denied.

Simply stated, upon entry of Joseph's Denial of Discharge Order on May 15, 2023, this Adversary Proceeding became constitutionally moot as to Joseph. *See* Opinion, ECF No. 116. pp. 5-6. An additional determination of nondischargeability under § 523 cannot provide any more relief against Joseph in this Adversary Proceeding than Plaintiff has already received through Joseph's Denial of Discharge Order. Plaintiff disagrees with the Court's ruling, but that disagreement does not provide grounds for the Court to reconsider the Opinion, the SJ Denial Order, or Joseph's Dismissal Order. Accordingly,

The July 31 Motions for Reconsideration (ECF Nos. 122 and 123) and the Amended Motion for Reconsideration (ECF No. 127) are denied. The Court will enter separate orders consistent with this opinion.

**Signed on September 14, 2023**



/s/ Lisa S. Gretchko

**Lisa S. Gretchko**
**United States Bankruptcy Judge**