## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

Joseph G. DuMouchelle and
Melinda J. Adducci,

       Debtors.

_____/

Thomas T. Ritter,

       Plaintiff,

v.

Melinda J. Adducci,

       Defendant.

_____/

Chapter 7

Case No. 19-54531-lsg

Honorable Lisa S. Gretchko

Adversary Pro. No. 20-04381

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MELINDA ADDUCCI UNDER COUNTS III, V, AND VIII OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Thomas T. Ritter ("Plaintiff"), by his undersigned counsel, hereby moves for entry of summary judgment against Defendant Melinda Adducci ("Melinda") under Counts III, V, and VIII of Plaintiff's Second Amended Complaint. Plaintiff relies on the attached *Brief in Support of Plaintiff's Motion for Summary Judgment Against Defendant Melinda Adducci Under Counts III, V, and VIII of Plaintiff's Second Amended Complaint*. On October 20, 2023, Plaintiff

requested Defendant's concurrence in this motion and as of the date of this Motion, Plaintiff has not received a response.

Plaintiff reserves all rights and interests in his remaining claims against Melinda under *Plaintiff's Second Amended Complaint*.

Respectfully submitted by:

**TAFT, STETTINIUS & HOLLISTER, LLP**

Dated: October 26, 2023

By: /s/ Jay L. Welford
Jay L. Welford (P34471)
Kimberly Ross Clayson (P69804)
Counsel to Plaintiff
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
Phone: (248) 351-3000
jwelford@taftlaw.com
kclayson@taftlaw.com

*Counsel for Plaintiff Thomas T. Ritter*

# EXHIBIT 1

[PROPOSED ORDER ATTACHED]

128877510v2

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

Joseph G. DuMouchelle and
Melinda J. Adducci,

          Debtors.

_____/

Chapter 7

Case No. 19-54531-lsg

Honorable Lisa S. Gretchko

Thomas T. Ritter,

          Plaintiff,

v.

Melinda J. Adducci,

          Defendant.

_____/

Adversary Pro. No. 20-04381

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNDER COUNTS III, V, AND VIII OF PLAINTIFF'S SECOND AMENDED COMPLAINT

THIS MATTER came before the court on *Plaintiff's Motion for Summary Judgment Under Counts III, V, and VIII of Plaintiff's Second Amended Complaint* (the "Motion"). The Motion together with a brief in support of the Motion was served on Defendant together with Plaintiff's Notice of Opportunity to Respond. The Court has reviewed the Motion and brief in support of the Motion and based thereon, finds cause to enter this Judgment.

**NOW THEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion is granted.

**IT IS FURTHER ORDERED** that Plaintiff is granted a nondischargeable judgment against Defendant Melinda Adducci, under Counts III, V, and VIII of Plaintiff's Second Amended Complaint, pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (4) in the total amount of $16,414,214.61 ("Judgment"). This Judgment shall accrue interest from and after the date of its entry at the federal judgment interest rate plus costs and attorney fees incurred after the date of this Judgment related to collection.

# EXHIBIT 2

[NOTICE AND OPPORTUNITY ATTACHED]

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

                                                Chapter 7

Joseph G. DuMouchelle and
Melinda J. Adducci,                          Case No. 19-54531-lsg

                                                Honorable Lisa S. Gretchko

                Debtors.
_____/

Thomas T. Ritter,

                Plaintiff,

v.

Melinda J. Adducci,                          Adversary Pro. No. 20-04381

                Defendant.
_____/

## NOTICE OF OPPORTUNITY FOR HEARING RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MELINDA ADDUCCI UNDER COUNTS III, V, AND VIII OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff has filed *Plaintiff's Motion For Summary Judgment Against Defendant Under Counts III, V, And VIII Of Plaintiff's Second Amended Complaint* (the "Motion") with the United States Bankruptcy Court for the Eastern District of Michigan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief requested in the Motion, or if you want the court to consider your views on the Motion, within fourteen (14) days, you or your attorney must:

1.     File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort Street, Suite 2100
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

You must also send a copy to:

Taft Stettinius & Hollister LLC
Attn: Jay Welford
27777 Franklin, Suite 2500
Southfield, MI 48034
(248) 351-3000
jwelford@taftlaw.com

2.     If a response or answer is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Respectfully submitted by:

---

[1] Response or answer must comply with Fed.R.Civ.P. 8(b), (c) and (e).

TAFT, STETTINIUS & HOLLISTER, LLP

Dated: October 26, 2023      By:   /s/ Jay L. Welford
                                 Jay L. Welford (P34471)
                                 Kimberly Ross Clayson (P69804)
                                 Counsel to Plaintiff
                                 27777 Franklin Road, Suite 2500
                                 Southfield, Michigan 48034
                                 Phone: (248) 351-3000
                                 jwelford@taftlaw.com
                                 kclayson@taftlaw.com

*Counsel for Plaintiff Thomas T. Ritter*

**EXHIBIT 3**

[BRIEF IN SUPPORT ATTACHED]

128877510v2

In re:                                              Chapter 7

Joseph G. DuMouchelle and
Melinda J. Adducci,                                 Case No. 19-54531-lsg

                                                    Honorable Lisa S. Gretchko

        Debtors.
_____/

Thomas T. Ritter,

        Plaintiff,

v.

