## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

                                           Chapter 7

Joseph G. DuMouchelle and
Melinda J. Adducci,                          Case No. 19-54531-lsg

                                           Hon. Lisa S. Gretchko

          Debtors.
_____/

Thomas T. Ritter,

          Plaintiff,

v.

Melinda J. Adducci,                          Adversary Pro. No. 20-04381

          Defendant.
_____/

## JOINT PRETRIAL

      Plaintiff, Thomas T. Ritter ("Plaintiff") and Defendant, Melinda Adducci ("Defendant"), by and through their respective attorneys, hereby submit this *Joint Pretrial Order* for the trial in the above-captioned adversary proceedings to be held on October 16, 2024.

### 1. **Jurisdiction**

Plaintiff and Defendant stipulate that this court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), (H) and (O).

## 2. Plaintiff's Claims

1.      Plaintiff seeks a determination of nondischargeability pursuant to section 523 of Title 11 of the United States Code (the "Bankruptcy Code") as to his North Dakota judgment against Defendant in the amount of $17,140,031.62 (the "North Dakota Judgment")which is comprised of $16,414,214.61 (the "Yellow Rose Judgment Amount") and $725,817.01 (the "Promissory Note Judgment Amount") arising out of Defendant's fraudulent transactions with Plaintiff including fraudulent representations regarding the purported "purchase and resale" of a 77.12-carat yellow diamond ring coined, The Yellow Rose, as well as a series of promissory note transactions between and among Defendant, her husband and business partner Joseph DuMouchelle ("Joseph") and their business, Joseph DuMouchelle Fine & Estate Jewellers, LLC ("DuMouchelle Jewellers").

### A. Nondischargeability 523(a)(2)(A) The Yellow Rose

2.      Plaintiff transferred $12 million to DuMouchelle Jewellers, under Defendant's false pretenses, false representations or actual fraud.

3.     Defendant individually, and as an agent of DuMouchelle Jewellers, led Plaintiff to believe that he had the opportunity to purchase and resell The Yellow Rose at a profit.

4.     For example, Defendant transmitted the data package that contained photos and specifications of The Yellow Rose, and Defendant affirmed to Plaintiff in a phone call that the purchase of The Yellow Rose would be a good investment.

5.     Thereafter, Plaintiff initiated his $12 million wire-transfer transaction to a bank account that he was led to believe belonged to the seller of The Yellow Rose when, in fact, the bank account belonged to DuMocuhelle Jewellers of which Defendant was a member and employee.

6.     It is undisputed that Defendant was the only signer on the bank account at the time of receipt of the $12 million and it is undisputed that Defendant made use of Plaintiff's $12 million for other purposes that did not include acquisition of The Yellow Rose.

7.     In fact, The Yellow Rose was never purchased or resold for Plaintiff's benefit.

8.     Moreover, Plaintiff never received a return of his $12 million.

9.     As a result of the fraud against Plaintiff, Defendant is liable to Plaintiff for his damages incurred and the North Dakota Judgment entered against Defendant.

10. Therefore, Plaintiff's North Dakota Judgment against Defendant should be determined nondischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

## B. Nondischargeability 523(a)(2)(B) The Yellow Rose

11. Plaintiff transferred $12 million to DuMouchelle Jewellers on the reliance of the use of written statements among others, the January 30, 2019 Letter Agreement, Purchase of the Yellow Rose ("The Yellow Rose Agreement") and the April 12, 2019 Letter of Authority re The Yellow Rose signed by Sam Haggin, wherein Defendant made use of these and other writings that were materially false.

12. The false written statements were made on behalf of Joseph and DuMouchelle Jewellers, insiders of Defendant.

13. The Yellow Rose Agreement and related written statements reflected DuMouchelle Jewellers' financial condition in that it was a representation that DuMouchelle Jewellers had located a buyer who would purchase The Yellow Rose.

14. The Yellow Rose Agreement and other written statements transmitted to Plaintiff regarding The Yellow Rose were materially false, in fact, all written representations about the purported purchase and resale of The Yellow Rose were a fabrication.

4

15.     Plaintiff relied in part on The Yellow Rose Agreement and other written statements when he initiated the wire transfer of his $12 million to the purported seller of The Yellow Rose.

16.     Defendant, as an owner of DuMouchelle Jewellers caused publication of The Yellow Rose Agreement with the intent to deceive Plaintiff.

17.     Plaintiff was damaged as a result of the materially false statements in The Yellow Rose Agreement.

18.     Therefore Plaintiff's North Dakota Judgment against Defendant should be determined nondischargeable pursuant to section 523(a)(2)(B) of the Bankruptcy Code.

