In re:

Joseph G. DuMouchelle and
Melinda J. Adducci,

          Debtors.

_____/

Thomas T. Ritter,

          Plaintiff,

v.

Melinda J. Adducci,

          Defendant.

_____/

Chapter 7

Case No. 19-54531-lsg

Hon. Lisa S. Gretchko

Adv. Pro. No. 20-04381

## JOINT FINAL PRETRIAL ORDER

Pursuant to the Court's Adversary Proceeding Scheduling Order, as amended, Thomas T. Ritter ("**Plaintiff**") and Melinda Adducci ("**Defendant**") have submitted to the Court their Joint Final Pretrial Order, as follows:

### 1. Jurisdiction

This is an adversary proceeding arising out of the Chapter 7 Bankruptcy Filing of Melinda Adducci. This Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(I), none of the parties contest the Bankruptcy Court's jurisdiction.

### 2. Plaintiff's Claims: Plaintiff seeks a determination of nondischargeability pursuant to 11 U.S.C. §§523(a)(2)(A) (false representations, false pretenses or actual fraud), (4) (as to the embezzlement and larceny portion of 11 U.S.C. §523(a)(4)) and

(6) (willful and malicious injury) for $12 million or in the alternative, such other amount this Court determines is non-dischargeable pursuant to 11 U.S.C. §523.

    a.    Plaintiff lost $12 million due to Defendant's fraudulent representations and other misconduct regarding the purported "purchase and resale" of a 77.12-carat yellow diamond ring coined, **"The Yellow Rose."**

    b.    Defendant individually, as an agent of Joseph DuMouchelle Fine & Estate Jewellers, LLC ("**DuMouchelle Jewellers**") and in coordination with former Defendant Joseph DuMouchelle ("**Joseph**", and together with Defendant and DuMouchelle Jewellers, the "**DuMouchelle Parties**"), led Plaintiff to believe that he had the opportunity to purchase The Yellow Rose for $12 million and resell it at a substantial profit above $12 million (the "**Yellow Rose Transaction**").

    c.    Defendant obtained and made improper use of Plaintiff's $12 million under false pretenses, false representations or actual fraud within the meaning of Section 523(a)(2)(A) of the Bankruptcy Code.

    d.    Defendant embezzled Plaintiff's $12 million by making use of the money for purposes other than Plaintiff's intended purchase of The Yellow Rose within the meaning of Section 523(a)(4) of the Bankruptcy Code. In the alternative, Plaintiff committed larceny within the meaning of Section 523(a)(4) where she knew that Plaintiff's money was in the BofA Account (defined in Section 4, Stipulation of Facts and Law, paragraph q, *infra.*) but used his funds for purposes other than purchase of The Yellow Rose and thereby knew that her conduct would permanently deprive Plaintiff of his money.

    e.    Defendant willfully and maliciously injured Plaintiff by making improper use of Plaintiff's $12 million for purposes other than the purchase of The Yellow Rose within the meaning of Section 523(a)(6) of the Bankruptcy Code.

    f.    Defendant is vicariously liable for defrauding Plaintiff by acting in concert with her spouse and co-member of DuMouchelle Jewellers, Joseph, whose liability to Plaintiff was criminally adjudicated as fraud.

**Plaintiff's Withdrawn Claims**

    g.    Plaintiff has withdrawn the following of his nondischargeability claims:

2

i. All nondischargeability claims against Defendant related to promissory note transactions between Plaintiff and the DuMouchelle Parties that predated the Yellow Rose Transaction.

ii. As to the Yellow Rose Transaction, his nondischargeability claim under 11 U.S.C. §523(a)(2)(B).

h. Plaintiff is not seeking a nondischargeability judgment regarding the Yellow Rose Transaction with respect to the portion of 11 U.S.C. §523(a)(4) regarding "fraud or defalcation while acting in a fiduciary capacity."

i. Plaintiff is not seeking a nondischargeability judgment against Defendant regarding the Yellow Rose Transaction on a partnership theory.

j. Plaintiff is not seeking a nondischargeability judgment on collateral estoppel grounds in connection with the North Dakota Judgment (defined in Section 4, Stipulation of Facts and Law, paragraph gg, *infra*).

## 3. **Defendant's Claims**

a. Defendant denies that she made any false representation, false pretense, or engaged in any conduct constituting "actual fraud" under 11 U.S.C. §523(a)(2)(A). Defendant did not negotiate the Yellow Rose Transaction, did not solicit Plaintiff's participation, did not provide wiring instructions, and made no statements upon which Plaintiff relied in transferring funds.

b. Defendant denies that she possessed any subjective intent to deceive Plaintiff. Under controlling Sixth Circuit law, nondischargeability under 11 U.S.C. §523(a)(2)(A) requires a showing of the debtor's actual subjective intent to defraud. Plaintiff lacks any evidence of such intent.

c. Defendant denies that Plaintiff justifiably relied on any statement or conduct by her. Plaintiff relied solely on communications from Joseph. The Data Package Email (defined in Section 4, Stipulation of Facts and Law, paragraph c, *infra*) contained accurate photographs of a gemstone and did not include any representation concerning ownership, value, authenticity, or transaction structure.

d. Defendant denies that any conduct by her caused Plaintiff to part with his funds. The $12 million transfer occurred before any act attributed to Defendant

that Plaintiff claims was wrongful, and after Plaintiff relied exclusively on wiring instructions sent by Joseph.