Melinda J. Adducci,                                 Adversary Pro. No. 20-04381

        Defendant.
_____/

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MELINDA ADDUCCI UNDER COUNTS III, V, AND VIII OF <u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

i

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES ................................................................................................II

TABLE OF AUTHORITY AND CASES ............................................................................... III

EXHIBITS .............................................................................................................................. V

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 3

III.    ARGUMENT ........................................................................................................... 14

        A.      PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
                FOR $16,414,214.61 MILLION AGAINST MELINDA WHERE THERE
                ARE NO GENUINE ISSUES OF MATERIAL FACT PERTAINING TO
                HER NONDISCHARGEABLE LIABILITY. ................................................... 14

        B.      PLAINTIFF'S       CLAIM       AGAINST       MELINDA       IS
                NONDISCHARGEABLE UNDER 11 U.S.C. §523(A)(2)(A) AS A
                MATTER OF LAW IRRESPECTIVE OF HER PERSONAL
                CULPABILITY DUE TO JOSEPH'S ADMISSIONS IN THE CRIMINAL
                PROCEEDING AND HER OWNERSHIP AND INVOLVEMENT IN
                DUMOUCHELLE JEWELLERS. ...................................................................... 15

        D.      PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT IN THE FULL
                AMOUNT OF THE YELLOW ROSE JUDGMENT AMOUNT OF
                $16,414,214.61 ................................................................................................. 24

IV.     CONCLUSION ........................................................................................................ 25

## STATEMENT OF THE ISSUES

Is Plaintiff entitled to summary judgment against Defendant Melinda Adducci ("Melinda") under Counts III, V, and VIII of Plaintiff's Second Amended Complaint where, irrespective of Melinda's direct culpability, it is undisputed that the debt incurred by Joseph DuMouchelle ("Joseph") and Joseph DuMouchelle Fine and Estate Jewellers, LLC ("DuMouchelle Jewellers") in the "Yellow Rose Transaction" was incurred through fraud and theft, Joseph admitted and pled guilty to, and was convicted of criminal wire fraud in connection with the Yellow Rose Transaction and the resulting fraud against Plaintiff, and due to her relationship to Joseph and DuMouchelle Jewellers, Melinda, by law, is vicariously liable to Plaintiff?

Plaintiff says: Yes

# TABLE OF AUTHORITY AND CASES

**Page(s)**

**Cases**

*Bartenwerfer v. Buckley*,
    143 S. Ct. 665 (2023) ........................................................15, 16, 17, 18

*Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*,
    370 B.R. 104 (B.A.P. 6th Cir. 2007) .................................................22

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................................14

*Chenaille v. Palilla (In re Palilla)*,
    493 B.R. 248 (Bankr. D. Colo. 2013) .................................................21

*In re Ledford*,
    970 F.2d 1556 (6th Cir. 1992) .......................................................16

*In re Piercy*,
    21 F.4th 909 (6th Cir. 2021) .........................................................22

*Kahkeshani v. Hann* (*In re Hann*), No. 22-20407, 2023 U.S. App.
    LEXIS 27447, (5th Cir. Oct. 16, 2023) ........................................17, 18

*Strang v. Bradner*,
    114 U.S. 555, 29 L. Ed. 248, 5 S. Ct. 1038 (1885)......................................15-18

**Statutes**

11 U.S.C. §523(a)(2)(A) ................................................. 2, 15, 16, 17, 18, 19, 20, 21

11 U.S.C. §§523(a)(2)(A) and (4)........................................................15

11 U.S.C. §§523(a)(2)(A) and (a)(4) ......................................................1

11 U.S.C. §523(a)(4)........................................................2, 21, 22

18 U.S.C. §1343........................................................5, 19

**Other Authorities**

Fed. R. Bankr. P. 3001(f) ........................................................24

Fed. R. Bankr. P. 7056 .............................................................................14

Fed. R. Civ. P. 56 ....................................................................................14

Fed.R.Civ.P. 56(c).....................................................................................14

Rule 11 .................................................................................5, 20, 22

## EXHIBITS

**Exhibit 1** ("North Dakota Judgment.") ........................................................2

**Exhibit 2** ("Articles of Formation") .................................................3, 18

**Exhibit 3** ("Deposition Transcript")................................................3

**Exhibit 4** ("LLC Annual Report Filings") .........................................3

**Exhibit 5** ("DuMouchelles Website"). ............................................3

**Exhibit 6** ("Information")................................................................4

**Exhibit 7** ("Plea Agreement") ..............................5, 6, 20, 22, 23, 24

**Exhibit 8** ("Plea Transcript") ...........................................9, 20, 23

**Exhibit 9** ("Presentence Opinion") ................................................9

**Exhibit 10** ("Restitution Order").......................................9, 10, 22

**Exhibit 11** ("Sophisticated Means Opinion") ...............................10

**Exhibit 12** ("Order of Forfeiture") .............................10, 12, 22

**Exhibit 13** ("Criminal Judgment").......................11, 12, 13, 22

**Exhibit 14** ("Appeal") .................................................................11

**Exhibit 15** ("Appellate Judgment") ............................................11

**Exhibit 16** ("January 25, 2019 Email").......................................11

**Exhibit 17** ("Response to Discovery"), Page 4 ....................12, 24

**Exhibit 18** ("Schedule E/F") .........................................13, 19, 24

# **BRIEF**

Plaintiff, Thomas T. Ritter ("Plaintiff"), by his undersigned counsel states as follows in support of *Plaintiff's Motion for Summary Judgment against Defendant Melinda Adducci under Counts III, V, and VIII of Plaintiff's Second Amended Complaint* ("Motion"):

## I.    **INTRODUCTION**

Plaintiff is seeking summary judgment under Counts III, V, and VIII of *Plaintiff's Second Amended Complaint* [ECF No. 91, Adv. Pro. 20-04381] ("Amended Complaint"). Plaintiff's undisputed claim against Melinda Adducci ("Melinda") is nondischargeable as to the Yellow Rose Transaction under 11 U.S.C. §§523(a)(2)(A) and (a)(4). It is undisputed that Melinda, her husband and co-debtor, Joseph DuMocuhelle ("Joseph") and their business, Joseph DuMouchelle Fine & Estate Jewellers, LLC ("DuMouchelle Jewellers"), incurred a debt to Plaintiff. Joseph's prior adjudication of criminality against Plaintiff regarding The Yellow Rose Transaction leaves no issue of fact as to whether the debt was incurred through fraud. Melinda is not only indebted to Plaintiff for the exact transaction that led to Joseph's criminal conviction, but the undisputed facts establish she was directly involved in the Yellow Rose Transaction. Plaintiff is seeking judgment under Counts III, V, and VIII in the amount of Sixteen Million Four Hundred Fourteen Thousand

Two Hundred Fourteen and 61/100 Dollars USD ($16,414,214.61) (the "Yellow Rose Judgment Amount").