## C. Nondischargeability 523(a)(4) The Yellow Rose

19.     Plaintiff's $12 million that he wired to the DuMouchelle Jewellers' was obtained through larceny or embezzlement.

20.     Based on representations of Defendant, Joseph and DuMouchelle Jewellers, Plaintiff believed his wire transfer of the $12 million was transmitted to the seller of The Yellow Rose, however, the Borrowers directed the wire to the DuMouchelle Jewellers bank account instead.

21.     Once Plaintiff's $12 million reached the DuMouchelle Jewellers bank acocunt, Defendant personally transferred Plaintiff's proceeds to purposes other than the purchase of The Yellow Rose. In fact, The Yellow Rose was never purchased nor resold for Plaintiff, Defendant never purchased The Yellow Rose and neither Joseph nor DuMouchelle Jewellers purchased The Yellow Rose.

22.     Plaintiff never received a return of his $12 million and was injured as a result.

23.     Therefore, Plaintiff's North Dakota Judgment against Defendant should be determined nondischargeable pursuant to section 523(a)(4) of the Bankruptcy Code.

### D. Nondischargeability 523(a)(6) The Yellow Rose

24.     Defendant willfully and maliciously injured Plaintiff wherein Defendant knew or should have known that Plaintiff intended to transfer $12 million for the purchase of The Yellow Rose. Neither Defendant, Joseph nor DuMouchelle Jewellers purchased The Yellow Rose and instead, Defendant made use of Plaintiff's $12 million for other purposes.

25.     Defendant's willful and malicious injury to Plaintiff includes but is not limited to Defendant's tortious interference with Plaintiff's business expectations – that he anticipated, that he had purchased The Yellow Rose and would thereafter receive a profit on the resale of The Yellow Rose.

6

26. Plaintiff had a business relationship or expected to establish one with the seller of The Yellow Rose based on an agreement orchestrated by Defendant together with Joseph and DuMouchelle Jewellers.

27. As set forth in The Yellow Rose agreement, Plaintiff expected to realize a profit from the acquisition and resale of The Yellow Rose.

28. Defendant knew about the relationship that Plaintiff expected to establish with the seller of The Yellow Rose and Defendant knew Plaintiff transferred his $12 million for the purchase of The Yellow Rose.

29. Defendant intentionally interfered with the relationship wherein she knew Plaintiff would deposit his $12 million into the Bank of America Account (defined below) to acquire The Yellow Rose, notwithstanding, Defendant made use of the $12 million for purposes other than the acquisition of The Yellow Rose.

30. Defendant's interference was improper.

31. Defendant's conduct prevented Plaintiff from benefiting from the acquisition and resale of The Yellow Rose for a profit.

32. Defendant's conduct resulted in damages to Plaintiff including but not limited to his loss of $12 million and the resulting North Dakota Judgment.

33. Defendant's tortious interference in The Yellow Rose transaction demonstrate that Defendant willfully and maliciously injured Plaintiff.

34.     Defendant's use of Plaintiff's $12 million for purposes other than the acquisition of demonstrate Defendant willfully and maliciously injured Plaintiff.

35.     Therefore, Plaintiff's North Dakota Judgment against Defendant should be determined nondischargeable pursuant to section 523(a)(6) of the Bankruptcy Code.

### 3. **Defendants' Defenses**

1.     Defendant asserts that <u>none</u> of the provisions of §523 as pleaded by Plaintiff are applicable to her, and that the proofs do not support any findings against her under §523(a)(2)(A), (a)(2)(B), (a)(4) or (a)(6), and therefore, that a non-dischargeable Judgment should <u>not</u> enter against her.

### 4. **Stipulation of Facts and Law**

#### a. **Stipulation of Facts**

1.     On September 12, 2019, Plaintiff obtained a default judgment against the Defendant, against Joseph and against DuMouchelle Jewellers on September 12, 2019 in the Northwest District Court, Williams County, North Dakota in the total amount of $17,140,031.62 (the "<u>Judgment</u>").

2.     The Judgment is comprised of ($16,414,214.61) (the "<u>Yellow Rose Judgment Amount</u>") and $725,817.01 for a promissory note granted by Borrowers to Plaintiff ( the "<u>Note Judgment Amount</u>").

3.      Thereafter, Debtors commenced the above-captioned bankruptcy case (the "Bankruptcy Case") on October 11, 2019 (the "Petition Date") by filing a voluntary petition for relief under title 11, chapter 11 of the United States Code ( the "Bankruptcy Code"). That case was converted to a Chapter 7 in December of 2019, after a motion was filed by the UST seeking conversion.