e.      Defendant denies obtaining, receiving, appropriating, or personally benefiting from any portion of Plaintiff's money or property. Defendant received no proceeds, commissions, compensation, or financial advantage from the Yellow Rose Transaction.

f.      Defendant denies liability under 11 U.S.C. §523(a)(4). Defendant did not exercise dominion over entrusted property, did not misappropriate any funds, and lacked any fraudulent intent required for embezzlement or larceny.

g.      Defendant denies liability under 11 U.S.C. §523(a)(6). Defendant did not intend to injure Plaintiff or his property, nor did she believe injury was substantially certain to result. Mere participation in ministerial banking activity does not constitute "willful and malicious injury" as defined by controlling Supreme Court and Sixth Circuit authority.

h.      Plaintiff cannot impute Joseph's conduct to Defendant under any theory of partnership, conspiracy, or agency. Under *Bartenwerfer v. Buckley*, 143 S. Ct. 665 (2023), nondischargeable fraud may be imputed only where a valid partnership or agency exists under state law. Marriage does not create a partnership or agency, and Michigan's LLC statute expressly shields members from personal liability absent personal tortious conduct.

i.      Plaintiff's reliance on statements made or actions taken by Joseph cannot satisfy the elements of nondischargeability as to Defendant. Plaintiff's own communications reflect that he negotiated exclusively with Joseph and intentionally did not include Defendant as a principal in the Yellow Rose Purchase Agreement (defined in Section 4, Stipulation of Facts and Law, paragraph e, *infra*).

j.      Defendant was herself deceived by Joseph and believed the Yellow Rose Transaction to be legitimate.

k.      Defendant lacked knowledge of any fraud by Joseph and believed the Yellow Rose Transaction to be legitimate.

4

l. Defendant had no knowledge of Joseph's fraudulent misrepresentations, had no involvement in the structuring of The Yellow Rose Transaction, and acted only in a ministerial capacity.

### 4. **Stipulation of Facts and Law**

**Stipulated Facts**

a. Defendant and Joseph were members of DuMouchelle Jewellers.

b. At all times pertinent to this adversary proceeding, Defendant held a ten percent membership interest in DuMouchelle Jewellers and held the title of vice president, and Joseph held a ninety percent membership interest in DuMouchelle Jewellers and held the title of President.

c. On January 25, 2019, Defendant sent Plaintiff an email containing a data package with information regarding a diamond known as "The Yellow Rose" (the "**Data Package Email**").

d. On January 28, 2019, Joseph sent Plaintiff what appeared to be an appraisal of The Yellow Rose.

e. On January 31, 2019, Plaintiff and Joseph executed a purchase agreement (the "**Yellow Rose Purchase Agreement**") providing that Plaintiff would purchase The Yellow Rose for $12 million and that Joseph would facilitate the resale of the diamond.

f. Defendant was not a signatory to the Yellow Rose Purchase Agreement.

g. On January 31, 2019, Plaintiff sent an email to both Defendant and Joseph attaching the executed Yellow Rose Purchase Agreement and asked whether Defendant should be included as a party to the Yellow Rose Purchase Agreement.

h. On January 31, 2019, Joseph sent Plaintiff an email requesting funds to purchase The Yellow Rose and providing wiring instructions to the following account:

MB Financial Bank
Account Name: Highland Wealth Management
Routing Number: 071001737
Account Number: XXXXX79802
(the "**MB Financial Bank Account**").

i.　　The January 31, 2019 email represented that Highland Wealth Management was associated with the seller of The Yellow Rose.

j.　　On February 1, 2019, Plaintiff initiated a wire transfer to the MB Financial Bank Account.

k.　　MB Financial Bank did not accept the wire transfer and the funds were immediately returned to Plaintiff.

l.　　In an email dated February 1, 2019, Joseph directed Plaintiff to wire $12 million to the following account:

FineMark Bank & Trust
Account Name: Fine & Estate Appraisers, LLC
Routing Number: 067016231
Account Number: XXXXX46380
(the "**FineMark Account**").

m.　　On February 4, 2019, Plaintiff initiated a wire transfer to the FineMark Account.

n.　　FineMark Bank & Trust did not accept the wire transfer and the funds were returned to Plaintiff on February 5, 2019.

o.　　The FineMark Account was not the bank account of the seller of The Yellow Rose.

p.　　Richard Drucker was not the seller of The Yellow Rose.

q.　　On February 6, 2019, Joseph sent Plaintiff an email directing Plaintiff to wire $12 million to the following account:

Bank Name: Bank of America
Account Name: Fine & Estate Appraisers, LLC
Routing Number: 026009593
Account Number: XXXXX60585
(the "**BofA Account**").

r.       The BofA Account was an account of DuMouchelle Jewellers.

s.       On February 6, 2019, Plaintiff initiated the $12 Million Transfer (defined in paragraph t immediately below) to the BofA Account.

t.       Bank of America accepted the $12 million wire transfer from Plaintiff to the BofA Account (the "**$12 Million Transfer**").

u.       Joseph provided Plaintiff with a receipt dated February 6, 2019 purporting to evidence the purchase of The Yellow Rose (the "**Yellow Rose Purchase Receipt**").