The Yellow Rose Judgment Amount was established by entry of a default judgment entered on September 12, 2019 against Melinda, Joseph, and DuMouchelle Jewellers in the Northwest District Court, Williams County, North Dakota following the court's findings of fact and conclusions of law. **Exhibit 1** ("North Dakota Judgment."). Melinda does not dispute that the action was filed and judgment was entered against her and in Plaintiff's favor. [ECF No. 93], *Defendants' Answer to Plaintiff's Second Amended Complaint to Determine Nondischargeability of Indebtedness Under 11 U.S.C. §523* ("Answer"), page 5, paragraphs 41 and 43.

Count III of the Complaint seeks a determination of nondischargeability against Melinda (and formerly against Joseph) for The Yellow Rose Judgment Amount pursuant to Sec. 523(a)(2)(A). Count V of the Complaint seeks a determination of nondischargeability against Melinda (and formerly against Joseph) for The Yellow Rose Judgment Amount pursuant to Sec. 523(a)(4). Count VIII incorporates by reference all counts of the Complaint and seeks a determination of nondischargeability as against Melinda on the basis of vicarious nondischargeable liability. Plaintiff's brief in support of his Motion incorporates by reference his arguments set out for judgment under Counts III and V in his request for summary judgment pursuant to Count VIII for vicarious nondischargeable liability.

## II.    BACKGROUND

*DuMouchelle Jewellers*

Joseph and Melinda founded DuMouchelle Jewellers in the State of Michigan in 1996 as a member managed company. **Exhibit 2** ("Articles of Formation"), **Exhibit 3,** page 10 ("Deposition Transcript"). The company operated as a fine jewelry appraisal and auctioneer business until at least 2019. **Exhibit 4** ("LLC Annual Report Filings"). Melinda served as the vice president and held at least a 10 percent membership interest in DuMouchelle Jewellers. **Exhibit 3**, page 11; [ECF No. 93]; Answer, page 2, paragraph 9. Melinda and Joseph each held themselves out publicly as partners of DuMouchelle Jewellers, in the business, they both were responsible for the appraisal and brokering of jewelry, Melinda held check writing authority, and Melinda communicated with DuMouchelle Jewellers customers. *Id.* page 16-17; **Exhibit 5** ("DuMouchelle Jewellers' Website"). Melinda is a trained gemologist, a member of the boards of the Michigan Jewelers Association, Accredited Gemologists Association, and she also indicated that she served as the GIA Alumni-Michigan Chapter President. **Exhibit 3**, page 16; **Exhibit 5**. Melinda also represented herself as a member of the National Association of Jewelry Appraisers and the American Society of Appraisers. *Id.*

*Joseph's Criminal Information*

On June 16, 2020, the United States of America filed an *Information* against Joseph in the United States District Court for the Eastern District of Michigan, Southern Division, styled as *United States of America v. Joseph Gregory DuMouchelle*, [ECF No. 1, Case No. 20-20245] ("Criminal Proceeding") a copy of which is attached as **Exhibit 6** ("Information"). The Information is 24 paragraphs in length, but alleged, in summary, among other things, that Joseph "by means of false and fraudulent material promises, pretenses and representations:" "instructed TR to transfer $12,000,000 for the purchase of the Yellow Rose;" "falsified documents and emails making it appear that the account the money would be wired to was in fact the seller's;" "sent the false information to TR with directions to wire the money to the account with a notation that it was for the benefit of the seller represented by RD;" "sent TR a fraudulent receipt making it appear that the Yellow Rose had been purchased;" and "caused the transmission of wire communications in interstate commerce in the form of an interstate wire transfer of funds in the amount of $12,000,000 from TR's bank account in Chandler, Arizona (sic) DuMouchelle's Bank of America account in Bloomfield Hills, Michigan." **Exhibit 6**, ¶¶ 12, 13, 14, 17, and 19.

*The Plea Agreement*

On September 14, 2020, in response to the criminal charges set forth in the Information, Joseph pled guilty to wire fraud on all four elements of 18 U.S.C. §1343, pursuant to a *Rule 11 Plea Agreement*, ECF No. 14, Case No. 20-20245, attached as **Exhibit 7** ("Plea Agreement"). Specifically, Joseph admitted to each of the elements of federal criminal wire fraud:

> Dumouchelle, to obtain money by means of false and fraudulent material promises and representations, instructed [Plaintiff] to wire transfer $12,000,000 for the purchase of the Yellow Rose.
>
> * * * *
>
> With intent to obtain TR's money by means of material false and fraudulent promises, pretenses and representations, Dumouchelle falsified documents and emails making it appear that the account the money would be wired to was the seller's or the seller's representative.
>
> * * * *
>
> Also, with intent to obtain money by means of false and fraudulent material promises and representations, Dumouchelle sent false information to TR with directions to wire the money to the account with a notation that it was for the benefit of RD. In fact, the wire transfer directions Dumouchelle sent TR were for Dumouchelle's Bank of America account ending in 0585 and there was no actual buyer for the Yellow Rose.
>
> * * * *
>
> Dumouchelle sent TR a fraudulent receipt making it appear that Dumouchelle had purchased the Yellow Rose.
>
> * * * *

The balance in Dumouchelle's Bank of America account before TR's $12,000,000 was deposited was $500. Immediately after the deposit, Dumouchelle withdrew the majority of the money and used it to pay his personal and business debts and expenses.