4.      On or about September 22, 2020, Plaintiff commenced the above-captioned adversary proceeding against Debtors in the instant Bankruptcy Case (the "Adversary Proceeding") by filing a complaint seeking a determination of nondischargeability pursuant to sections 523(a)(2)(A), (B), (4) and (6) of the Bankruptcy Code as presented in Plaintiff's *Second Amended Complaint* [ECF No. 91] (the "Complaint").

5.      On July 17, 2023 the Court dismissed Joseph from the Adversary Proceeding following his criminal conviction in the Federal District Court for the Eastern District of Michigan [ECF No. 118].

**The Yellow Rose Transaction**

1.      On January 28, 2019, Joseph sent Plaintiff what appeared to be an appraisal of The Yellow Rose dated January 31, 2011 (the "January 2011 Appraisal").

2.      Pursuant to a letter agreement dated January 31, 2019, Plaintiff and Joseph agreed that Plaintiff would be the purchaser of The Yellow Rose, in his name,

from the seller, for $12 million and Joseph would facilitate the subsequent sale of The Yellow Rose on Plaintiff's behalf (the "Yellow Rose Purchase Agreement").

3. Defendant was not a signatory to the Yellow Rose Purchase Agreement.

4. Per the Yellow Rose Purchase Agreement, an escrow account was to be established at Plaintiff's bank by Plaintiff, into which the $12 million would be funded and from which the purchase price of The Yellow Rose would be paid.

5. Per the Yellow Rose Purchase Agreement, upon receipt of The Yellow Rose, Joseph, as Plaintiff's agent, represented that he would store The Yellow Rose at a Brinks facility in Detroit, Michigan and obtain insurance over the same.

6. The Yellow Rose Purchase Agreement stated that the profit from the sale was to be divided between Plaintiff and Joseph, per a sliding scale.

7. On January 31, 2019, Plaintiff sent an email to both Defendant and Joseph that included as an attachment the executed copy of the Yellow Rose Purchase Agreement (the "January 31, 2019 Email"). In the body of the January 31, 2019 Email, Plaintiff asked whether Defendant should be added as a party to the Yellow Rose Purchase Agreement.

8. The Debtors did not respond to this email, as, on the same day, January 31, 2019, Joseph sent an email to Plaintiff that indicated he needed proceeds to purchase The Yellow Rose (the "January 31, 2019 Wire Instructions Email") as per

the Yellow Rose Purchase Agreement and provided the following wiring information:

| | |
|---|---|
| Bank Name: | MB Financial Bank |
| Account Name: | Highland Wealth Management |
| Bank Routing Number: | 071001737 |
| Account Number: | XXXXX79802 |

(the "MB Financial Bank Account").

9.     Joseph represented in the January 31, 2019 Wire Instructions Email that Highland Wealth Management was the seller of The Yellow Rose.

10.     On February 1, 2019, Plaintiff initiated a wire transfer to the MB Financial Bank Account.

11.     MB Financial Bank did not accept the wire transfer.

12.     Pursuant to an email dated February 1, 2019 (the "February 1, 2019 Email"), Joseph directed Plaintiff to wire the $12 million to the following new account of the seller (the "FineMark Account"):

| | |
|---|---|
| Bank Name: | FineMark Bank & Trust |
| Account Name: | Fine & Estate Appraisers, LLC |
| Bank Routing Number: | 067016231 |
| Account Number: | XXXXX46380 |

13.     Joseph represented that the FineMark Account was the account of Fine & Estate Appraisers, LLC, with the wiring instructions being provided by the seller or the seller agent of The Yellow Rose, Richard Drucker, based on the February 1,

2019 Email containing the above information under an email allegedly authored by Richard Drucker and forwarded to Joseph.

14. On February 4, 2019, Plaintiff initiated a wire transfer to the FineMark Account.

15. FineMark Bank did not accept the wire transfer and the funds were remitted back to Plaintiff on February 5, 2019.

16. The FineMark Account was not the bank account of the seller or of the seller representative of The Yellow Rose.

17. Richard Drucker was not the seller or the seller representative of The Yellow Rose.

18. Defendant opened the DuMouchelle Jewellers Bank of America Account ending in 0585 (the "Bank of America Account") as sole signatory on February 5, 2019.