v.       On February 7, 2019, Joseph sent three emails to Bank of America representatives (the "**BofA Emails**") with payment instructions regarding the BofA Account.

w.       Defendant's email address was copied as a recipient on two of the three BofA Emails.

x.       On February 7, 2019, the $12 Million Transfer proceeds in the BofA Account were disbursed from Bank of America in part as follows:

7

| Payee | Check | |
|---|---|---|
| Merrill Wood Collection | $ | 6,000.00 |
| Peter Indorf | $ | 1,500.00 |
| JB International | $ | 678,000.00 |
| John Ragard | $ | 848,500.00 |
| Diamond Opportunities | $ | 33,500.00 |
| Kwiat | $ | 204,225.00 |
| Abbotts Corp | $ | 1,104,750.00 |
| Aron Rescources | $ | 236,450.00 |
| Candaian Gemmological Ass. | $ | 1,500.00 |
| Gene Kazlow | $ | 450,000.00 |
| Howard Derman | $ | 200,000.00 |
| FEI | $ | 277,500.00 |
| | $ | 4,041,925.00 |
| Paul Haig | $ | 39,000.00 |
| David L. Husman | $ | 1,091,769.44 |

(the "**Bank Transactions**")

y.      On February 7, 2019, Defendant was in Tucson, Arizona attending a gemology conference.

z.      Joseph represented to Plaintiff that The Yellow Rose would be moved from the Brinks depository in Texas to the Brinks depository in Michigan.

aa.      Plaintiff prepared a proposed resale agreement for The Yellow Rose and emailed that draft agreement to Joseph on March 21, 2019.

bb.      Joseph signed the draft resale agreement on April 12, 2019 for the resale of The Yellow Rose for $16.5 million (the "**April 12, 2019 Letter Agreement**").

cc.      The April 12, 2019 Letter Agreement contemplated a closing date of April 22, 2019.

dd.      On April 22, 2019, Plaintiff traveled to Detroit to view The Yellow Rose at the Brinks depository.

ee.      When Plaintiff arrived in Detroit, Joseph did not show him The Yellow Rose.

8

ff.     Plaintiff did not receive repayment of the $12 Million Transfer from Joseph, Defendant or DuMouchelle Jewellers after it was wired into the BofA Account.

gg.     After filing suit against the DuMouchelle Parties, including Defendant in connection with certain promissory notes and the Yellow Rose Transaction, on September 12, 2019, Plaintiff obtained a default judgment against the DuMouchelle Parties, including the Defendant, in the total amount of $17,140,031.62 (the "**North Dakota Judgment**").

hh.     The North Dakota Judgment is comprised of (1) $16,414,214.61 in connection with the Yellow Rose Transaction calculated as (i) $12 million of Plaintiff's money that was intended for the purchase of The Yellow Rose, (ii) $4 million for a purported commission that would have been due to Plaintiff had the Yellow Rose Transaction actually occurred, and (iii) judgment interest and (2) $725,817.00 related to promissory notes by the DuMouchelle Parties that predated The Yellow Rose Transaction.

ii.     Thereafter, the Debtors commenced the above-captioned bankruptcy case (the "**Bankruptcy Case**") on October 11, 2019 (the "**Petition Date**") by filing the above-captioned voluntary Chapter 11 bankruptcy petition. The case was converted to a Chapter 7 bankruptcy in December of 2019, after a motion was filed by the United States Trustee seeking conversion.

jj.     On June 16, 2020, while this Adversary Proceeding was pending, the United States of America filed an *Information* (the "**Information**") against Joseph in the United States District Court for the Eastern District of Michigan, Southern Division, styled as *United States of America v. Joseph Gregory DuMouchelle*, Case No. 20-20245 [ECF No. 1] ("**Criminal Proceeding**") in connection with The Yellow Rose Transaction.

kk.     The Information is 24 paragraphs in length, but alleged, in summary, among other things, that Joseph "by means of false and fraudulent material promises, pretenses and representations:" "instructed TR to transfer $12,000,000 for the purchase of the Yellow Rose;" "falsified documents and emails making it appear that the account the money would be wired to was in fact the seller's;" "sent the false information to TR with directions to wire the money to the account with a notation that it was for the benefit of the seller represented by RD;" "sent TR a fraudulent

receipt making it appear that the Yellow Rose had been purchased;" and "caused the transmission of wire communications in interstate commerce in the form of an interstate wire transfer of funds in the amount of $12,000,000 from TR's bank account in Chandler, Arizona (sic) DuMouchelle's Bank of America account in Bloomfield Hills, Michigan." In the Information, TR referred to Plaintiff, Thomas Ritter.

ll.     On September 14, 2020, Joseph appeared for a guilty plea hearing, wherein he testified before the District Court for the Eastern District of Michigan in the Criminal Proceeding regarding his criminal fraudulent conduct. By his testimony, Joseph attested that he committed acts that satisfied each of the elements of criminal wire fraud.

mm.     In his Criminal Proceeding, Joseph admitted to causing Plaintiff $12 million in damages due to his criminally fraudulent conduct.

nn.     On July 17, 2023, this Court dismissed Joseph from the above-captioned adversary proceeding on mootness grounds following his waiver of his bankruptcy discharge in the Bankruptcy Case.