* * * *

On or about February 6, 2019, in the Eastern District of Michigan, Southern Division, Dumouchelle for the purpose of executing the scheme to obtain money by means of material false and fraudulent promises, pretenses and representations transmitted and caused the transmission of wire communications in interstate commerce in the form of an interstate wire transfer of funds in the amount of $12,000,000 from TR's bank account in Chandler, Arizona to Dumouchelle Bank of America [sic] account in Bloomfield Hills, Michigan.

**Exhibit 7**, Pages 3-4.

***The Guilty Plea Hearing***

On September 14, 2020, Joseph appeared for his Guilty Plea Hearing, wherein he testified before the Court regarding his criminal fraudulent conduct. By his testimony, Joseph attested that he committed acts that satisfied each of the elements of criminal wire fraud and admitted to causing Plaintiff damages of $12 million by his conduct.

THE COURT: Do you agree that the government can prove all of these three elements against you beyond a reasonable doubt?

THE DEFENDANT: I am in agreement, your Honor, yes.

****

THE COURT: The question is are all the statements that are contained in this section entitled Factual Basis For Guilty Plea true?

THE DEFENDANT: Yes, your Honor. They are.

THE COURT: All right. I'm going through not every single sentence, but I want to go through the key statements that are contained here. One statement is found at the bottom of page two that you told somebody who goes by the initials TR in this document, that you told TR that you had an opportunity to buy something known as the yellow rose diamond and that you'd be able to sell it for much more [sic] than he had paid for it; is that right?

THE DEFENDANT: Yes, that references Thomas Ritter and that statement is true.

THE COURT: And you, according to this, you promised that if TR bought this yellow rose, that you would be able to resale [sic] it and you'd split the profits with him 70/30. Is that right?

THE DEFENDANT: Umm, it is correct, your Honor. I believe Mr. Ritter had a document that he produced on his own that had a different split, but yes, your Honor, that is a statement that I made.

THE COURT: This goes on to say, this being the Rule 11 Plea Agreement, it says here that you, to obtain money by means of false and fraudulent material, promises and representations, instructed TR to wire transfer 12 million dollars for the purchase of yellow rose. Is that correct?

THE DEFENDANT: Yes, your Honor, that's correct.

THE COURT: This says that with intent to obtain TR's money by means of material false and fraudulent promises, pretenses and representations, you falsified documents and e-mails making it appear that the account the money would be wired to was the seller's or the seller's representative; is that right?

THE DEFENDANT: Yes, your Honor. That is correct.

* * * *

THE COURT: And it says with that same intent, you sent false information to TR with directions to wire the money to the account with a notation it was for the benefit of RD. Is that correct?

THE DEFENDANT: Yes, your Honor. That is correct.

THE COURT: And in fact the wire transfer directions that you sent to TR were for your Bank of America account that ended with the digits 0585 and there was no actual buyer for the yellow rose. Is that right?

THE DEFENDANT: Yes, your Honor. That's correct.

* * * *

THE COURT: It says that after receiving the funds and in an effort to lull TR into believing the purchase of the yellow rose was legitimate, you sent TR a fraudulent receipt making it appear that TR had purchased yellow rose; is that correct?

THE DEFENDANT: Yes, your Honor. That is correct.

THE COURT: The balance in your Bank of America account before the funds from TR in the amount of 12 million dollars were deposited was actually 500 dollars; is that right?

THE DEFENDANT: I don't have the information, but I'm going to say yes it's correct because I -- that is what I think is listed on our deposit accounts and I think the government has those documents, so I will say yes, that is correct.

THE COURT: The Rule 11 Plea Agreement says that immediately after the deposit, you withdrew the majority of the money and used it to pay your personal and business debts and expenses; is that true?

THE DEFENDANT: Yes, your Honor. That is correct.

THE COURT: It says here that on or about February 6th, 2019 here in the Eastern District of Michigan, for the purpose of executing this

scheme to obtain money by material false promises and pretenses and representations, you transmitted by wire communications in interstate commerce in the form of an interstate wire transfer funds in the amount of 12 million dollars from TR's bank account in Chandler, Arizona to your Bank of America account in Bloomfield Hills, Michigan. Is that correct?

THE DEFENDANT: Yes, your Honor. That is correct.

*Transcript, Criminal Plea Hearing* [ECF No. 38, Case No. 20-20245], Pages 13, 15-18, attached as **Exhibit 8** ("Plea Transcript").

### Findings in the Presentence Opinion

In the Court's *Opinion & Order Regarding Defendant's Objections to the Presentence Investigation Report*, [ECF No. 111, Case No. 20-20245] issued on July 27, 2022, attached as **Exhibit 9** ("Presentence Opinion"), the Court addressed certain issues related to the Presentence Investigation Report of the United States. In the Presentence Opinion, the Court made the following statements:

> In his plea agreement, DuMouchelle admitted to committing wire fraud, which, as the plea agreement recites, includes the following element: 'That the defendant knowingly devised and executed a scheme to obtain money and property by means of material false and fraudulent pretenses, representations, and promises[.]'

**Exhibit 9**, Page 3.

Joseph likewise admitted to the damages caused by Joseph's criminally fraudulent conduct as further described in the Court's *Opinion & Order Regarding the Amount of Loss and Restitution,* [ECF No. 110, Case No. 20-20245] also issued on July 27, 2022 attached as **Exhibit 10**, Page 2, Footnote 2, ("Restitution Order").

"The individual loss amount attributed to each of these victims is as follows: . . . .
T.R. ($12,000,000)." *Also see* **Exhibit 10**, Page 17.