19. Joseph sent an email on February 6, 2019 (the "February 6, 2019 Email") that directed Plaintiff to wire the $12 million to the following new account of the seller of The Yellow Rose:

| | |
|---|---|
| Bank Name: | Bank of America |
| Account Name: | Fine & Estate Appraisers, LLC |
| Bank Routing Number: | 0260009539 |
| Bank Account Number: | XXXXX60585 |

20.    Bank of America accepted the $12 million wire from Plaintiff to the Bank of America Account (the "$12 Million Transfer").

21.    The Bank of America Account was the account of DuMouchelle Jewellers.

22.    On February 6, 2019, Plaintiff initiated a wire transfer to the Bank of America Account.

23.    Joseph provided Plaintiff with a receipt from Joseph DuMouchelle International Auctioneers, dated February 6, 2019, allegedly evidencing the purchase of The Yellow Rose for $12 million (the "The Yellow Rose Purchase Receipt").

24.    The $12 million wired into the Bank of America Account was not used to purchase The Yellow Rose.

25.    On February 7, 2019, Defendant, under her signature, caused "Out of State Counter Withdrawals" to occur on the Bank of America Account, in the amounts of $39,000.00, $1,091,769.44 and $4,041,925.00 each (a total of $5,172,694.44).

26.    The $12 million in wire transfer proceeds were utilized in part as follows:

| Payee | Check | |
|---|---|---|
| Merrill Wood Collection | $ | 6,000.00 |
| Peter Indorf | $ | 1,500.00 |
| JB International | $ | 678,000.00 |
| John Ragard | $ | 848,500.00 |
| Diamond Opportunities | $ | 33,500.00 |
| Kwiat | $ | 204,225.00 |
| Abbotts Corp | $ | 1,104,750.00 |
| Aron Rescources | $ | 236,450.00 |
| Candaian Gemmological Ass. | $ | 1,500.00 |
| Gene Kazlow | $ | 450,000.00 |
| Howard Derman | $ | 200,000.00 |
| FEI | $ | 277,500.00 |
| | $ | 4,041,925.00 |
| | | |
| Paul Haig | $ | 39,000.00 |
| David L. Husman | $ | 1,091,769.44 |

27.     On the day that Defendant initiated the, February 7, 2019 transfers at a Bank of America retail branch, Defendant was in Arizona.

28.     None of Plaintiff's proceeds were used to purchase The Yellow Rose.

29.     Joseph represented to Plaintiff that The Yellow Rose would be moved from the Brinks depository in Texas to the Brinks depository in Michigan, to be held in the joint names of Plaintiff and Joseph, although at all times owned by Plaintiff.

30.     Joseph never purchased The Yellow Rose, Defendant never purchased The Yellow Rose and DuMouchelle Jewellers never purchased The Yellow Rose.

31.     The Yellow Rose was never transferred from a Brinks depository in Texas to a Brinks depository in Michigan.

32.     Plaintiff prepared a draft sale agreement for The Yellow Rose with the understanding that Joseph had purchased The Yellow Rose and located a buyer for The Yellow Rose and emailed the same to Joseph on March 21, 2019 (the "Draft Sale Agreement").

33.     Joseph, as agent for Plaintiff, signed the Draft Sale Agreement on April 12, 2019, for the subsequent sale of The Yellow Rose for $16.5 million to Sam Haggin, Trustee of the Jennifer H. Rands Trust (the "April 12, 2019 Letter Agreement").

34.     Per the April 12, 2019 Letter Agreement, the sale was to be consummated by April 22, 2019.

35.     On April 21, 2019, the day before the alleged closing under the April 12, 2019 Letter Agreement, Plaintiff traveled to Detroit, in order to view The Yellow Rose at the Brinks depository on April 22, 2019, where it allegedly resided pending the closing and transfer to the Jennifer H. Rands Trust.

36.     Joseph did not show Plaintiff The Yellow Rose on April 22, 2019 because, per Joseph, the Brinks facility was "closed" on that day. Plaintiff believes this was a pretext.

37.     Plaintiff never received a return of the $12 Million Transfer.

38.     Neither Defendant, Joseph, nor DuMouchelle Jewellers ever purchased The Yellow Rose from its then-owner.

39.     On June 16, 2020, the United States of America filed an *Information* against Joseph in the United States District Court for the Eastern District of Michigan, Southern Division, styled as *United States of America v. Joseph Gregory DuMouchelle*, [ECF No. 1, Case No. 20-20245] ("Criminal Proceeding").