**Stipulated Law**

A.     The parties agree that this is an adversary proceeding under 11 U.S.C. §§523(a)(2)(A), (a)(4) (not including fraud or defalcation while acting in a fiduciary capacity), and (a)(6) of the Bankruptcy Code and make the following stipulations of law.

B.     Under 11 U.S.C. §523(a)(2)(A), Plaintiff must prove that the Debtor obtained (a) money, property, services, or an extension, renewal, or refinancing of credit, (b) by false pretenses, a false representation, or actual fraud, and (c) other than a statement respecting the Debtor's or an insider's financial condition.

C.     Plaintiff may prevail under §523(a)(2)(A) if he proves that the alleged debt was obtained through (a) false pretenses, (b) false representation, or (c) actual fraud.

D.     With respect to false pretenses under §523(a)(2)(A), Plaintiff must prove an implied misrepresentation or conduct intended to create or foster a false

impression. *Lenchner v. Korn (In re Korn)*, 567 B.R. 280, 300 (Bankr. E.D. Mich. 2017).

     E.     With respect to false representations under §523(a)(2)(A), Plaintiff must prove that Defendant made false representations which involve an express representation and that (a) at the time the representation was made the Debtor knew it was false or made it with gross recklessness as to its truth, (b) the Debtor intended to deceive the creditor, (c) the creditor justifiably relied on the false representation, and (d) the reliance was the proximate cause of loss. *Rembert v. AT&T Universal Card Servs., Inc.*, 141 F.3d 277, 280–81 (6th Cir. 1998); *Coughlin Chevrolet, Inc. v. Thompson (In re Thompson)*, 458 B.R. 409, 421 (Bankr. S.D. Ohio 2011).

     F.     With respect to actual fraud under §523(a)(2)(A), Plaintiff must prove "actual fraud," which encompasses any fraud involving moral turpitude or intentional wrong. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 360 (2016) (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878)).

     G.     With respect to Section 523(a)(2)(A), Plaintiff must prove "justifiable, but not reasonable, reliance." *Field v. Mans*, 516 U.S. 59, 73-75, 116 S. Ct. 437, 445-46 (1995).

     H.     Under 11 U.S.C. §523(a)(4), Plaintiff must prove that Defendant committed (a) embezzlement or (b) larceny.

     I.     To establish embezzlement under §523(a)(4), Plaintiff must prove that (a) he entrusted property to the Debtor, (b) the Debtor appropriated the property for a use other than that for which it was entrusted, and (c) the circumstances indicate fraud. *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir. 1996); *Ball v. McDowell (In re McDowell)*, 162 B.R. 136, 140 (Bankr. N.D. Ohio 1993).

     J.     To establish larceny under §523(a)(4), Plaintiff must prove the fraudulent and wrongful taking and carrying away of property belonging to Plaintiff (a) without the consent of the owner and (b) with intent to convert such property to the taker's use. *Palisades Tickets, Inc. v. Daffner (In re Daffner)*, 612 B.R. 630, 652 (Bankr. E.D.N.Y. 2020).

     K.     Under 11 U.S.C. §523(a)(6), Plaintiff must prove that his damages were the result of "willful and malicious injury by the debtor to another entity or to the property of another entity."

L.      To establish willful injury, Plaintiff must prove that the Debtor acted (a) with the intent to cause injury or (b) with the belief that injury was substantially certain to result from the Debtor's conduct. *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 583 (6th Cir. 2001).

M.      To establish malice, Plaintiff must prove that the Debtor's actions were taken (a) in conscious disregard of one's duties or (b) without just cause or excuse. *Initial Invs., Inc. v. Woodford (In re Woodford)*, 560 B.R. 710, 721 (Bankr. E.D. Mich. 2016).

N.      Plaintiff must also prove that the alleged willful and malicious conduct caused the injury. *Buzzard v. Ratliff (In re Ratliff)*, 673 B.R. 719, 738 (Bankr. S.D. Ohio 2025).

O.      In order to establish vicarious nondischargeable liability, Plaintiff must prove that Defendant is liable under a recognized theory of (a) agency or (b) civil conspiracy. *Gidelski v. Anton (In re Anton),* Nos. 08-64144, 09-04344, 2013 Bankr. LEXIS 1715 (Bankr. E.D. Mich. Apr. 12, 2013).

P.      To establish nondischargeable liability under a theory of civil conspiracy, Plaintiff must prove (a) a concerted action, (b) by a combination of two or more persons, (c) to accomplish an unlawful purpose or a lawful purpose by unlawful means, and (d) an underlying actionable tort. *Id.* (quoting *Kasey, Inc. v. Alpine Realty Now, Inc.*, 2012 WL 10998 (Mich. App. January 3, 2012)).

Q.      Plaintiff bears the burden of proving each element of nondischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279 (1991).

R.      Plaintiff may prevail if he proves nondischargeability under any one of the theories asserted under §523(a)(2)(A), §523(a)(4), §523(a)(6), or vicarious liability, provided the required elements are established.