**Findings in the Sophisticated Means Opinion**

In the Court's *Opinion & Order Regarding Application of the Sophisticated Means Enhancement*, [ECF No. 112, Case No. 20-20245] issued on July 27, 2022, attached as **Exhibit 11** ("Sophisticated Means Opinion"), the Court further expanded on the fraudulent conduct of Joseph, stating:

> DuMouchelle utilized techniques beyond mere misrepresentation that made it difficult to detect his fraud, such as sending emails to T.R. containing what appeared to be (i) a forwarded email from the seller of the Yellow Rose with wire instructions to a bank account belonging to the seller, (ii) an authentic receipt from the sale of the Yellow Rose to T.R., and (iii) a real contract for the resale of the Yellow Rose from T.R. to a buyer in Bloomfield Hills. In fact, these were all fraudulent, but a customer receiving such emails and attachments would not be able to easily detect that something was awry.

*Id.*, at Page 8.

**Findings in the Forfeiture Order**

Thereafter, on July 28, 2022 the Court issued its *Order (1) Granting the Government's Application to Amend the Preliminary Order of Forfeiture (Dkt. 100) and (2) Amending the Preliminary Order of Forfeiture Dkt. 41* [ECF No. 114, Case No. 20-20245], attached as **Exhibit 12** ("Order of Forfeiture"). In the Order of Forfeiture, the Court entered a forfeiture judgment against Joseph for $12 million. **Exhibit 12**, ¶1, Page 2.

### Findings in the Judgment

Finally, on July 28, 2022 the Court issued its *Judgment in a Criminal Case, Criminal Monetary Penalties* [ECF No. 115, Case No. 20-20245], attached as **Exhibit 13** ("Criminal Judgment"). In the Criminal Judgment, the Court entered a restitution judgment in the total amount of $25,206,401.00 which included itemized restitution damages for Plaintiff in the amount of $12 million. *Id.,* Page 6.

### The Appeal

On July 29, 2022 Joseph filed his *Notice of Appeal* [ECF No. 118, Case No. 20-20245] of the Criminal Judgment attached as **Exhibit 14** ("Appeal"). The Sixth Circuit Court of Appeals heard the appeal on the district court's record on the appellate briefs. On February 14, 2023, the Sixth Circuit affirmed the Criminal Judgment. **Exhibit 15** ("Appellate Judgment").

### Melinda's Direct Role in the Yellow Rose Transaction

In connection with The Yellow Rose Transaction, Melinda admitted that she sent Plaintiff the January 25, 2019 email that contained photos and descriptive information about The Yellow Rose. **Exhibit 16**; *Answer*, paragraph 47.[2] More particularly, Melinda admitted that she moved Plaintiff's $12 million intended for the purchase of The Yellow Rose. "Joe emailed the bank and setup the counter-

---

[2]*Amended Complaint*, paragraph 47: "Melinda provided Plaintiff with photos and descriptive information of The Yellow Rose, by email, on January 25, 2019 (the "January 25, 2019 Email"). Exhibit 5." Paragraph 47 of the Answer: "Admitted."

checks/transfers (Attachments 1, 2, & 3) and called me and asked that I go to the bank and sign for them. (Attachments 4, 5, & 6). *Joe simply asked me to go to the bank and sign if needed, as the only other signer on the account.*" **Exhibit 17** ("Response to Discovery"), Page 4, (emphasis added).

Melinda admitted that she signed for each of the transactions: "Per Exhibit 12 of your Complaint, the BOA bank statement (Attachment 5) there are three "Customer Withdraw Transactions" on 2/7/2019:

| | | |
|---|---|---|
| 2/7/2019 Customer Withdrawal Image | $ | (4,041,925.00) |
| 2/7/2019 Customer Withdrawal Image | $ | (1,091,769.44) |
| 2/7/2019 Customer Withdrawal Image | $ | (39,000.00) |

*Id.* page 5. "ii. Also per Exhibit 13 of your Complaint, (Attachment 6) my signatures are on these three withdraws. iii. The attached photos of the counter-checks (Attachment 4) show exactly where this money went:"

| Payee | Check | |
|---|---|---|
| Merrill Wood Collection | $ | 6,000.00 |
| Peter Indorf | $ | 1,500.00 |
| JB International | $ | 678,000.00 |
| John Ragard | $ | 848,500.00 |
| Diamond Opportunities | $ | 33,500.00 |
| Kwiat | $ | 204,225.00 |
| Abbotts Corp | $ | 1,104,750.00 |
| Aron Rescources | $ | 236,450.00 |
| Candaian Gemmological Ass. | $ | 1,500.00 |
| Gene Kazlow | $ | 450,000.00 |
| Howard Derman | $ | 200,000.00 |
| FEI | $ | 277,500.00 |
| | $ | 4,041,925.00 |
| Paul Haig | $ | 39,000.00 |
| David L. Husman | $ | 1,091,769.44 |

*Id.* page 5

### *The Bankruptcy Proceeding*

Joseph and Melinda filed their voluntary petition for chapter 7 bankruptcy on October 11, 2019 (the "Bankruptcy Proceeding") and filed their schedules and statement of financial affairs on October 24, 2019. [ECF No. 18]. In their Schedule E/F, Joseph and Melinda identified Plaintiff's claim and indicated the debt was an undisputed business debt in the amount of $12,000,000 (the amount of Joseph's restitution). **Exhibit 18,** Schedule E/F, page 6 ("Schedule E/F"). Plaintiff timely filed his proof of claim in the Bankruptcy Proceeding in the amount of

$17,140,339.62 which includes the Yellow Rose Judgment Amount and additional amounts owed under certain promissory notes which are the subject of other counts of the Complaint (the "Proof of Claim"). No objections to the Proof of Claim have been filed and the Proof of Claim is not in dispute.

## III.    ARGUMENT

### A.    Plaintiff is entitled to judgment as a matter of law for $16,414,214.61 million against Melinda where there are no genuine issues of material fact pertaining to her nondischargeable liability.

Pursuant to *Fed. R. Bankr. P.* 7056 which adopts *Fed. R. Civ. P.* 56, a court may grant summary judgment to the moving party where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the [ ] court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

Here, Plaintiff seeks to impose nondischargeable liability against Melinda based on the criminal judgment against Joseph, her spouse and business partner. The Criminal Proceeding determined that debt memorialized by The Yellow Rose Judgment entered against Melinda and Joseph was incurred through fraud. Therefore, by the plain reading of 11 U.S.C. §§523(a)(2)(A) and (4), Melinda's obligation to Plaintiff for The Yellow Rose Judgment is nondischargeable.