40.     The Information is 24 paragraphs in length, but alleged, in summary, among other things, that Joseph "by means of false and fraudulent material promises, pretenses and representations:" "instructed TR to transfer $12,000,000 for the purchase of the Yellow Rose;" "falsified documents and emails making it appear that the account the money would be wired to was in fact the seller's;" "sent the false information to TR with directions to wire the money to the account with a notation that it was for the benefit of the seller represented by RD;" "sent TR a fraudulent receipt making it appear that the Yellow Rose had been purchased;" and "caused the transmission of wire communications in interstate commerce in the form of an interstate wire transfer of funds in the amount of $12,000,000 from TR's bank account in Chandler, Arizona (sic) DuMouchelle's Bank of America account in Bloomfield Hills, Michigan."

41.     On September 14, 2020, in response to the criminal charges set forth in the Information, Joseph pled guilty to wire fraud on all four elements of 18 U.S.C. §1343 in which Joseph admitted to each of the elements of federal criminal wire fraud.

42.     On September 14, 2020, Joseph appeared for his Guilty Plea Hearing, wherein he testified before the Court regarding his criminal fraudulent conduct. By his testimony, Joseph attested that he committed acts that satisfied each of the elements of criminal wire fraud and admitted to causing Plaintiff damages of $12 million by his conduct.

43.     In his Criminal Proceeding, Joseph admitted to the damages caused to Plaintiff by Joseph's criminally fraudulent conduct.

b. **Stipulated Law**

1.     The parties stipulate that this is an adversary case under Sections 523(a)(2)(A) and (B), (4) and (6). of the Bankruptcy Code.

2. Defendant does not stipulate that any of these provisions are applicable to her, or that a non-dischargeable Judgment is merited under any of said provisions.

**5.  Issues of Fact to be Litigated**

**The Yellow Rose Judgment Amount**

1.     Whether Defendant obtained Plaintiff's $12 million through false pretenses, false representations or actual fraud.

2.     Whether Defendant used a statement or statements in writing regarding hers, Joseph's or DuMouchelle Jewellers' financial condition, that were materially false, respecting Defendant's, Joseph's or DuMouchelle Jewellers' financial condition, upon which Plaintiff reasonably relied when he transmitted money to

DuMouchelle Jewellers, that Defendant caused to be made or published with intent to deceive Plaintiff.

3.      Whether Defendant committed embezzlement or larceny in the redirection of Plaintiff's money to purposes other than the acquisition of The Yellow Rose.

4.      Whether Defendant willfully or maliciously injured Plaintiff by making use of Plaintiffs money for purposes other than those intended by Plaintiff.

5.      Whether a telephone call took place with Plaintiff in early May 2019, whether it included Defendant, and whether in that phone call Defendant and Joseph promised to wire $2 million to Plaintiff for repayment on The Yellow Rose Transaction. And further whether that phone call, if found, is indicative of Defendant's participation in the fraud committed against Plaintiff.

6.      Whether Plaintiff sent an email to Joseph and Defendant dated May 13, 2019 (the "May 13, 2019 Email") inquiring about the status of the wire transfer of $2 million demonstrates Defendant's participation in the fraud against Plaintiff.

7.      Whether Plaintiff sent an email to Defendant and Joseph on June 10, 2019 (the "June 10, 2019 Email") again inquiring about the status of The Yellow Rose Transaction and Debtors did not respond to the June 10, 2019 Email.

8.     That Plaintiff sent an email to Defendant and Joseph on June 21, 2019 (the "June 21, 2019 Email") requesting Debtors to return his $12 million and Debtors did not respond to the June 21, 2019 Email.

9.     That Plaintiff sent an email to Defendant and Joseph on July 2, 2019 (the "July 2, 2019 Email") Debtors did not respond to the July 2, 2019 Email.

10.     Whether Defendant's failure to respond, resolve, investigate or inquire about the reason for each of Plaintiff's May 13, 2019 Email, June 10, 2019 Email, June 21, 2019 Email and July 2, 2019 Email demonstrates Plaintiff's participation in and/or knowledge of the fraud against Plaintiff.

11.     Whether Defendant's failure to initiate the promised $2 million wire payment to Plaintiff referenced in the May 13, 2019 Email is indicative of Defendant's participation in and continued concealment of the fraud committed against Plaintiff.

**The Promissory Note Judgment Amount**

12.     Whether the Promissory Note Judgment Amount related to two promissory notes that each of the Borrowers executed and were payable to Plaintiff is nondischargeable as to Defendant.

13.     Defendant's knowledge of and participation in, transmitting the January 20, 2014 letter to Plaintiff affirming that Defendant, Joseph and

DuMouchelle Jewellers were in good financial standing and did not have any liens or judgments against them (the "January 2014 Financial Statement").