## 5. <u>**Issues of Fact to be Litigated**</u>

a.  Did Defendant's conduct cause Plaintiff to part with any money, and if so, how much?

b.  Did Defendant obtain Plaintiff's money or property, and if so, how much?

c.  If Defendant obtained money or property as a result of the Yellow Rose Transaction did she do so by making an express misrepresentation to Plaintiff?

d.  If Defendant obtained money or property as a result of the Yellow Rose Transaction did she do so by an implied misrepresentation of Defendant to Plaintiff, or by conduct that was intended to create a false impression?

e.  Did Defendant open the BofA Account?

f.  Did Plaintiff wire his money to the BofA Account, and if so, how much?

g.  Was Defendant the sole authorized signer on the BofA Account at the time Plaintiff's $12 Million Transfer was received on February 6, 2019?

h.  Was the balance of the BofA Account $500 before Plaintiff wired his $12 million to the account?

i.  Did Defendant write checks and make counter withdrawals out of the BofA Account from a Bank of America branch in Tucson, Arizona totaling approximately $5.1 million on February 7, 2019?

j.  Did Defendant sign other checks on the BofA Account during the month of February 2019?

k.  Was all of Plaintiff's $12 million in the BofA Account fully spent by the end of February 2019?

l.  Was Plaintiff's money used to purchase The Yellow Rose?

m. Did Plaintiff believe that Defendant transmitted information about The Yellow Rose to advance the Yellow Rose Transaction?

n. Did Defendant verbally represent to Plaintiff in a telephone conversation that the Yellow Rose Transaction was a good investment, and if so, did Plaintiff rely on that representation?

o. Did Defendant know those representations, if made, were false when she made them?

p. Were those representations, if made, made with gross disregard for the truth of the representations made?

q. Did Defendant's statement on the telephone give Plaintiff a false perception about the ability to enter into the Yellow Rose Transaction?

r. Did Plaintiff do business with Defendant before the Yellow Rose Transaction?

s. Was Defendant the reason Plaintiff transacted any business with the DuMouchelle Parties?

t. Did Plaintiff rely on Defendant's professional expertise as a gemologist and appraiser when he agreed to fund the Yellow Rose Transaction?

u. Was Plaintiff's reliance on Defendant's implied or express representations justified?

v. Did Defendant knowingly make an express or implied misrepresentation on a phone call with Plaintiff?

w. Did Defendant obtain money or property as a result of the Yellow Rose Transaction?

x. If Defendant obtained money or property as a result of the Yellow Rose Transaction did she do so by making an express representation to Plaintiff she knew was false at the time Defendant made the statement or did she make it with gross recklessness as to its truth?

y.      Did Defendant have access to the material terms of the Yellow Rose Transaction?

z.      Did Defendant have access to information that indicated Plaintiff's purchase price for The Yellow Rose?

aa.     Did Defendant remain silent despite her knowledge about Plaintiff's money or the Yellow Rose Transaction?

bb.     Did Plaintiff have a false impression about the Yellow Rose Transaction? If so, did Defendant know Plaintiff had a false impression about the Yellow Rose Transaction?

cc.     If Plaintiff had a false impression about the Yellow Rose Transaction, was Plaintiff's false impression based on something Defendant did or did not do?

dd.     Did Defendant knowingly make a misrepresentation to Plaintiff?

ee.     If Defendant made a misrepresentation, did Plaintiff rely upon it and was Plaintiff's reliance on Defendant's misrepresentation the proximate cause of his loss?

ff.     Did Defendant lawfully obtain possession of Plaintiff's money in connection with the Yellow Rose Transaction?

gg.     If Defendant did lawfully obtain possession of Plaintiff's money, did Defendant appropriate Plaintiff's money for use other than for which his money was entrusted, if so, how much?

hh.     Do the facts and circumstances of Defendant's use of Plaintiff's money indicate fraud?

ii.     If Defendant appropriated Plaintiff's money in connection with the Yellow Rose Transaction, did she do so with fraudulent intent or deceit?

jj.     In connection with the Yellow Rose Transaction, was Plaintiff's money deposited in an account that was inaccessible to Plaintiff?

kk. Did Defendant know the purpose of Plaintiff's $12 million was to purchase The Yellow Rose? If so, when did she know that?

ll. If so, did Defendant make use of Plaintiff's money for other purposes without Plaintiff's consent?

mm. Did Defendant know that the transfer of Plaintiff's money in the Bof A Account constituted a transfer of Plaintiff's money?

nn. Did Defendant know that the money in the BofA Account was Plaintiff's money?

oo. Did Defendant disburse the BofA Account funds in a manner that was inconsistent with the Yellow Rose Transaction?

pp. Did Defendant make disbursements of Plaintiff's money in the BofA Account with knowledge of it being inconsistent with Plaintiff's intended purpose?

qq. Does Defendant's disbursement from the BofA Account for purposes other than purchase of The Yellow Rose indicate her intention to permanently deprive Plaintiff of his money or property?

rr. Did Defendant disburse or use Plaintiff's money that she appropriated from Plaintiff in connection with the Yellow Rose Transaction without explanation to Plaintiff of the reason or purpose?

ss. If Defendant appropriated Plaintiff's money in connection with the Yellow Rose Transaction, did she intend to injure Plaintiff or believe that injury to Plaintiff was substantially certain to occur?

tt. If Defendant appropriated Plaintiff's money in connection with the Yellow Rose Transaction, were her actions taken in conscious disregard of her duties or without just cause or excuse?

uu. Did Defendant cause injury to Plaintiff?

vv. Was Defendant involved in the Yellow Rose Transaction as an agent?