**B. Plaintiff's claim against Melinda is nondischargeable under 11 U.S.C. §523(a)(2)(A) as a matter of law irrespective of her personal culpability due to Joseph's admissions in the Criminal Proceeding and her ownership and involvement in DuMouchelle Jewellers.**

Joseph admitted to each and every element of wire fraud that is necessary to a determination of nondischargeability under 11 U.S.C. §§523(a)(2)(A). Furthermore, Melinda was Joseph's spouse, his business partner in DuMouchelle Jewellers, and a co-obligor under the exact debt that was the subject of Joseph's criminal conviction. Thus, under the plain reading of Sec. 523(a)(2)(A) the fact that the $12 million was acquired through Joseph's admitted fraud, renders Plaintiff's claim against Melinda for that exact debt nondischargeable as a matter of law.

"'[C]reditors' interest in recovering full payment of debts' obtained by fraud 'outweigh[s] the debtors' interest in a complete fresh start.'" *Bartenwerfer v. Buckley*, 143 S. Ct. 665, 676 (2023) (quoting *Grogan* v. *Garner*, 498 U. S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)). "The fraud in *Strang* was perpetrated within the scope of the partnership's business, and, as in the case at bar, the innocent

partners received the fruits of the fraudulent conduct." *In re Ledford*, 970 F.2d 1556, 1561-62 (6th Cir. 1992) (citing *Strang v. Bradner*, 114 U.S. 555, 561, 29 L. Ed. 248, 5 S. Ct. 1038 (1885)). In *Bartenwerfer* at 670, the United States Supreme Court established that the plain reading of 11 U.S.C. §523(a)(2)(A) renders any debt incurred through fraud nondischargeable irrespective of the debtor's personal culpability. "The debt must result from someone's fraud, but Congress was 'agnosti[c]' about who committed it." *Id.* (citing *Watson* v. *United States*, 552 U. S. 74, 81, 128 S. Ct. 579, 169 L. Ed. 2d 472 (2007).

The underlying facts of *Bartenwerfer* involved a husband and wife who, prior to their marriage, jointly purchased a home and, acting as business partners, renovated the property to sell the home for a profit. *Id.* Mr. Bartenwerfer was in charge of the project while Mrs. Bartenwerfer was "largely uninvolved." *Id.* The Bartenwerfers then sold the house to Kieran Buckley and signed seller disclosures indicating they had disclosed all material facts related to the home. *Id.* It turned out that there were defects in the home that the Bartenwerfers did not disclose. *Id.* Mr. Buckley then sued the Bartenwerfers who were held jointly responsible for more than $200,000 in damages for nondisclosure of material facts in addition to breach of contract. *Id.*

Following the lawsuit, the Bartenwerfers filed for chapter 7 bankruptcy protection and Mr. Buckley filed an adversary proceeding against the Bartenwerfers

seeking a determination that his state court judgment was nondischargeable under Sec. 523(a)(2)(A). *Id.* Mr. Buckley's claim was determined to be nondischargeable as against Mr. Bartenwerfer. *Id.* at 671. Thereafter, following a lengthy appellate history regarding Mrs. Bartenwerfer's dischargeability, the Supreme Court took up the question of whether Mr. Buckley's claim was nondischargeable pursuant to Sec. 523(a)(2)(A) as against Mrs. Bartenwerfer irrespective of her knowledge or involvement in the commission of the material misrepresentations. *Id.*

In *Bartenwerfer*, the Supreme Court determined that, Sec. 523(a)(2)(A) "obviously applies to a debtor who was the fraudster. But sometimes a debtor is liable for fraud that she did not personally commit—for example, deceit practiced by a partner or an agent. . . . Written in the passive voice, §523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it." *Id.* (also see *Kahkeshani v. Hann* (*In re Hann*), No. 22-20407, 2023 U.S. App. LEXIS 27447, (5th Cir. Oct. 16, 2023). "Congress framed [Sec. 523(a)(2)(A)] to 'focu[s] on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability.'" *Bartenwerfer.* at 672 (quoting *Dean* v. *United States*, 556 U. S. 568, 572, 129 S. Ct. 1849, 173 L. Ed. 2d 785 (2009). In *Strang* v. *Bradner* 114 U. S., at 557-558, 5 S. Ct. 1038, 29 L. Ed. 248, "[t]he fraud of one partner, we explained, is the fraud of all because '[e]ach partner was the agent and representative of the firm with reference to all business within the scope of the

partnership.' [ ] And the reason for this rule was particularly easy to see because 'the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business.'" *Id.* at 674 (quoting *Strang*).

Therefore, as the Supreme Court recognized, "innocent people are sometimes held liable for fraud they did not personally commit, and, if they declare bankruptcy, §523(a)(2)(A) bars discharge of that debt. . . . But Congress has 'evidently concluded that the creditors' interest in recovering full payment of debts' obtained by fraud 'outweigh[s] the debtors' interest in a complete fresh start' . . . . and it is not our role to second-guess that." *Id.* at 676 (quoting *Grogan* v. *Garner*, 498 U. S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); (also see *Kahkeshani*). "Thirteen years after *Strang*, when Congress next overhauled bankruptcy law, it deleted 'of the bankrupt' from the discharge exception for fraud, which is the predecessor to the modern §523(a)(2)(A)." *Id.* at 675.

The standard of *Bartenwerfer* similarly applies to the question of nondischargeability of Plaintiff's claim against Melinda pursuant to Sec. 523(a)(2)(A). Just like *Bartenwerfer*, Melinda was in business with Joseph through their operation of DuMouchelle Jewellers. Answer, page 2, paragraph 5 and **Exhibit 2**. By Melinda's own admissions in her Answer and Response to Discovery, Melinda was even more involved in the fraud committed by Joseph than Mrs. Bartenwerfer.