14.     Whether as a result of the January 2014 Financial Statement, Plaintiff agreed to and did loan $350,000.00 to the Borrowers.

15.     Whether Defendant and Joseph executed a Promissory Note, in favor of Plaintiff, dated February 12, 2014, in the principal amount of $350,000.00, which was executed by Debtors on February 19, 2014 (the "350,000 Note") together with a grant of lien on jewelry items purchased, equal to 150% of the $350,000 Note balance.

16.     Neither Defendant, Joseph nor DuMouchelle Jewellers made any payment on the $350,000 Note.

17.     That Joseph executed a new promissory note, in favor of Plaintiff, dated for August 12, 2014 but executed on November 7, 2014, in the principal amount of $430,000 (the "$430,000 Note" and together with the $350,000 Note, the "Notes").

18.     That Joseph negotiated for extensions of the principal payments due under the $430,000 Note twice yearly in 2015 through 2017.

19.     That on May 16, 2017, Defendant, Joseph and DuMouchelle Jewellers executed a Renewed and Extended Promissory Note with a due date of November 16, 2017 (the "May 16, 2017 Extension").

20.     Whether as a condition of the May 16, 2017 Extension Defendant, Joseph and DuMouchelle Jewellers agreed to pay $430,000, plus interest of $64,500.00, on or before November 16, 2017 (the "May 16, 2017 Extension Payment").

21.     That on or about January 17, 2018, Joseph executed and delivered to Plaintiff a Renewed and Extended Promissory Note, effective November 16, 2017, in the amount of $430,000 plus accrued but unpaid interest (the "January 17, 2018 Extension").

22.     That as a condition of the January 17, 2018 Extension was the payment of the principal amount of $430,000, plus accrued interest, on or before May 16, 2018 (the "January 17, 2018 Extension Payment").

23.     That Plaintiff only received a single payment of $64,500.00 on the $430,000 Note  on September 26, 2017. Joseph made no other payments on the $430,000 Note thereafter.

24.     Defendant's involvement in the Promissory Note transactions and whether the Promissory Note transactions were Defendant's false representations of her intent to repay the Promissory Notes.

**6. Issues of Law to be Litigated**

1.     All of the issues of fact identified above to the extent they contain mixed issues of fact and law.

2.     Whether Defendant's acts and/or conduct support a finding of her nondischargeability pursuant to sections 523(a)(2)(A), (B), (4) and (6) of the Bankruptcy Code.

3.     Whether the plain reading of 523(a)(2)(A), (B), and (4) of the Bankruptcy Code impose nondischargeable liability for Plaintiff's Judgment against Defendant irrespective of Defendant's actions and/or knowledge of the fraud.

4.     Whether, in the alternative to Defendant's direct nondischargeable liability under sections 523(a)(2)(A) and (B), (4) and (6) of the Bankruptcy Code, Defendant may be held vicariously liable for Joseph's fraudulent and wrongful acts.

**7.  <u>Evidence Problems Likely to Arise at Trial</u>**

To the extent the Plaintiff or the Defendant attempt introduce documents to support Plaintiff's claims or Defendant's defenses that were not produced or adequately identified during discovery, the parties reserve the right to object to the admission of such evidence.

Plaintiff contends that Defendant or Joseph have admitted to the following facts in this Adversary Proceeding or in Joseph's Criminal Proceeding and therefore are the law of the case that should be adopted by this Court:

1.     Prior to the dispute that resulted in the Judgment, Plaintiff and Defendant had a long-standing personal relationship.

2.     Defendant and Joseph founded DuMouchelle Jewellers in the State of Michigan in 1996 as a member managed company.

3.     DuMouchelle Jewellers operated as a fine jewelry appraisal and auctioneer business until the end of 2019.

4.     Defendant at all times served as the vice president and held a 10 percent membership interest in DuMouchelle Jewellers.

5.     Defendant's role in DuMouchelle Jewellers involved the appraisal and brokering of jewelry.

6.     Defendant held check writing authority, and, as an agent of DuMouchelle Jewellers, she regularly communicated with DuMouchelle Jewellers' customers.

7.     Defendant is a trained gemologist, a member of the boards of the Michigan Jewelers Association, Accredited Gemologists Association, and she also indicated that she served as the GIA Alumni-Michigan Chapter President and is a member of the National Association of Jewelry Appraisers and the American Society of Appraisers.

8.     On January 25, 2019, Defendant transmitted by email to Plaintiff a "data package" with pictures and information related to The Yellow Rose that also included photos and information of comparable diamonds (the "January 25 2019

Email"). Defendant spoke with Plaintiff regarding The Yellow Rose prior to January 31, 2019.