16

ww.   If Defendant was involved in the Yellow Rose Transaction as an agent, who was Defendant the agent for?

xx.   Did Defendant participate in a concerted action with one or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful means in connection with the Yellow Rose Transaction?

yy.   Did Defendant use or enjoy Plaintiff's money from the $12 Million Transfer?

zz.   Did Defendant know that she made use of Plaintiff's money for purposes other than the purchase of The Yellow Rose, if so, when did she know?

aaa.   What did Defendant know about The Yellow Rose and when?

bbb.   Did Defendant receive a copy of the Yellow Rose Purchase Agreement? If so, when?

ccc.   Did the Yellow Rose Purchase Agreement indicate Plaintiff's purchase price was $12 million?

ddd.   Did Defendant show her son the Yellow Rose Purchase Agreement? If so, when?

eee.   Did Defendant know that the BofA Account was opened to receive Plaintiff's money? If so, when?

fff.   Did Defendant know Plaintiff's money was in the BofA Account and if so, when?

ggg.   Did Defendant write checks off of the BofA Account that were not for the purchase of The Yellow Rose? If so, what checks, and when?

hhh.   Did Defendant inquire as to the reason for paying other parties out of the BofA Account rather than for the purchase of The Yellow Rose?

iii.   Did Defendant ever email Plaintiff or call him back to inquire about the purchase of The Yellow Rose?

jjj.   Did Defendant pay appropriate attention to what was going on with respect to the Yellow Rose Transaction and her use of Plaintiff's money?

kkk.   Did Defendant conspire with Joseph to appropriate or use the money (from the $12 Million Transfer) obtained from Plaintiff?

lll.   Did Defendant act as Joseph's agent in misusing Plaintiff's money?

mmm.   Did Defendant know Plaintiff's money was being misappropriated and accept the benefits of it anyway?

nnn.   Did Defendant use Plaintiff's money in the BofA Account with reckless disregard for its intended purpose?

ooo.   Did Defendant participate in a telephone call with Plaintiff in or around May 2019 in which Defendant and/or Joseph represented that $2 million of sale proceeds from the Yellow Rose would be wired to Plaintiff?

ppp.   Did Defendant participate in a telephone call with Plaintiff on or about June 27, 2019 in which Defendant and/or Joseph represented that full payment would be made to Plaintiff by July 2, 2019?

qqq.   Were the representations about sale proceeds and repayment false, and if so, did Defendant know they were false when she made them? Alternatively, were her representations about sale proceeds made with reckless disregard for the truth?

rrr.   Did Defendant cease all communications with Plaintiff after June 27, 2019?

sss.   Are Defendant's after-the-fact statements and conduct an indication of her fraudulent intent to defraud Plaintiff?

ttt.   Did Plaintiff communicate primarily with Joseph regarding the structure of the Yellow Rose Transaction?

uuu.   Did Plaintiff communicate exclusively with Joseph regarding the structure of the Yellow Rose Transaction?

vvv.   Did Defendant make any statement to Plaintiff regarding the authenticity of The Yellow Rose prior to Plaintiff wiring funds?

18

www. Did Defendant make any statement to Plaintiff regarding the ownership of The Yellow Rose prior to Plaintiff wiring funds?

xxx. Did Defendant make any statement to Plaintiff regarding the value of The Yellow Rose prior to Plaintiff wiring funds?

yyy. Did Defendant receive any portion of Plaintiff's $12 million for her personal benefit?

zzz. Did Defendant intend to injure Plaintiff or believe that injury was substantially certain to occur at the time Plaintiff wired funds?

aaaa. Did Defendant agree with Joseph to participate in a scheme to defraud Plaintiff prior to the transfer of funds?

## 6. <u>Issues of Law to be Litigated</u>

a. Whether Defendant's acts or conduct support a determination of nondischargeability under 11 U.S.C. §523(a)(2)(A) with respect to the Yellow Rose Transaction, and if so, how much?

**Plaintiff's cases**: *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437 (1995); *Lansden v. Jones (In re Jones)*, 585 B.R. 465 (Bankr. E.D. Tenn. 2018); *Landmark Credit Union v Reichartz (In re Reichartz)*, 529 BR 696 (Bankr. E.D. Wis. 2015).

**Defendant's cases:** *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277 (6th Cir. 1998); *Rowe v. Steinberg (In re Steinberg)*, 270 B.R. 831 (Bankr. E.D. Mich. 2001).

b. Whether Defendant's acts or conduct support a determination of nondischargeability under 11 U.S.C. §523(a)(4) for embezzlement—with respect to the Yellow Rose Transaction and if so, how much?

**Plaintiff's cases:** *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1167 (6th Cir. 1996); *Contemporary Imports, Inc v Morrow (In re Morrow)*, 563 B.R. 272 (Bankr. E.D. Tenn. 2017); *In re Carlton*, 26 B.R. 202 (Bankr. M.D. Tenn. 1982).

**Defendant's cases:** *In re RnD Engineering, LLC*, 546 B.R. 738 (Bankr. E.D. Mich. 2016); *Long v. Piercy (In re Piercy)*, 21 F.4th 909 (6th Cir. 2021).

c.      Whether Defendant's acts or conduct support a determination of nondischargeability under 11 U.S.C. §523(a)(4) for larceny—with respect to the Yellow Rose Transaction and if so, how much?