Melinda, admittedly, the only signer on the Bank of America Account where Plaintiff's money was held, moved Plaintiff's money from the Bank of America Account to pay other business and personal debts. **Exhibit 17**. Moreover, Melinda admitted she sent Plaintiff information pertaining to The Yellow Rose in the January 25, 2019 email to Plaintiff. Answer, and **Exhibit 16**. The North Dakota Yellow Rose Judgment was entered jointly and severally against Melinda on September 12, 2019 and Melinda does not dispute that a debt for The Yellow Rose Transaction is owed by her. **Exhibit 18,** and Answer, page 5, paragraph 41 and 43. Thus, the fact that through Joseph's admissions, guilty plea and determinations in the Criminal Proceeding, the debt owing to Plaintiff was conclusively a debt incurred through fraud and, therefore, it is a debt that is nondischargeable as to Melinda.

Similar to 18 U.S.C. §1343, 11 U.S.C. §523(a)(2)(A) requires Plaintiff demonstrate that the debt owing to him was a debt for money obtained, by false pretenses a false representation or actual fraud. Hence, Joseph's guilty plea in which he admitted to defrauding Plaintiff of $12 million through the use of falsified documents and information – facts necessarily decided in his wire fraud conviction – leave no further issue of fact to litigate under Count III under Sec. 523(a)(2)(A) as against Melinda as to $12 million of Plaintiff's $17 million in damages. Joseph admitted that he acted "with intent to obtain TR's money by means of materially false and fraudulent promises, pretenses and representations," he "falsified

documents and e-mails making it appear that the account the money would be wired to was the seller's or the seller's representative." **Exhibit 8**, Page 16. Also see the Rule 11 Plea Agreement, **Exhibit 7** at Page 3.

Furthermore, in the Presentence Opinion the Court held: "In his plea agreement, DuMouchelle admitted to committing wire fraud, which, as the plea agreement recites, includes the following element: 'That the defendant knowingly devised and executed a scheme to obtain money and property by means of material false and fraudulent pretenses, representations, and promises[.]'"

Joseph's admissions and the Court's findings of fact and conclusions of law in the Presentence Opinion are an almost identical match to the language of Sec. 523(a)(2)(A) which entitles a creditor to obtain a judgment of nondischargeability "for *money* . . . . to the extent *obtained by— false pretenses, a false representation*, or actual fraud." (Emphasis added).

The fact that Melinda is both Joseph's spouse and business partner mean that Joseph's admissions and the findings of fact in Joseph's Criminal Proceeding infer nondischargeability as to Melinda for amounts in connection with The Yellow Rose Judgment. Plaintiff is entitled to a judgment of nondischargeability as a matter of law on Count III of his complaint in the amount of $16,414,214.61, The Yellow Rose Judgment Amount plus all prepetition accrued costs and judgment interest.

**C. Plaintiff's claim against Melinda is nondischargeable under 11 U.S.C. §523(a)(4) as a matter of law irrespective of her personal culpability due to Joseph's admissions in the Criminal Proceeding and her ownership and involvement in DuMouchelle Jewellers.**

The Supreme Court's interpretation of Sec. 523(a)(2)(A) is applicable to Sec. 523(a)(4). Sec. 523(a)(4) is also agnostic as to who is responsible for the larceny or embezzlement. That section provides:

> (a) *A discharge under section 727 . . . . of this title does not discharge an individual debtor from any debt—* (4) for . . . . embezzlement, or larceny.

(emphasis added). A determination of nondischargeability under Sec. 523(a)(4) for embezzlement or larceny does not require proof of a fiduciary relationship. *Chenaille v. Palilla (In re Palilla)*, 493 B.R. 248, 254 (Bankr. D. Colo. 2013). Likewise "[n]either § 523(a)(2) nor § 523(a)(4) explicitly require the fraud or embezzlement which caused the debt be committed by the debtor. This change in language offers additional support for imposing vicarious liability in connection with certain discharge exceptions." *Id.* (internal citation omitted).

In the Criminal Proceeding, Joseph's admissions, which were adopted by the court, established that the debt incurred by Joseph and Melinda was incurred through embezzlement or larceny. Therefore, the debt related to The Yellow Rose Judgment owing by Melinda to Plaintiff is not dischargeable. "The only difference between embezzlement and larceny under this subsection is that 'embezzled property comes into the debtor's hands lawfully, while larceny requires that the debtor obtain the

property unlawfully.'" *In re Piercy*, 21 F.4th 909, 919 (6th Cir. 2021) (Citing *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir. 1996) (Internal citations omitted)). "Both larceny and embezzlement under §523(a)(4) require an element of fraudulent intent." *Id.* (Quoting *Dean v. Hunter (In re Hunter)*, 484 B.R. 721, 727 (Bankr. E.D. Tenn. 2012) (citation omitted); *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007).

Consistent with *Bartenwerfer's* interpretation of Section 523(a), Melinda's liability under The Yellow Rose Judgment[3] is nondischargeable as a matter of law under Sec. 523(a)(4) based on Joseph's admissions in the Rule 11 Plea Agreement, his testimony at the Plea Hearing and the Court's findings in the Order of Forfeiture and Sophisticated Means Opinion. Joseph admitted that he unlawfully obtained the $12 million from Plaintiff and used the proceeds for his and DuMouchelle Jewellers own purposes. Joseph's admissions of theft render Plaintiff's claim nondischargeable as against Melinda who, without dispute, is also liable for The Yellow Rose Judgment plus interest and costs.

In the Rule 11 Plea Agreement Joseph admitted to acting with fraudulent intent to deprive Plaintiff of his $12 million. **Exhibit 7**, Page 3; **Exhibit 13**, Page 6; **Exhibit 10**, Page 2, Footnote 2; **Exhibit 12**, Page 2, ¶1. Joseph and Melinda obtained

---

[3] Melinda is at least liable for $12 million of Plaintiff's damages based on the Criminal Proceeding.