9. At the time the account was opened Defendant was aware that Plaintiff was attempting to wire funds to DuMouchelle Jewellers for The Yellow Rose transaction.

10. The account was opened to facilitate receipt of Plaintiff's $12 million.

11. At the time that the $12 million was wired into the Bank of America Account, Defendant was the only signatory to the account.

12. Joseph represented that the Bank of America Account was the account of Fine & Estate Appraisers, LLC, with the wiring instructions being provided by the seller or of the seller agent of The Yellow Rose, Richard Drucker allegedly of Gemguide, based on the February 6, 2019 Email containing the above information under an email allegedly authored by Richard Drucker of Gemguide and forwarded to Joseph.

13. Just prior to the $12 million wire transfer into the Bank of America Account, the Bank of America Account balance was $500.

**8. Witnesses**

(a) Plaintiffs' Witnesses:

Will call: (a) Plaintiff (fact witness)

May call: (a) Teodor Gelov (fact witness)
(b) Melinda Adducci ("M. Adducci") (fact witness)

(c)     Lauren Lynch (fact witness)
(d)     Joseph Adducci
(e)     Dennis Egan
(f)     Joel Harris
All witnesses disclosed or identified by Defendant in this adversary proceeding
(e)     All necessary foundational or authentication witnesses
(f)     All rebuttal witnesses

(b)     Defendants' Witnesses:

Will Call:     (a) Defendant Melinda Adducci (fact witness)

May Call:

(a)     Lauren Lynch (fact witness)
(b)     Thomas T. Ritter (Plaintiff, fact witness)
(c)     All witnesses disclosed or identified by Plaintiff in this adversary proceeding
(d)     All necessary foundational or authentication witnesses
(e)     All rebuttal witnesses

**9. <u>Exhibits</u>**

(a)     Stipulated Joint Exhibits:

| Exhibit No. | Description |
|---|---|
| 1 | Photo, The Yellow Rose |
| 2 | Bank of America Bank Counter Checks |
| 3 | Bank of America Cashier's Checks |
| 4 | Bank of America Business Checking Account Signature Cards |
| 5 | Bank of America DuMouchelle's Jewellers  Feb. 2019 Statement |
| 6 | September 12, 2019 Williams County District Court, North Dakota, Findings of Fact and September 16, 2019 Williams County District Court, North Dakota, Judgment |

| Exhibit No. | Description |
|---|---|
| 7 | January 25, 2019 – January 28, 2019 Email Chain and Attachment |
| 8 | January 30, 2019 Letter Agreement re Purchase of The Yellow Rose |
| 9 | January 31, 2019 Email from Plaintiff to Joseph DuMouchelle (J. DuMouchelle) and M. Adducci |
| 10 | January 31, 2019 Wire Information Emails from J. DuMouchelle |
| 11 | February 1, 2019 Wire Information Email from J. DuMouchelle |
| 12 | Chase wire form to Highland Wealth Management |
| 13 | February 6, 2019 Email by J. DuMouchelle to Plaintiff |
| 14 | Chase wire form to FineMark National Bank and Trust |
| 15 | February 6, 2019 Receipt re The Yellow Rose |
| 16 | February 7, 2019 Brinks Request for Hawb Label |
| 17 | March 20, 2019 Draft Letter Agreement re The Yellow Rose |
| 18 | March 24, 2019 email chain between Plaintiff to J. DuMouchelle |
| 19 | April 12, 2019 Letter of Authority re The Yellow Rose signed by Sam Haggin |
| 20 | May 13, 2019 Email from Plaintiff to J. DuMouchelle and M. Adducci |
| 21 | June 10, 2019 Email from Plaintiff to J. DuMouchelle and M. Adducci |
| 22 | June 21, 2019 Email from Plaintiff to J. DuMouchelle and M. Adducci |
| 23 | July 2, 2019 Email from Plaintiff to J. DuMouchelle and M. Adducci |
| 24 | August 30, 2019 Affidavit of Plaintiff |
| 25 | June 16, 2020 J. DuMouchelle Information |
| 26 | September 17, 2020 Rule 11 Plea Agreement |
| 27 | Bank of America Withdrawal Slips signed by M. Adducci |
| 28 | June 14, 2019 Email from R. Gostevsky to J. Whipple |
| 29 | Defendant's Response to Plaintiff's Discovery Request [ECF No. 63] |
| 30 | June 7, 2019 Deposition Transcript of J. DuMouchelle |
| 31 | June 6, 2019 Deposition Transcript of M. Adducci |
| 32 | September 3, 2019 (pm) Deposition Transcript of M. Adducci |
| 33 | Video Deposition of M. Adducci September 3, 2019 |
| 34 | Video Deposition of M. Adducci June 6, 2019 |
| 35 | J. DuMouchelle Guilty Plea Hearing Transcript |
| 36 | July 27, 2022 Opinion and Order re Defendant's Objections to the Presentence Investigation Report |