**Plaintiff's cases:** *Cowin v Countrywide Home Loans, Inc (In re Cowin)*, 864 F.3d 344 (5th Cir. 2017); *Great Am. Ins. Co. v. O'Brien*, 154 B.R. 480 (Bankr. W.D. Tenn. 1993); *Kim v. Sun (In re Sun)*, 535 B.R. 358 (B.A.P. 10th Cir. 2015).

**Defendant's cases:** *Long v. Piercy (In re Piercy)*, 21 F.4th 909 (6th Cir. 2021); *In re Stollman*, 404 B.R. 244 (Bankr. E.D. Mich. 2009); *Williams v. Noblit (In re Noblit)*, 327 B.R. 307 (Bankr. E.D. Mich. 2005).

d.      Whether Defendant's acts or conduct support a determination of nondischargeability under 11 U.S.C. §523(a)(6) with respect to the Yellow Rose Transaction and if so, how much?

**Plaintiff's cases:** *Lawrence v. Barber (In re Barber)*, 605 B.R. 495 (Bankr. M.D. Tenn. 2019); *Kraus Anderson Capital, Inc v Bradley (In re Bradley)*, 507 B.R. 192 (B.A.P. 6th Cir. 2014); *McClendon v. Springfield (In re McClendon)*, 765 F.3d 501 (5th Cir. 2014).

**Defendant's cases**: *Kawaauhau v. Geiger*, 523 U.S. 57 (1998); *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455 (6th Cir. 1999); *MarketGraphics Research Group, Inc. v. Berge (In re Berge),* 953 F.3d 907 (6th Cir. 2020).

e.      Whether Defendant's acts or conduct support a finding of vicarious liability for a determination of nondischargeability under either 11 U.S.C. §§523(a)(2)(A), (a)(4) or (a)(6) with respect to the Yellow Rose Transaction, and if so, how much?

**Plaintiff's cases**: *Ewers v. Cottingham* (*In re Cottingham*), 473 B.R. 703 (B.A.P. 6th Cir. 2012); *In re Smith,* 98 B.R. 423 (Bankr. C.D. Ill. 1989); *Magley v. M & W Inc.*, 325 Mich. App. 307, 926 N.W.2d 1 (2018).

**Defendant's cases**: *Bartenwerfer v. Buckley,* 143 S. Ct. 665 (2023); *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226 (6th Cir. 1991); *Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.,* 602 F. Supp. 2d 829 (W.D. Mich. 2008).

20

**7. <u>Evidence Problems Likely to Arise at Trial</u>**

On March 13, 2026, the Court entered the Order Denying Defendant's Motion in Limine to Exclude Certain of Plaintiff's Exhibits and Witnesses ("Order Denying Motion in Limine"; ECF No. 296)**,** without prejudice to Defendant's ability to raise her objections at trial pertaining to the Unresolved Issues as defined in said Order. Consequently, at trial evidence problems are likely to arise regarding:

(i)   Plaintiff's use of transcripts of Defendant's September 23, 2024 deposition as direct evidence which includes a recording of the March 7, 2019 telephone call among Defendant, Joseph, and Mr. Gelov.

**8. <u>Witnesses</u>**

(a)   Plaintiff's Witnesses:

Will call:   (a)   Plaintiff (fact witness)

May call:   (a)   Melinda Adducci (fact witness)
             (b)   Lauren Lynch (fact witness)
             (c)   Joseph Adducci

(b)   Defendant's Witnesses:

Will Call:   (a) Defendant Melinda Adducci (fact witness)

May Call:

             (a)   Lauren Lynch (fact witness)
             (b)   Thomas T. Ritter (Plaintiff, fact witness)

**9. <u>Exhibits</u>**

**(a)   Joint Exhibits:**

The Parties stipulate to admit the following exhibits for all purposes:

| Exhibit No. | Description |
| --- | --- |
| J1 | Photo, The Yellow Rose |
| J2 | Bank of America Bank Counter Checks |
| J3 | Bank of America Cashier's Checks |
| J4 | Bank of America Business Checking Account Signature Cards |
| J5 | Bank of America DuMouchelle's Jewellers 2019 Account Statements |
| J6 | September 12, 2019 Williams County District Court, North Dakota, Findings of Fact and September 16, 2019 Williams County District Court, North Dakota, Judgment |
| J7 | February 12, 2014 $350,000 Promissory Note by Joseph and Defendant to Plaintiff |
| J8 | November 16, 2017 $430,000 Promissory Note Renewal |
| J9 | January 25, 2019 – January 28, 2019 Email Chain and Attachment |
| J10 | January 30, 2019 Letter Agreement re Purchase of The Yellow Rose |
| J11 | January 31, 2019 Email from Plaintiff to Joseph DuMouchelle (J. DuMouchelle) and M. Adducci |
| J12 | January 31, 2019 Wire Information Emails from J. DuMouchelle |
| J13 | February 1, 2019 Wire Information Email from J. DuMouchelle |
| J14 | Chase wire form to Highland Wealth Management |
| J15 | February 6, 2019 Email by J. DuMouchelle to Plaintiff |
| J16 | Chase wire form to FineMark National Bank and Trust |
| J17 | February 6, 2019 Receipt re The Yellow Rose |
| J18 | February 7, 2019 Brinks Request for Hawb Label |
| J19 | March 20, 2019 Draft Letter Agreement re The Yellow Rose |
| J20 | March 24, 2019 email chain between Plaintiff to J. DuMouchelle |
| J21 | April 12, 2019 Letter of Authority re The Yellow Rose signed by Sam Haggin |
| J22 | J. DuMouchelle Guilty Plea Hearing Transcript |
| J23 | July 27, 2022 Opinion and Order re Defendant's Objections to the Presentence Investigation Report |
| J24 | July 27, 2022 Opinion and Order re The Amount of Loss and Restitution |
| J25 | Opinion & Order re Application of the Sophisticated Means Enhancement |
| J26 | Order (1) Granting The Government's Application To Amend The Preliminary Order Of Forfeiture (Dkt. 100) And (2) Amending The Preliminary Order Of Forfeiture (Dkt. 41) |