Plaintiff's $12 million through larceny. Joseph was convicted of wire fraud, thus he unlawfully obtained Plaintiff's property "by means of false and fraudulent material promises and representations DuMouchelle sent false information to TR with directions to wire the money to the account with a notation that it was for the benefit of RD. In fact, the wire transfer directions DuMouchelle sent TR were for DuMouchelle's Bank of America Account ending in 0585." **Exhibit 7**, Page 3. Joseph also testified at his Guilty Plea Hearing, that Plaintiff wired $12 million to an account he believed was owned by the seller of the Yellow Rose "convinced that" Joseph was "telling the truth" even though "there was no actual buyer for the yellow rose." **Exhibit 8**, Page 17. Then, "immediately after the deposit," Joseph testified that he "withdrew the majority of the money and used it to pay" Joseph's "personal and business debts and expenses." Consistent with *Bartenwerfer*, the findings in Joseph's Criminal Proceeding can be imputed on Melinda.

In its Sophisticated Means Opinion, the Court held that the sentencing enhancement applied in calculating Joseph's sentence. The Court found that "DuMouchelle sent an email to T.R. that contained 'what appeared to be an email forward from an employee . . . of Gemworld International, Inc.'" **Exhibit 7**, Page 2. When Plaintiff's first wire transfer to the purported seller failed, "DuMouchelle then sent T.R. another email that contained "what appeared to be an email purportedly from a Gemworld International employee . . . with new wire instructions for Bank

of America account . . . ." "T.R. paid the $12 million via wire transfer." **Exhibit 7**, Page 3. The Yellow Rose was never acquired with Plaintiff's $12 million and Joseph never resold it on Plaintiff's behalf. "In reality . . . DuMouchelle pocketed the $12 million from T.R. and used the majority of this money to pay his personal and business debts and expenses." **Exhibit 7**, Page 3.

Melinda does not dispute that she is indebted to Plaintiff for the Yellow Rose Transaction. **Exhibit 18**. She even admitted that she facilitated the payment of Joseph's personal and her and Joseph's business debts and expenses with Plaintiff's $12 million. Answer and **Exhibit 16.** Even so, the debt as against Melinda is nondischargeable as a matter of law by the mere fact that the debt was incurred through Joseph's admitted larceny. Plaintiff is entitled to a judgment of nondischargeability as a matter of law on Count V of his complaint in the amount of The Yellow Rose Judgment Amount, $16,414,214.61.

### D.    Plaintiff is entitled to summary judgment in the full amount of the Yellow Rose Judgment Amount of $16,414,214.61.

Plaintiff is entitled to judgment as a matter of law as the entire Yellow Rose Judgment Amount against Melinda. There is no dispute that the debt owed by Melinda was incurred through Joseph's fraud and theft of Plaintiff's $12,000,000. The $16,414,214.61 is the amount that was due and owing as of the Petition Date for accrued and unpaid judgment interest and costs. Plaintiff's Proof of Claim in the amount of $16,414,214.61 has been treated as an allowed claim. Fed. R. Bankr. P.

3001(f) provides that "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." For these reasons and based on the arguments set forth in this brief, Plaintiff is entitled to a nondischargeability judgment under Counts III, V and VIII against Joseph for the entire amount of the Yellow Rose Judgment of $16,414,214.61.

## IV.    CONCLUSION

For foregoing reasons, Plaintiff is entitled to summary judgment for nondischargeability for at least the amount of the $12 million criminal restitution liability against Melinda as to Counts III, V, and VIII of Plaintiff's Second Amended Complaint and up to the entire Yellow Rose Judgment Amount of $16,414.214.61. Plaintiff reserves all rights and interests in his remaining nondischargeability claims against Melinda.

Respectfully submitted by:

**TAFT, STETTINIUS & HOLLISTER, LLP**

Dated: October 26, 2023  By:  /s/ Jay L. Welford
Jay L. Welford (P34471)
Kimberly Ross Clayson (P69804)
Counsel to Plaintiff
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
Phone: (248) 351-3000
jwelford@taftlaw.com
kclayson@taftlaw.com

*Counsel for Plaintiff Thomas T. Ritter*

**EXHIBIT 4**
[CERTIFICATE OF SERVICE ATTACHED]

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

                                         Chapter 7

Joseph G. DuMouchelle and
Melinda J. Adducci                          Case No. 19-54531-lsg

                                         Honorable Lisa S. Gretchko

          Debtors.
_____/

Thomas T. Ritter,

          Plaintiff,

v.

Melinda J. Adducci,                        Adversary Pro. No. 20-04381

          Defendant.
_____/

## **CERTIFICATE OF SERVICE**

     I hereby certify that on October 26, 2023, I caused to be served a copy of the *Plaintiff's Motion For Summary Judgment Against Defendant Melinda Adducci Under Counts III, V, And VII Of Plaintiff's Second Amended Complaint* with the Clerk of the Court, which sends notice by operation of the Court's electronic filing service to all ECF participants registered to receive notice.

1

Respectfully submitted by:

**TAFT, STETTINIUS & HOLLISTER, LLP**

Dated: October 26, 2023     By: /s/ Jay L. Welford
                            Jay L. Welford (P34471)
                            Kimberly Ross Clayson (P69804)
                            Counsel to Plaintiff
                            27777 Franklin Road, Suite 2500
                            Southfield, Michigan 48034
                            Phone: (248) 351-3000
                            jwelford@taftlaw.com
                            kclayson@taftlaw.com

                            *Counsel for Plaintiff Thomas T. Ritter*

# EXHIBIT 5

[AFFIDAVITS - NA]

# EXHIBIT 6

[DOCUMENTARY EXHIBITS ATTACHED]