| Exhibit No. | Description |
|---|---|
| 37 | July 27, 2022 Opinion and Order re The Amount of Loss and Restitution |
| 38 | Opinion & Order re Application of the Sophisticated Means Enhancement |
| 39 | Order (1) Granting The Government's Application To Amend The Preliminary Order Of Forfeiture (Dkt. 100) And (2) Amending The Preliminary Order Of Forfeiture (Dkt. 41) |
| 40 | Criminal Judgment |
| 41 | February 14, 2023 Sixth Circuit Appellate Order |
| 42 | Rule 341 transcript of M. Adducci |
| 43 | March 7, 2019 Recording of call between Ted Gelov, M. Adducci and J. DuMouchelle |
| 44 | Transcripts (written and video) of depositions to be taken in Teodore Gelov v. M. Adducci and Plaintiff v. M. Adducci adversary proceedings scheduled for September 23, 2024 and September 30, 2024 |
| 45 | 3 Photos of Lindy with the Yellow Rose Diamond, produced in discovery |

(b)     **Plaintiff's Exhibits:**

Plaintiff reserves the right to supplement this list to the extent necessary and to include any rebuttal exhibits not identified herein.  Plaintiff also reserves the right to utilize additional documents at trial, if necessary, for impeachment purposes.

(c)     **Defendant's Exhibits:**

| Exhibit Letter | Description |
|---|---|
| A | Any of the documents listed above by Plaintiffs or as Joint Exhibits |
| B | Any and all pleadings, documents, or papers from the state Court case involving these parties. |
| C | Any and all documents and discovery responses exchanged in this case. |
| D | Proof of 2019 GIA Event in Tuscon, AZ |

Defendant reserves the right to supplement this list to the extent necessary and to include any rebuttal exhibits not identified herein. Defendant also reserves the right to utilize additional documents at trial, if necessary, for impeachment purposes.

**10.** **Objections to Exhibits.**

None. However, both parties reserve the right to object to the admissibility of any exhibits not expressly identified herein above, and to any exhibit, whether or not listed, on any valid evidentiary basis, including without limitation, on the basis of authentication. However, both parties agree that custodians of records shall not be required to present exhibits; rather, each party may testify to how such document was obtained, thereby authenticating the documents.

**11.** **Damages**

Plaintiff is seeking a judgment of nondischargeability against Defendant in the amount of the North Dakota Judgment of $17,140,031.62 plus interest at the applicable federal judgment interest rate. Plaintiff's damages are comprised of $16,414,214.61 for The Yellow Rose transaction and $725,817.01 for the promissory note transactions.

Defendant asserts that there are no grounds for a non-dischargeable Judgment to be entered against her.

**12.** **Trial**

(a)    Non-jury.

(b)     Estimated length of trial is one to two days.

**13.** **Settlement or Mediation**

The parties have continued to consider settlement of the issues for trial and have not achieved resolution of Plaintiff's claims. Settlement was last addressed on or about September 27, 2024. The parties have considered mediation of the issues involved but have not agreed to participate in formal mediation.

**14.** **Filing of Trial Briefs, Etc.**

Plaintiff and Defendant request an order of the court authorizing trial briefs to be filed subsequent to trial.

**15.** **Additional Requirements**

None.

Respectfully submitted,

**TAFT STETTINIUS &                     JOHN R. FOLEY, P.C.**
**HOLLISTER, LLP**


/s/Kimberly Ross Clayson                     /s/Patrick A. Foley
Kimberly Ross Clayson (P69804)             Patrick A. Foley (P74323)
Jay L. Welford (P34471)                          18572 W. Outer Drive
27777 Franklin, Suite 2500                     Dearborn, MI 48128
Southfield, MI 48034                               313-274-7377
(248) 351-3000                                       pafoley@jrfpc.net
kclayson@taftlaw.com
jwelford@taftlaw.com

*Counsel to Plaintiff, Thomas T. Ritter*

Dated: September 30, 2024

*Counsel for Defendant, Melinda J. Adducci*

Dated:  September 30, 2024