| | |
|---|---|
| J27 | Criminal Judgment |
| J28 | February 14, 2023 Sixth Circuit Appellate Order |
| J29 | 3 Photos of Lindy with the Yellow Rose Diamond, produced in discovery |
| J30 | Proof of 2019 GIA Event in Tucson, AZ |
| J31 | August 12, 2014 Promissory Note from Joseph only, to Ritter |
| J32 | August 30, 2019 Affidavit of Plaintiff |
| J33 | June 16, 2020 J. DuMouchelle Information |
| J34 | September 17, 2020 Rule 11 Plea Agreement |
| J35 | Bank of America Withdrawal Slips signed by M. Adducci |
| J36 | June 14, 2019 Email from R. Gostevsky to J. Whipple |
| J37 | Plaintiff's First Amended Response to Defendants' First Set of Discovery Requests to Plaintiff with Supplemental Documents Filed by Plaintiff Thomas Ritter Dated February 28, 2023 |
| J38 | Plaintiff's Response to Defendants' Interrogatories and Requests for Production of Documents and Plaintiff's Supplemental Response to Defendants Requests for Production of Documents Filed by Plaintiff Thomas Ritter Dated March 10, 2023 |
| J39 | Response to Discovery with Proof of Service Filed by Defendants Melinda J. Adducci, Joseph G. DuMouchelle [ECF No 68] |
| J40 | Response to Discovery Filed by Defendant Melinda J. Adducci [ECF No 139] |
| J41 | Corrected Response to Discovery with Proof of Service Filed by Defendant Melinda J. Adducci [ECF No 152] |
| J42 | February 7, 2019 Email Joe to Bank - Cashiers Checks and Deposits needed today |
| J43 | February 7, 2019 Email Joe to Bank - Cashiers Checks 5 more |
| J44 | February 7, 2019 Email Joe to Bank - One more check -P. Haig |
| J45 | May 13, 2019 Email from Plaintiff to J. DuMouchelle and M. Adducci |
| J46 | June 10, 2019 Email from Plaintiff to J. DuMouchelle and M. Adducci |
| J47 | June 21, 2019 Email from Plaintiff to J. DuMouchelle and M. Adducci |
| J48 | July 2, 2019 Email from Plaintiff to J. DuMouchelle and M. Adducci |
| J49 | Transcript (written) of the September 27, 2022 Deposition of Thomas Ritter taken in Stevenson v Noble |
| J50 | Bankruptcy Declaration and Schedules |

**(b)    Plaintiff's Exhibits:**

| Exhibit No. | Defendant Objection | Description |
|---|---|---|
| P1 | | Transcripts (written and video) of deposition taken in the Ritter v. M. Adducci adversary proceeding (this case) on September 23, 2024, (direct, by designations and impeachment) |
| P2 | | June 6, 2019 Deposition Transcript of M. Adducci (impeachment only) |
| P3 | | September 3, 2019 (pm) Deposition Transcript of M. Adducci (impeachment only) |
| P4 | | April 28, 2025 Deposition Transcript of M. Adducci (impeachment only) |

**(c)    Defendant's Exhibits:**

See Joint Exhibits

**10. Objections to Exhibits.**

Defendant's objections to Plaintiff's exhibits described above are addressed in her February 17, 2026 Motion In Limine (ECF No. 281); those objections are incorporated herein by reference with respect to the Unresolved Issues defined in the Order Denying Motion in Limine.

**11. Damages**

Plaintiff is seeking a judgment of nondischargeability against Defendant in the amount of $12 million or upon the Court's findings, any amount that the Court may determine to be nondischargeable.

Defendant asserts that there are no grounds for damages against her, nor for a non-dischargeable Judgment to be entered against her.

## 12. Trial

(a)     Non-jury.

(b)     Estimated length of trial is 3 days. Pursuant to the Court's January 6, 2026 Order Scheduling Trial and Related Deadlines (ECF No. 274), the Court has scheduled this matter for five (5) days of trial, March 23-27, 2026.

## 13. Settlement or Mediation

No settlement was reached at mediation.

## 14. Filing of Trial Briefs, Etc.

The Court's January 6, 2026 Order Scheduling Trial and Related Deadlines (ECF No. 274) scheduled dates for the filing of pretrial briefs, and the parties have filed their pretrial briefs consistent with the foregoing Order. The Court will determine the need for post-trial briefs after trial.

## 15. Additional Requirements

None at this time. The Court will determine the need for post-trial briefs after trial.

## 16. Juror Costs Attributable to Parties.

N/A

**Signed on March 23, 2026**



/s/ Lisa S. Gretchko

**Lisa S. Gretchko**
**United States Bankruptcy Judge**